**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF NEW YORK, MANHATTAN DIVISION

Case number *(if known)* _____   Chapter   **11**

☐ Check if this an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | **560 Seventh Avenue Owner Primary LLC** |
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names and *doing business as* names | |
| 3. | **Debtor's federal Employer Identification Number (EIN)** | **82-3373286** |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| **560 Seventh Ave**<br>**New York, NY 10018-1801**<br>Number, Street, City, State & ZIP Code | <br><br>P.O. Box, Number, Street, City, State & ZIP Code |
| **New York**<br>County | **Location of principal assets, if different from principal place of business** |
| | <br>Number, Street, City, State & ZIP Code |

5. **Debtor's website** (URL) _____

6. **Type of debtor**

☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

| Debtor | **560 Seventh Avenue Owner Primary LLC** | Case number (*if known*) |
|---|---|---|
| | Name | |

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes.

72110

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check **all** that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

■ No.

☐ Yes.

| | District | | When | | Case number | |
|---|---|---|---|---|---|---|
| | District | | When | | Case number | |

| Debtor | **560 Seventh Avenue Owner Primary LLC** | Case number (*if known*) |
|---|---|---|
| | Name | |

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☐ No

☑ Yes.

| List all cases. If more than 1, attach a separate list | Debtor | **560 Seventh Avenue Owners Secondary LLC** | Relationship | **Parent** |
|---|---|---|---|---|
| | District | **Southern New York** | When | Case number, if known | **23-11071** |

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

☐ Yes.   Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____

Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes.   Insurance agency _____

Contact name _____

Phone _____

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

*Check one:*

☑ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☑ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**15. Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☑ $100,000,001 - $500 million | ☐ More than $50 billion |

Debtor    **560 Seventh Avenue Owner Primary LLC**                                    Case number (*if known*) _____
            Name

| 16. | Estimated liabilities | |
|---|---|

- ☐ $0 - $50,000
- ☐ $50,001 - $100,000
- ☐ $100,001 - $500,000
- ☐ $500,001 - $1 million

- ☐ $1,000,001 - $10 million
- ☐ $10,000,001 - $50 million
- ☐ $50,000,001 - $100 million
- ☒ $100,000,001 - $500 million

- ☐ $500,000,001 - $1 billion
- ☐ $1,000,000,001 - $10 billion
- ☐ $10,000,000,001 - $50 billion
- ☐ More than $50 billion

Debtor   __560 Seventh Avenue Owner Primary LLC__                    Case number (*if known*) _____
     Name

| Request for Relief, Declaration, and Signatures |

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   __August 11, 2023__
             MM / DD / YYYY

X _____          **Stehian Pomerantz**
Signature of authorized representative of debtor          Printed name

Title   **President**

**18. Signature of attorney**

X _____          Date   __August 11, 2023__
Signature of attorney for debtor                   MM / DD / YYYY

**Kevin J. Nash**
Printed name

**Goldberg Weprin Finkel Goldstein LLP**
Firm name

**125 Park Ave Fl 12**
**New York, NY 10017-5690**
Number, Street, City, State & ZIP Code

Contact phone   **(212) 221-5700**        Email address   **knash@gwfglaw.com**

**Kevin J. Nash**
Bar number and State

## MINUTES AND COMPANY RESOLUTIONS
## RELATING TO THE COMMENCEMENT OF CHAPTER 11 CASE

**WHEREAS,** pursuant to Notice dated July 23, 2023, a special meeting of the Fee Owner, as defined below, was duly, noticed, called, and convened via Zoom on July 26, 2023, at 4:00 p.m., at which time the Member of the Fee Owner, appeared along with Independent Managers for the Fee Owner, James L. Grier and Michelle A. Dreyer, to consider the filing of Chapter 11 petition on behalf of the Fee Owner; and

**WHEREAS,** 560 Seventh Avenue Owner Primary LLC (the "Fee Owner") owns and operates a certain 234 room hotel known as the Margaritaville Resort Times Square Hotel located at 560 Seventh Avenue, New York, NY (the "Hotel");

**WHEREAS,** the Hotel opened in 2021 during the midst of the Covid-19 pandemic and labored under challenging market conditions resulting in operating shortfalls during its period of stabilization, although the Hotel's revenues are improving and are projected to exceed $25 million by 2024;

**WHEREAS,** the Hotel is subject to multiple credit facilities, including a senior mortgage loan, senior mezzanine loan and junior mezzanine loan;

**WHEREAS,** the Fee Owner is seeking to refinance its existing mortgage and mezzanine debt;

**WHEREAS,** the lead mezzanine lender, AREP II MVTS LLC (the "Mezz Lender"), previously declared a default and issued a notice of disposition of collateral relating to a UCC sale of membership interests of the Hotel which necessitated a prior Chapter 11 filing of 560 Seventh Avenue Owner Secondary LLC (the "Mezz Company");

**WHEREAS,** in view of the Mezz Company's pending Chapter 11 proceeding, it has been decided the commencing of a Chapter 11 proceeding for the Fee Owner is now warranted to protect and preserve the overall value of the Hotel;

**WHEREAS,** pursuant to the terms of the Limited Liability Company Agreement of the Fee Owner, the commencement of a bankruptcy case requires the prior unanimous written consent of the Member and the Independent Managers, and

**WHEREAS,** the undersigned being the Member and the Independent Managers of Fee Owner, in accordance with the Delaware Limited Liability Company Act, 6 *Del. C.* § 18-101 *et. seq.* and the Limited Liability Company Agreement of the Fee Owner, as amended in September 2021 (the "Agreement"), do hereby consent to, adopt, authorize, and approve the following resolutions as of July 28, 2023;

**WHEREAS,** the Member and the Independent Managers have considered the financial and operational conditions of the Fee Owner and have reviewed supporting documentation and the advice and recommendation of the Fee Owner's professional and advisors with respect to the

options available to the Fee Owner, including the possibility of pursuing a restructuring of the Fee Owner's business and assets under title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"); and

NOW, THEREFORE IT IS HEREBY RESOLVED, that after consideration of the alternatives and the advice of the Fee Owner's professionals and advisors, the Member has determined in its business judgment that it is in the best interests of the Fee Owner, its creditors, interest holders, and other interested parties and the Independent Managers having been asked to consent to a Material Action pursuant to Section 9(d)(iii) of the Agreement, and considering their fiduciary duties, if any, as provided under the Agreement that a voluntary petition be filed by the Fee Owner seeking under Chapter 11 of Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of New York (the "Petition"), and the filing of such Petition be, and hereby is, authorized in all respects; and it is

FURTHER RESOLVED, that Sethian Pomerantz, as the President of the Fee Owner, is designated and authorized to be in charge of restructuring, responsible to oversee the legal restructuring of the Fee Owner under Chapter 11 on a day-to-day basis; and it is

FURTHER RESOLVED, that Sethian Pomerantz is authorized (a) to execute the Chapter 11 petition and all other accompanying documents on behalf of the Fee Owner, and cause the same to be filed with the Bankruptcy Court; and (b) to negotiate, execute, verify, and file, or cause to be executed, verified, and filed, all necessary documents, including, without limitation, all petitions, affidavits, schedules, statements, lists, motions, applications, pleadings, and other papers or documents necessary or desirable to prosecute the Chapter 11 case and, in that connection, to employ and retain legal counsel, financial advisors, accountants, and other professionals and to take any and all action he deems necessary and proper in connection with the bankruptcy case; and it is

FURTHER RESOLVED, that the Fee Owner is authorized to retain the law firm of Goldberg Weprin Finkel Goldstein LLP as counsel in the Chapter 11 case under a general retainer.

IN WITNESS WHEREOF, the undersigned Member and Independent Managers hereby consent to and approve and adopt these resolutions as of the date set forth above and direct that this Written Consent be filed with the Company's minutes and official records.

MEMBER:

James L. Grier, Independent Manager

Michelle A. Dreyer, Independent

Manager

560 SEVENTH AVENUE OWNER PRIMARY LLC
By Sethian Pomerantz
Title: President

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re:                                                                                  Chapter 11

560 Seventh Avenue Owner Primary LLC,                                                   Case No.

                                                 Debtor.
-----------------------------------------------------------------x

### DECLARATION PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2
### AND IN SUPPORT OF FIRST DAY MOTIONS

Sethian Pomerantz declares the following under penalties of perjury pursuant to 28 U.S.C. §1746:

1.      I am the president and sole officer of 560 Seventh Avenue Owner Primary LLC (the "Debtor"), which owns and operates the Margaritaville Resort Times Square Hotel located at 560 Seventh Avenue, New York, NY (the "Hotel").  Following a duly noticed special meeting of the Debtor's Independent Managers, I have been authorized to commence a Chapter 11 petition on behalf of the Hotel.  The Hotel's Chapter 11 case follows the earlier Chapter 11 filing made by the Debtor's 100% member, 560 Seventh Avenue Owner Secondary LLC, on July 9, 2023 (the "Member Entity").  It is anticipated that both Chapter 11 cases will be jointly administered. All of the facts set forth in this Declaration are based upon my personal knowledge as an officer of the Hotel.

2.      My Declaration includes information regarding the Debtor's business history and current operations, as well as the circumstances necessitating the commencement of this Chapter 11 case.  The Declaration also contains facts supporting the Debtor's first-day type motions requesting authority to use cash collateral based on the consent of the senior lender, OWS CRE Funding I, LLC (the "Prepetition Senior Mortgage Lender").  Under the terms of the proposed interim cash collateral order, and all as described more fully therein and in the related motion,

1

the existing cash management and lock-box and other arrangements with the Prepetition Senior Mortgage Lender (pursuant to which Hotel's daily receipts and rents are deposited and disbursed), will remain in place as a means to pay the Debtor's expenses on a weekly basis from an account that will be promptly established by the Debtor and designated as a DIP account at Wells Fargo Bank, N.A., for purposes of making disbursals and payments consistent with an approved budget to be attached to the proposed interim cash collateral order.[1]   The Debtor anticipates that the proposed combined cash collateral/cash management motion will be heard shortly after this Chapter 11 filing.   The balance of this Declaration concludes with basic disclosures required by Local Rule 1007-2.

3.     The Hotel is a franchisee of Margaritaville Enterprises ("Margaritaville").   The Hotel highly values its relationship with Margaritaville and hopes to maintain this relationship throughout the Chapter 11 case and beyond.   The Hotel's financial issues have nothing to do with Margaritaville and were caused by adverse market conditions over the last 2 years.  Nevertheless the Margaritaville brand has performed well financially, achieved outstanding customer satisfaction ratings and has been supportive of the Hotel through a difficult financial environment.

4.     In contemplation of the bankruptcy filing by the Hotel, terms and conditions are being negotiated for a DIP loan with Cirrus REP Funding LLC for a 12-month initial term with one (1) 3-month extension in the total sum of $170 million which the debtor anticipates will be used to refinance the senior mortgage in its entirety and provide immediate liquidity for the Hotel's other debts.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Debtor's *Omnibus Motion Seeking Authorization For Interim Use Of Cash Collateral And Continuing Cash Management And A Lock-Box Arrangement Currently In Effect*, which motion has been filed contemporaneously herewith.

### The Hotel Operations

5.      The development of the Hotel started in 2014 and was completed in 2021 after about two years of construction.   As President, I directly oversee all financial and business decisions of the Debtor, and report to an executive committee.  The Hotel itself is managed on a day-to-day basis by a third-party management company formerly affiliated with Dream Hotel Group ("DHG").

6.      The Hotel itself contains 234 guest rooms, plus 34,271 square feet of retail space. Most of the retail space, save for approximately 5,000 square feet on the corner of 40th Street, is leased to an affiliate of International Meal Company, Inc. known as IMCMV Times Square LLC ("IMC").  IMC operates a restaurant at the Hotel, paying the Debtor approximately $300,000 per month in rent while providing food and beverage services to Hotel guests and patrons.  The Hotel also has the ability to add auxiliary services such as a spa or additional retail leasing depending on the final resolution of litigation with Garment Center Congregation ("GCC").

7.      Operationally, the Hotel employs approximately 75 people (with an average weekly payroll of approximately $100,000).  Payroll is funded to ADP on Tuesday of each week and payroll checks are issued in arrears to employees on Friday of each week. (The workweek is from Monday to Sunday and thus payroll covers work performed through the prior Sunday).  The Hotel has just recently resolved a certification dispute with the Hotel and Gaming Trades Council (the "Hotel Union") which became the designated bargaining representative at the Hotel. The Debtor signed a Memorandum of Understanding ("MOU"), a copy of which is annexed hereto as Exhibit "A".  Among other things, the MOU eliminated the Hotel from being assessed substantial fines and provides labor peace.

3

8.      Based on current data, the Hotel's occupancy rates are on the rise.  Occupancy levels have been at 95% or more for the months of April, May and June.  Preliminary reports relating to July reflect daily occupancy at 97% with total revenues of $2,659,394.  The Hotel generated monthly operating revenues of $2.79 million in May and $2.71 million in June 2023.  Subject to final reconciliation based on the expenses associated with the MOU, the Hotel has an appraised value in the range of between $273 million and $302 million, with a potential stabilized value of between $307 million to $339 million as of April 1, 2025.

**History of the Senior Mortgage Loan Default**

9.      The current set of lenders or their predecessors came on the scene in the fall of 2021 (just after the Hotel's summer opening) to refinance earlier acquisition and construction financing provided by Related Real Estate Partners.  Insofar as the Hotel is concerned, the Prepetition Senior Mortgage Lender holds a first mortgage lien to secure a loan in the original principal sum of $167,000,000 made on September 13, 2021.  The mortgage refinancing included $32 million in reserves to address remaining construction issues and fund carry costs through the stabilization process.  Besides the Prepetition Senior Mortgage Lender, there are two mezzanine loans (senior and junior) held by AREPIII MVTS LLC and CREP Times Square Hotel LLC (jointly, the "Senior Mezz Lender") and Global One Real Estate Investment Trust and its affiliates (collectively, the "Junior Mezz Lender"), respectively.

10.     The Prepetition Senior Mortgage Lender declared the Hotel in default on or about April 7, 2023, as a result of the Debtor's alleged failure to, *inter alia*, replenish its debt service reserves.  The Prepetition Senior Mortgage Lender then gave notice to Wells Fargo that the Lockbox Account was to no longer fund the Borrower, as provided for under the Prepetition Loan Documents.

4

11.    Subsequent to the declaration of the April 2023 default under the Prepetition Loan Documents, the Hotel's non-management financial investors stopped funding the mezzanine loans, which also went into default.  Prior to the Spring of 2023, the Debtor's financial investors contributed the aggregate sum of approximately $79 million towards acquisition, development and operations of the Hotel.

### Salient Events Leading up to the Chapter 11 Filing

12.    Although the Hotel is on the upswing, it still faces a multitude of defaults with its lenders, franchise holders and vendors, creating the need for a global restructuring among all stakeholders, which can best be achieved in Chapter 11.  Perhaps, the tipping point toward bankruptcy arose out of an Article 9 UCC foreclosure sale by the Senior Mezz Lender relating to the pledge of the 100% direct membership interest of the Hotel.  The mezzanine level entity filed a Chapter 11 petition on July 9, 2023 as a steppingstone to a subsequent Chapter 11 filing by the Hotel itself.

### First Day Motions

**A.    Cash Collateral/Cash Management**

13.    Contemporaneously with the Chapter 11 filing, the Debtor shall file an omnibus motion seeking approval of consensual use of cash collateral based upon agreed weekly budgets (to be finally approved by the Prepetition Senior Mortgage Lender, whereupon it will become an "Approved Budget") and continuation of the cash management and lock-box and other arrangements already in place with the Prepetition Senior Mortgage Lender (the proposed order approving such relief and attached to such motion, the "Interim Cash Collateral Order").

14.    Under the existing cash management arrangement, all funds transferred to the Debtor are sent to an account (the "Lockbox Account") at Wells Fargo Bank, N.A.

("Wells Fargo"), for the purpose of aggregating all revenues of the Debtor, which funds are transferred on a daily basis to a cash management reserve account (the "Suspense Account") held at Wells Fargo, as servicer to the Prepetition Senior Mortgage Lender.  As and when the Debtor makes a request to pay expenses, funds are then transferred from the Suspense Account to the Disbursal Account.

15.    In order to maintain uninterrupted operations, the Lockbox Account and other existing cash management arrangements shall remain in place during the pendency of the bankruptcy .  Monies transferred to or for the benefit of the Hotel shall continue to be deposited in the Lockbox Account, and will be swept into the Suspense Account on a daily basis.  The Debtor will promptly establish and designate a debtor-in-possession account (the "DIP Account") at Wells Fargo for purposes of making disbursals and payments consistent with the Approved Budget and the Interim Cash Collateral Order.

16.    At such time as when the Debtor must satisfy its payment obligations, subject to and consistent with the Interim Cash Collateral Order, and the Approved Budget attached thereto, the Debtor will notify the Prepetition Senior Mortgage Lender of any such payment obligations, and will provide the Prepetition Senior Mortgage Lender with a requisition for such amounts that includes a breakdown of the invoices listed thereon commensurate with the appropriate line item on the Approved Budget.

17.    The Approved Budget has been negotiated at arm's length and in good faith with the Prepetition Senior Mortgage Lender and constitute items needed to ensure smooth operations at the Hotel, including ongoing payments to reservation and booking providers for both pre-petition and post-petition services.  It suffices to say that without continued use of cash collateral, the Hotel could not possibly operate and tremendous value would be lost.

6

18.     As part of the cash collateral arrangements, the Debtor has agreed, among other things to make monthly adequate protection payments to the Prepetition Senior Mortgage Lender equal to monthly excess cash flow, as measured by the difference between monthly Hotel collections less any actual payment of expenses beginning on September 8, 2023 (all as described more fully in the Interim Cash Collateral Order and subject to the Approved Budget).

19.     As of August 8, 2023, the Debtor had total cash and reserves of $2,761,455.22, net of a payment of $1,721,320.49 made to the Prepetition Senior Mortgage Lender made earlier this week on August 9, 2023.

**B.      Wage Motion**

20.     The Debtor has a current payroll of approximately $100,000 for its Hotel workers and office staff.  This payroll will increase to about $120,000 per week with the implementation of the MOU and added Hotel Union benefits.  Weekly payroll runs Monday to Sunday, and is issued once a week on Friday by direct deposit.  Payroll is made in arrears and funded into ADP on Tuesday.  Just before the commencement of the Chapter 11 case, the Debtor issued payroll on Friday, August 11, 2023 for the period ending August 6, 2023 through ADP by direct deposit to each employee.  The last pre-petition payroll for the period ending Augst 13, 2023 (most of which is pre-petition) totaling approximately $100,000 is scheduled to be paid to ADP on August 15, 2023 and issued to employees on Friday, August 18, 2023.

21.     To maintain goodwill with employees, the Debtors will be requesting that the Court enter an Order, pursuant to Sections 105(a), 363(b) and 507(a) of the Bankruptcy Code, authorizing the Debtor to pay this accrued payroll to current employees for their unpaid pre-petition payrolls ending on August 13, 2023; and (b) to pay all related benefits and withholding taxes associated therewith.

22.     The accrued payroll obligations constitute priority claims and continued payment in the ordinary course is necessary to avoid employee unrest. Paying pre-petition wages will benefit the Debtor's estate and its creditors by allowing the Hotel to continue to operate during a very busy and important summer tourist season.  The respective amounts owed to any employee on account of pre-petition wages and salaries do not exceed the statutory maximum for priority status under Section 507(A)(4).

### Local Rule 1007-2 Disclosures

23.     Pursuant to Local Rule 1007-2(a)(2) and (3), no committees were formed prior to the filing of the Petition.

24.     Pursuant to Local Rule 1007-2(a)(4), a schedule of the Hotel's twenty (20) largest unsecured claims (excluding insiders) is annexed hereto.  A master creditor schedule is also attached hereto.

25.     Pursuant to Local Rule 1007-2(a)(5), the Senior Lender holds a first mortgage lien against the Hotel.  There are no other direct mortgages against the Hotel.

26.     Pursuant to Local Rule 1007-2(a)(6) a summary of the Debtor's assets and liabilities will be provided in the schedules to be filed within fourteen (14) days of the commencement of the Chapter 11 case.

27.     Pursuant to Local Rule 1007-2(a)(7), the Debtor's membership interests are not publicly held.  The Debtor's 100% membership interests are held entirely by 560 Seventh Avenue Owner Secondary LLC.

28.     Pursuant to Local Rule 1007-2(a)(8), none of the Debtor's property is in the possession or custody of a custodian, except for the cash management and lock-box arrangements referenced above.

29.    Pursuant to Local Rule 1007-2(a)(9), the Debtor owns the real property at 560 Seventh Avenue, New York, NY subject to various lease agreements with the GCC.

30.    Pursuant to Local Rule 1007-2(a)(10), the Debtor's books and records are located at the Hotel or at my offices, c/o Soho Properties. 362 Fifth Ave, 6th floor, New York, NY 10001.

31.    Pursuant to Local Rule 1007-2(a)(11), a schedule of pending lawsuits is annexed hereto.

32.    Pursuant to Local Rule 1007-2(a)(12), as President, I directly oversee all financial and business decisions of the Debtor, reporting to the executive committee.  I have not received any compensation directly or indirectly from the Debtor since March 15, 2023. Prior to that, Soho Properties Management LLC received total fees of $111,928.18 at a rate of $9,961.88 per month for the period April 1, 2022 through March 15, 2023, which included my compensation.

33.    Pursuant to Local Rule 1007-2(b)(1), no payments shall be made to officers, directors, managers or members of the debtor during any period following the commencement of the Chapter 11 case.

34.    Pursuant to Local Rule 1007-2(b)(2), a proposed budget (subject to update) showing projected receipts and disbursements for the next 13 weeks is being submitted as part of the cash collateral motion.

Dated: New York, NY
       August 11, 2023

_____
Sethian Pomerantz

9

## MEMORANDUM OF UNDERSTANDING

AGREEMENT made this __3rd__ day of ~~July~~ 2023 ("Effective Date"), by and between the 560 Seventh Avenue Owner Primary LLC, on its own behalf and on behalf of any current and future owner, operator, or manager, their respective affiliated and related entities, as well as their successors and assigns (collectively "Hotel" or "Employer") and the Hotel and Gaming Trades Council, AFL-CIO ("Union");

WHEREAS, the Office of the Impartial Chairperson conducted an independent card count on February 9, 2023 ("Certification Date") the result of which was the designation of the Union as the exclusive collective bargaining representative of employees working in the following jobs at the property known as the Margaritaville Resort Times Square (the "Property"): Housepersons and Room Attendants (collectively, "Bargaining Unit Employees");

WHEREAS, the Hotel and Union have negotiated in good faith over the issues resolved below.

NOW, THEREFORE, IT IS AGREED:

1.  Assumption of Industry Wide Agreement ("IWA"):  Effective upon full execution and ratification of this Agreement, the Hotel agrees to assume, adopt, and be bound by all terms and conditions, both economic and non-economic, of the Industry Wide Collective Bargaining Agreement, effective July 1, 2012 through June 30, 2026 ("Current IWA"), by and between the Union and the Hotel Association of New York City, Inc. (the "Hotel Association") and agrees to adopt and be bound by any renewal or successor to the Current IWA, which renewal or successor agreement and any amendments thereto ("Successor IWA") will be negotiated between the Hotel Association and the Hotel Trades Council, subject to this Agreement.  In the event that the Hotel Trades Council and the Hotel Association fail to reach agreement on a Successor IWA prior to the expiration of the Current IWA now binding the Employer and the Hotel Trades Council, all terms of this Agreement and the Current IWA, both economic and non-economic, including, but not limited to, the arbitration and no strike/no lockout provisions, shall continue in full force and effect until such time as a Successor IWA is effective. The Employer acknowledges that adoption of the IWA includes the Employer in the IWA multi-employer bargaining unit.

2.  No Loss:  No employee shall suffer a loss or reduction in hours, hourly or weekly wages, benefits or fringe benefits, or any adverse effect on any other terms and conditions of employment on account of the execution, assignment, adoption, or assumption of this Agreement.

3.  Recognition: The Owner acknowledges that there has been a voluntary recognition of the Union as the collective bargaining representative of Room Attendants and Housepersons at the Hotel ("Bargaining Unit Employees"). The Owner acknowledges the Owner became the direct employer of the Bargaining Unit Employees effective April 1, 2023.

4. <u>Wages</u>:

    a. <u>Wage Increases for Current Bargaining Unit Employees</u>: Effective and retroactive to April 5, 2023 ("Recognition Date"), all Bargaining Unit Employees shall receive the greater of: (i) three dollars ($3.00) per hour above their current hourly rate, or (ii) the applicable IWA rate, subject to subject to Article 6(C). The IWA Article 6(C) new hire rate for Current Employees shall begin retroactive to the Recognition Date. Any and all sums due and owing in connection with the retroactive payments contemplated herein shall be paid in equal installments over a twelve (12) month period. All such sums shall be subject to annual IWA increases to wages and wage related items.

    b. <u>Minimum Rates</u>:

        i. *Room Attendants*: Room Attendants shall be paid no less than the IWA Room Attendant hourly rate.

        ii. *Housepersons*: Housepersons shall be paid no less than the IWA Housekeeping Attendant hourly rate.

5. <u>Probationary Period</u>: Current employees shall not be subject to the IWA Article 6 probationary period.

6. <u>Work Day/Week</u>: Notwithstanding anything in IWA Article 11(A), the regular work week shall be forty (40) hours and the regular work day shall be eight (8) hours, such that these employees shall be paid overtime after forty (40) hours in a week, eight (8) hours in a day, or as otherwise required by the IWA. Notwithstanding anything in IWA Article 11(E), employees shall continue to receive a half (1/2) hour unpaid lunch period.

7. <u>Health Benefits</u>: On the Effective Date of this Agreement, the Hotel shall begin participation in and making contributions to the New York Hotel and Motel Trades Council and Hotel Association of New York City, Inc. Health Benefits Funds ("Industry Plan"). Current Bargaining Unit Employees shall be entitled to elect, at the employee's sole discretion, within thirty (30) days of the presentation by the Industry Plan, to either participate in the Hotel's plan or the Industry Plan, subject to and in accordance with the terms of each such plan. Each Bargaining Unit employee must make his/her election on the form provided by the Industry Plan with a copy provided to the Hotel. Any Bargaining Unit employee who fails to make an election within those thirty (30) days will continue to be eligible to receive benefits pursuant to the Hotel's plan. It is understood that the Hotel shall be obligated to make contributions for Bargaining Unit Employees who elect the Industry Plan only from the date each employee makes such election, subject to Article 6(D) of the IWA. Bargaining Unit Employees who receive benefits under the Hotel's plan shall be entitled to the same benefits as are offered to non-bargaining unit employees. The Hotel shall not be obligated to make contributions to the Industry Plan for those Bargaining Unit employees who participate in and are covered by the Hotel plan. Bargaining Unit Employees who initially elect to, or by default, remain eligible to receive benefits under

the Hotel plan may thereafter switch, during the Hotel plan annual enrollment period, to the Industry Plan, upon at least thirty (30) days' notice and after completing the appropriate forms referred to herein. No Bargaining Unit employee who receives benefits under the Industry Plan may switch to the Hotel's plan. The Hotel shall ensure that no Bargaining Unit employee who elects to switch from the Hotel to the Industry plan will suffer a gap in coverage. Any Bargaining Unit employee hired after the Effective Date of this Agreement will be covered solely under the Industry Plan.

8.  <u>Pension</u>: On the Effective Date of this Agreement, the Hotel shall begin participation in and contributions to the New York Hotel and Motel Trades Council and Hotel Association of New York City, Inc. Pension Fund ("Industry Pension Plan"). Current Bargaining Unit Employees shall be entitled to elect, at the employee's sole discretion, within thirty (30) days of the date on which the Industry Pension Plan gives a presentation, to either participate in the Hotel's plan or be covered by the Industry Pension Plan, subject to and in accordance with the terms of each such plans. Each Bargaining Unit Employee must make his/her election on the form provided by the Industry Pension Plan with a copy provided to the Hotel. It is understood that the Hotel shall be obligated to make contributions for Bargaining Unit Employees who elect the Industry Pension plan only from the date each employee makes such election, subject to Article 6(d) of the IWA. Any Bargaining Unit Employee who fails to make an election within those thirty (30) days will receive benefits pursuant to the Industry Pension Plan. Bargaining Unit Employees who continue to receive benefits under the Hotel's plan shall be entitled to the same benefits as are offered to non-bargaining unit employees subject to and in accordance with the terms of each such plan. The Hotel shall not be obligated to make contributions to the Industry Plan for those Bargaining Unit employees who participate in and are covered by the Hotel plan. Bargaining Unit Employees who initially elect to, continue to be eligible to receive benefits under the Hotel plan may not thereafter switch to the Industry Pension Plan. No Bargaining Unit employee who receives benefits under the Industry Pension Plan may switch to the Hotel's plan. Any Bargaining Unit employee hired after the Effective Date of this Agreement will be covered solely under the Industry Pension Plan.

9.  <u>Pre-Paid Legal and ITP and Scholarship Fund</u>: On the Effective Date of this Agreement the Hotel shall begin participation in and contributions to the Pre-Paid Legal and Industry Training and Scholarship Funds on the Effective Date of this Agreement.

10. <u>Reasonable Work Rules</u>: The parties shall negotiate reasonable quotas and duties consistent with industry standards and, failing agreement, submit the matter to arbitration. It is understood any and all existing quotas and duties will remain in place until an agreement is reached or an award from the arbitrator is issued.

11. <u>Neutrality</u>: The Employer agrees that the neutrality provisions of Addendum IV shall apply to the Hotel and are incorporated herein by reference as to the Bargaining Unit Employees. In addition thereto, the Employer, its supervisors, managers and other agents further agree to remain neutral with respect to any of its employees or prospective employees' decisions regarding membership in or support for the Union as to the Bargaining Unit Employees. As to the Bargaining Unit Employee, the Employer, its supervisors, managers and other

agents will not take any action or make any statement that directly or indirectly states or implies any opposition to Union membership or to the selection or maintenance of the Union as the employees' collective bargaining representative, and will not encourage or assist employees directly or through third parties to terminate Union membership, revoke dues checkoff authorization or invoke any right to reduce financial support to the Union.

12. <u>Dignity & Respect</u>: The Hotel, through its agents, managers, or supervisors, shall not abuse or harass any employee, verbally or otherwise, and shall at all times treat employees in a professional, courteous, respectful and dignified manner.

13. <u>No Unlawful Assignments</u>: The Hotel may not request that bargaining unit perform or fail to perform any task or duty that would constitute a violation of any applicable law statute or regulation. No employee may be disciplined as a result of refusing such directive.

14. <u>Privacy</u>: The Hotel shall respect the employees' right to privacy. The Hotel may not divulge any data or information regarding an employee, including, but not limited to, his/her social security number, address, or phone number to any individual or entity other than the Union or the Funds, without the express written authorization of the employee or unless otherwise required by law or necessary to ensure compliance with the IWA or this Agreement.

15. <u>Technological Changes</u>: The Employer may not rely on Article 53(D) of the IWA to implement any changes which would appreciably increase workload or otherwise alter terms and conditions of employment of employees without the consent of the Union. The Employer may not rely on Article 53(D) of the IWA to implement any changes which would result in any bargaining unit employee being laid off, placed on a reduced work week, or otherwise adversely affected, nor which would result in a reduction in the number of bargaining unit positions without the consent of the Union. The final sentence of Article 53(D) of the IWA shall not apply at the Hotel. In the event the Hotel seeks to implement a modification not otherwise permissible under Article 53 of the IWA as modified herein and the parties are unable to agree to a resolution, or if the Employer cannot obtain the Union's consent, either party may submit the matter to the Impartial Chairperson for resolution.

16. <u>Employee ID</u>: If requested by an Employee, the Employer shall provide a photo identification card, identifying the individual as an employee of the Hotel and listing, inter alia, the name, address, and date of birth of the Employee.

17. <u>Union Orientation</u>: New hires after the Effective Date of this Agreement shall meet with a delegate or other representative designated by the Union within ten (10) days of their start date for purposes of union orientation. Such meetings shall last up to one (1) hour and shall be considered work time.

18. <u>Union Training</u>: Unpaid leave pursuant to Article 62 shall be extended to ten (10) days and shall include leave for Union training and other activities.

19. <u>Voter Registration</u>: New employees shall be offered the opportunity to register to vote at the Hotel during their orientation period. In addition, employees shall be afforded the opportunity to register to vote at the Hotel any time thereafter during non-working hours. The Hotel shall be responsible for submitting any non-electronically filed voter registration applications to applicable state or local authorities prior to the next voter registration deadline. The Hotel shall not make or keep a copy of any completed voter registration application.

20. <u>Voting Time</u>: Employees shall be permitted up to four (4) hours of paid working time to vote in any local, state, and federal elections, including elections for office, primaries, ballot initiatives, referenda, and special elections. Such time shall be paid at the benefit day rate. Paid voting time is intended only for employees who vote on such day. Employees shall provide reasonable notice of their intent to use paid voting time. The Employer shall accommodate the employee's request to use such paid time at a specific time, unless it will cause undue disruption.

21. <u>Conversion From Hotel Use</u>: In the event of any full or partial conversion of Hotel space to any non-hotel use, IWA Article 57 shall apply.

22. <u>Challenging Decisions of the Arbitrator:</u> The Employer acknowledges that challenging an arbitration decision does not excuse compliance with such decision. It is agreed that if either party moves to vacate an arbitration decision, and the decision is subsequently confirmed in whole or in part, the party seeking to challenge the arbitration decision will pay the reasonable attorney's fees and costs of the other party. It is further agreed that if either party moves to confirm an arbitration decision due to the non-moving party's failure to comply with the same, and the decision is subsequently confirmed in whole or in part, the non-moving party will pay the reasonable attorney's fees and costs of the other party.

23. <u>Food & Beverage Operations</u>: IWA Article 60 and Addendum IV shall not apply to the existing leased out a la carte food and beverage operations at the Hotel. Such exemption shall not be affected by change of a lessee or branding of the operation.

24. This Agreement resolves the claims the Union has in the arbitration pending before the Office of the Impartial Chairperson identified as case number U21-313 (the "Arbitration") against 560 Seventh Avenue Owner Primary LLC, including with respect to any monetary penalties allegedly owed by 560 Seventh Avenue Owner Primary LLC in connection with the Arbitration. The Union hereby acknowledges no amounts are due and owing in connection with the Arbitration against 560 Seventh Avenue Owner Primary LLC, any and all claims related thereto are hereby waived and dismissed as to it, and the Arbitration is hereby withdrawn as to it. The Union does not waive claims against any other party pursuant to the Arbitration.

25. The parties acknowledge that IWA Article 60 and Addendum IV will apply to the remainder of the Hotel.

26. In the event that, notwithstanding IWA Article 59, this Agreement is rejected or substantively modified in a bankruptcy or other proceeding upon motion, filing, petition, or other legal action of the Hotel, the parties acknowledge that Paragraph 24 and 25 of this Agreement shall be invalid and that the Union shall have the right to organize the leased out a la carte restaurant and bar and reinstitute the Arbitration, provided that any Award issued by the arbitrator will be offset by amounts already paid pursuant to Paragraph 25 of this Agreement. The Hotel will not file or support any motion pursuant to 11 U.S.C. Sections 1113, 1113 (e) or any other provision of the Bankruptcy Code, seeking rejection or modification of, or relief or interim relief from, the Agreement (a "Motion"). The Hotel will actively oppose any such Motion if filed by another party.

27. <u>Ratification</u>: This Agreement is subject to ratification by the Union.

28. <u>Arbitration</u>: Any and all disputes between the parties or regarding the interpretation or application of this Agreement shall be submitted to the Office of the Impartial Chairperson as set forth in the grievance and arbitration provisions of the IWA, the entirety of which are incorporated herein by reference.

29. <u>Accretion</u>: In the event a lender, including a primary, mezzanine, or any other lender ("Lender"), forecloses on the Hotel, said Lender shall be subject to all terms, both economic and noneconomic of the IWA and this Agreement, provided it shall not be subject to any provision of Article 60 and/or Addendum IV of the IWA for a period of eighteen (18) months from the date of completion of the foreclosure. Should the Lender retain ownership interest in the Hotel after eighteen (18) months, Lender will also be subject to the terms of Article 60 and/or Addendum IV of the IWA.

30. This Agreement may be executed in any number of counterparts, each of which, as so executed and delivered, shall be deemed an original.

IN WITNESS WHEREOF, the respective parties have hereunto set their hands and seal as of the day and year first above written.

UNION

Richard Maroko
President
Authorized to Sign

HOTEL

By:    Sethian Pomerantz
Title: President
Authorized to Sign

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                          Chapter 11

560 Seventh Avenue Owner Primary LLC,                           Case No.

                                    Debtor.
-------------------------------------------------------------x

## LIST OF EQUITY HOLDERS

560 Seventh Owner Secondary LLC            100% Member

Dated: New York, New York
       August 11, 2023

560 Seventh Avenue Owner Primary LLC

By:

Name: Sethian Pomerantz
Title:   President

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                            Chapter 11

560 Seventh Avenue Owner Primary LLC,                             Case No.

                              Debtor.
-------------------------------------------------------------x

## LIST OF LAWSUITS

1.    Damon Stallings v. 560 Seventh Avenue Owners Primary LLC et al.
      Index No. 159925/2021
      Supreme Court, New York County
      Tort

      Attorneys for the Plaintiff:
      Rylan Brook, Esq.
      Avanzino & Moreno P.C.
      26 Court Street, Suite 2015
      Brooklyn, NY 11242

2.    Harriet Larkins v. 560 Seventh Avenue Owners Primary LLC et al.
      Index No. 155346/2023
      Supreme Court, New York County
      Tort

      Attorneys for the Plaintiff:
      Jay H. Tanenbaum, Esq.
      14 Wall Street, Suite 5F
      New York, NY 10005

3.    Michael Nicoletta v. 560 Seventh Avenue Owners Primary LLC et al.
      Index No. 160640/2022
      Supreme Court, New York County
      Tort

      Attorneys for the Plaintiff:
      Jennifer M. Ahlfeld, Esq.
      The Licatesi Law Group LLP
      423 RXR Plaza, East Tower
      Uniondale, NY 11556

4.   Brunello Realty Ltd. v. 560 Seventh Avenue Owners Primary LLC et al.
     Index No. 652006/2022
     Supreme Court, New York County
     Breach of Contract

     Attorneys for the Plaintiff:
     Michael R. Strauss, Esq.
     Hollander Law Group PLLC
     40 Cutter Mill Road, Suite 203
     Great Neck, NY 11021

5.   Garment Center Congregation v. 560 Seventh Avenue Owners Primary LLC et al.
     Index No. 654427/2022
     Supreme Court, New York County
     Breach of Contract

     Attorneys for the Plaintiff:
     Richard C. Schoenstein, Esq.
     Tarter Krinsky & Drogin LLP
     1350 Broadway
     New York, New York 10018

6.   560 Seventh Avenue Owners Primary LLC v. DHG TSQ LLC
     Index No. 655926/2021
     Supreme Court, New York County
     Breach of Contract/Appeal

     Attorneys for the Defendant:
     Todd H. Girshon, Esq.
     Jackson Lewis P.C.
     666 Third Avenue, 30th Floor
     New York, New York 10017

Dated: New York, New Yor
       August 11, 2023

                              560 Seventh Avenue Owner Primary LLC,

                         By:
                              Name:  Sethian Pomerantz
                              Title:   President

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                              Chapter 11

560 Seventh Avenue Owner Primary LLC,                               Case No.

                              Debtor.
-------------------------------------------------------------x

### RULE 7.1 CORPORATE OWNERSHIP STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1, 560 Seventh Avenue Owner Primary LLC certifies that it is a private non-governmental party, and has no corporate parent, affiliates and/or subsidiaries which are publicly held.

Dated: New York, New York
        August 11, 2023

                                560 Seventh Avenue Owner Primary LLC,


                        By: _____
                                Name:  Sethian Pomerantz
                                Title:   President

## TOP 20 UNSECURED CREDITORS

| Name | Address | Amt due | Nature of Claim |
|---|---|---|---|
| DHG TSQ LLC | 200 West 55th Street, Ste. 42, New York, NY 10019 | $3,111,115.25 | Judgment |
| Flintlock Construction Services, LLC | 585 North Barry Avenue, Mamaroneck, NY 10543 | $2,763,091.77 | Construction |
| Garment Center Congregation | c/o Tarter Krinsky & Drogin LLP, 1650 Broadway, New York, NY 10018 | minimum of $1,700,000 plus additional amounts claimed | Litigation - damages |
| Margaritaville Hospitality Group (MARGA) | 6900 Turkey Lake Rd, Ste. 200, Orlando, FL 32819 | $1,205,935.31 | Franchise Fees |
| EBM Development Corp. | 566 Seventh Avenue, Ste. 901, New York, NY 10018 | $1,039,752.33 | Litigation - damages |
| Murray Hill Properties LLC (now Banyan Street Capital) | 250 Park Avenue, Ste. 1903, New York, NY 10177 | $700,000.00 | Litigation - commission |
| IMCMV Holdings Consolidated (IMCMV) | 4901 Vineland Road, Ste. 600, Orlando, FL 32811-7196 | $588,698.30 | Restaurant lease |
| Brunello Realty, LTD | 220 East 42nd Street, New York, NY 10017 | $350,000.00 | Litigation - commission |
| Proper Hospitality Solutions LLC (PHS) | 225 West 39th Street, New York NY 10018 | $217,869.08 | Employee leasing |
| Booking.com BV (BOOKING) | Herengracht 597, 1017 CE Amsterdam, Netherlands | $203,395.59 | Reservation commission |
| Expedia, Inc. (EXPEDIA) | P.O. Box 844120, Dallas, TX 75284 | $98,873.14 | Booking commission |
| Valcon Construction Advisors, Inc. | 181 Westchester Avenue, Room 403B, Port Chester, NY 10573 | $92,610.32 | Project management |
| Revival New York (REVIV) | 2581 Richmond Terrace, Staten Island, NY 10303 | $49,468.45 | Linen service |
| Meltzer, Lippe, Goldstein & Breitstone LLP | 190 Willis Avenue, Mineola, NY 11501 | $47,056.87 | Legal (Union) |
| Condon & Forsyth LLP | 7 Times Square, New York, NY 10036 | $40,865.50 | Legal (Litigation) |
| Empire Office Inc. | 654 Madison Avenue, 14th Fl, New York, NY 10065 | $39,901.15 | Storage |
| NYC Water Board (NYC WATER) | PO Box 11863, Newark, NJ 07101-8163 | $37,567.98 | Water |
| Miles Partnership LLP (MILPAR) | 6751 Professional Parkway Ste 200, Sarasota, FL 34240 | $34,288.15 | Marketing |
| Quinn McCabe LLP | 9 East 40th Street, 14th Fl., New York, NY 10016 | $34,054.94 | Legal |
| Midnight Sunday Social (MIDSUN) | 40 West 51st Street, Box 4882, New York, NY 10020 | $33,312.50 | Social Media |

# MASTER LIST OF CREDITORS

## SCHEDULE D - SECURED

| Name | Address | Amt due | Unliquidated | Disputed |
|---|---|---|---|---|
| OWS BCA Funding, LLC | Attn: Victor Diaso, 299 Park Avenue, 25th Fl, New York, NY 10171 | $156,652,018.10 | X | |
| OWS BCA Funding, LLC | c/o Michele Maman, Esq., Cadwalader, Wickersham & Taft LLP 200 Liberty Street, New York, NY 10281 | | | |
| | Total: | $156,652,018.10 | | |

## SCHEDULE E - PRIORITY

| Name | Address | Amt due | Unliquidated | Disputed |
|---|---|---|---|---|
| Hotel and Gaming Trades Council, AFL-CIO | c/o Joseph E. Czerniawski, Esq., Condon & Forsyth LLP 7 Times Square, New York, NY 10036 | UNKNOWN | X | X |
| Internal Revenue Service - Centralized Insolvency Operations | PO Box 7346, Philadelphia, PA 19101-7346 | UNKNOWN | X | X |
| NYC Dept of Finance, Legal Affairs | 375 Pearl Street, Apt. 30, New York, NY 10038-1442 | UNKNOWN | X | X |
| NYC Dept of Finance, Legal Affairs c/o NYC Dept of Law | Attn: Bernadette Brennan, Esq., 100 Church St., Rm 5-233 New York, NY 10007-2601 | | | |
| NYS Dept of Taxation - Bankruptcy/Special Procedure | PO Box 5300, Albany, NY 12205-0300 | UNKNOWN | X | X |
| NYS Dept of Taxation c/o NYS Attorney General | 28 Liberty Street, New York, NY 10005-1400 | | | |
| | Total: | $0.00 | | |

## SCHEDULE F - UNSECURED

| Name | Address | Amt due | Unliquidated | Disputed |
|---|---|---|---|---|
| Abalon Exterminating Co. Inc. (ABALON) | 450 Seventh Avenue, Ste. 1402, New York, NY 10123 | $6,929.92 | | |
| Accurate Electrical Contractors Corp. (AECC) | 2241 Hylan Blvd, Staten Island, NY 10306 | $7,174.86 | | |
| ADK Water Solutions, Inc. (ADKWATER) | 163-33 96th Street, Howard Beach, NY 11414 | $4,899.38 | | |
| Air Aroma USA Dist LLC (AIRARO) | 263 West 38th Street, Level 12, NY NY 10018 | $1,453.50 | | |
| Allbridge (ALLBRI) | 6880 Perry Creek road, Raleigh, NC 27616 | $14,869.78 | | |
| Ariane Systems North America, Inc. (ASNA) | 5701 Oldchester Rd Bethesda, MD 20817 | $7,941.72 | | |
| ASK Locksmith, Inc. (ASKLOCK) | 247 West 38th Street, NY, NY 10018 | $876.41 | | |
| Axxess Industries Inc (AXXIND) | 1880 Penno Road Kelowna BC VIX 6S9 Canada | $333.51 | | |
| Blue Ribbon Travel (BLURRIB) | 152-45 10th Avenue, Whitestone, NY 11357 | $59.60 | | |
| Booking.com BV (BOOKING) | Herengracht 597, 1017 CE Amsterdam, Netherlands | $203,395.59 | | |
| Broadtrade Group, Inc (BROGRO) | One Penn Plaza, Unit #4200, New York, NY 10119 | $3,500.00 | | |
| Broadway Elevator Consulting Group LLC (BROELE) | 29-19 39th Avenue, Long Island City, NY 11101 | $3,082.00 | | |
| Brunello Realty, LTD | 220 East 42nd Street, New York, NY 10017 | $350,000.00 | | |
| Buku Global Inc | 104 Pinedale Way Fort Walton, FL 32548 | $755.33 | | |
| Certified Flameproofing Corp (CERTFLAME) | 17 North Ingelore Court, Smithtown, NY 11787 | $544.38 | | |
| Condon & Forsyth LLP | 7 Times Square, New York, NY 10036 | $40,865.50 | | |
| Corporation Service Company | 251 Little Falls Drive, Wilmington, DE 19808-1674 | $429.00 | | |
| Custom Water Inc. | 820 Sourth Main Street, Ste. 3948, Hailey, ID 83333 | $8,273.12 | | |
| Cvent, Inc. (CVENT) | 1765 Greensboro Station Place, 7th Floor, Tyson's Corner, VA 22102 | $5,984.50 | | |
| Damon Stallings | c/o Rylan Brook, Esq., Avanzino & Moreno P.C., 26 Court Street, Suite 2015, Brooklyn, NY 11242 | UNKNOWN | X | X |
| DANART, Inc. (DANART) | 4121 West Magnolia Blvd., Burbank, CA 915005 | $1,471.20 | | |
| DC Building Services, Inc. | 1 Penn Plaza, Ste. 4200, New York, NY 10119 | $21,257.72 | | |
| DHG TSO LLC | 200 West 55th Street, Ste. 42. New York, NY 10019 | $3,111,115.25 | | |
| Dream Midtown Hotel (DMT) | 210 West 55th Street, New York, NY 10018 | $7,442.40 | | |

# MASTER LIST OF CREDITORS

| Creditor | Address | Amount | | |
|---|---|---|---|---|
| EBM Development Corp. | 566 Seventh Avenue, Ste. 901, New York, NY 10018 | $1,039,752.33 | | |
| Emerald Sparkling Cleaners (EMERALD) | 121 Route 46, Parsippany, NJ 07054 | $820.45 | | |
| Empire Office Inc. | 654 Madison Avenue, 14th Fl, New York, NY 10065 | $39,901.15 | | |
| Evolution Energy Partners LLC (EVOENR) | 1037 Buchanan Dr., Langhorne, PA 19047 | $500.00 | | X |
| Expedia (EXPEDIA AD) | 333 108th Ave., NE Bellevue, WA 98004 | $3,000.00 | | |
| Expedia, Inc. (EXPEDIA) | P.O. Box 844120, Dallas, TX 75284 | $98,873.14 | | |
| Flintlock Construction Services, LLC | 585 North Barry Avenue, Mamaroneck, NY 10543 | $2,763,091.77 | | |
| Flip.To Inc. (FLIP.TO) | 766 N. Sun Drive, Ste. 2030, Lake Mary, Florida 32746 | $300.00 | | |
| G-111 Leather Fashions, Inc. (G-111) | 512-7th Avenue, New York, NY 10018 | $362.50 | | X |
| Garment Center Congregation | c/o Tarter Krinsky & Drogin LLP, 1650 Broadway, New York, New York 10018 | UNKNOWN | | |
| GenServe, Inc. (GENSER) | 100 Newton Road Plainview, NY 11803 | $14,934.19 | X | |
| Global Parking LLC (ICON) | 143-145 West 40th Street, New York, NY 10018 | $3,845.00 | | |
| Grainger (GRAING) | 58-45 Grand Ave., Maspeth, NY 11378 | $4,928.46 | | |
| Green Mechanical Corp. (GREENMECH) | 118 E 28th St Rm 805, New York, NY 10016 | $2,395.25 | | |
| Harriet Larkins | c/o Jay H. Tanenbaum, Esq., 14 Wall Street, Suite 5F, New York, NY 10005 | UNKNOWN | | X |
| Holland and Knight LLP | 31 West 52nd Street, New York, NY 10019 | $6,782.15 | | X |
| Hospitality Resource Industries (HRI) | 31 West 34th Street, 8th Floor, Ste. 8141, NY, NY 10001 | $7,032.53 | | |
| Hotel Engine, Inc. (HOTENG) | PO Box 121956, Dallas, TX 75312 | $23.76 | | |
| HY Attraction Manager LLC (EDGE) | The Related Companies, LP, 60 Columbus Circle, NY, NY 10023 | $482.55 | | |
| Hydronic Concepts Plumbing & Heating Inc. (HYDRONIC) | 1776 Broadway, New York, NY 10019 | $5,153.05 | | |
| IMCMV Holdings Consolidated (IMCMV) | 4901 Vineland Road, Ste, 600, Orlando, FL 32811-7196 | $588,698.30 | | |
| Intras Services Group, LLC (INTRAS) | 770 Windrose Ave., Ste. 300, Plano, TX 75024 | $3,004.24 | | |
| L.I. Automatic Doors (LIAUTO) | 26 W. Old Country Road, Hicksville, NY 11801 | $689.56 | | |
| Lodging Kit Company, Inc. (LODKIT) | 13492 State Route 12, Boonville, NY 13309 | $3,022.24 | | |
| Lothrop Associates LLP | 333 Westchester Avenue, White Plains, NY 10604 | $15,113.00 | | |
| Margaritaville Hospitality Group (MARGA) | 6900 Turkey Lake Rd, Ste. 200, Orlando, FL 32819 | $1,205,935.31 | | |
| Marlin Business Bank (MARLIN) | PO Box 13604, Philadelphia, PA 19101-3604 | $3,847.53 | | |
| Meltzer, Lippe, Goldstein & Breitstone LLP | 190 Willis Avenue, Mineola, NY 11501 | $47,056.87 | | |
| Metalprogetti Conveyors and Automation, LLC (MTLPRG) | 8 W. Sunnyslope Lane Pheonix, AZ 85020 | $1,750.00 | | |
| Michael Nicoletta | c/o The Licatesi Law Group, LLP, 423 RXR Plaza, East Tower, Uniondale, NY 11556 | UNKNOWN | X | |
| Midnight Sunday Social (MIDSUN) | 40 West 51st Street, New York, NY 10020 | $33,312.50 | | X |
| Miles Partnership LLP (MLLPAR) | 6751 Professional Parkway Ste 200, Sarasota, FL 34240 | $34,288.15 | | |
| Muchmore and Associates PLLC | 84 Withers Street, 4th Floor, Brooklyn, NY 11211 | $27,675.00 | | |
| Murray Hill Properties LLC (now Banyan Street Capital) | 250 Park Avenue, Ste. 1903, New York, NY 10177 | $700,000.00 | | |
| Nouveau Elevator Industries, LLC (NOUELE) | 47-55 37th Street, LIC, New York 11101 | $13,827.53 | | |
| NYC Water Board (NYC WATER) | PO Box 11863, Newark, NJ 07101-8163 | $37,567.98 | | |
| NYC Fire Department (CNY) | P.O. Box 412014, Boston, MA 02241-2014 | $3,680.00 | | |
| Olsen, Pearl, Olsen | 302 Bar Harbor Road, Freehold, NJ 07728 | $7,965.00 | | |
| One Day Masterpeices (ONEDAY) | 2101 Premier Row, Orlando, FL 32809 | $64.94 | | |
| PA Mechanical Services, LLC (PAMECH) | PO Box 912, Easton, PA 18044-0912 | $3,157.38 | | |
| Premier Compaction Systems (PCS) | 264 Lackawanna Ave., Woodland Park, NJ 07424 | $388.68 | | |
| Premiere Advisory Group (PREADV) | 276 Fifth Ave., Ste 704, PMB 23, New York, NY 10001 | $4,900.00 | | |
| ProActive Technology Group, LLC (PROACT) | 14 Plaza Rd, Greenvale NY 11548 | $5,146.44 | | |
| Professional Sports Publications (PROSPO) | 303 Merrick Road, Ste. 200, Lynbrook, NY 11563 | $24,500.00 | | |
| Proper Hospitality Solutions LLC (PHS) | 225 West 39th Street, New York, NY 10018 | $217,869.08 | | |
| Protravel International, LLC (PROTRA) | 1633 Broadway, 35th Fl, New York, NY 10019 | $149.50 | | |
| Quench, USA (QUENCH) | PO Box 735777, Dallas, TX 75373 | $326.63 | | |
| Quinn McCabe LLP | 9 East 40th Street, 14th Fl., New York, NY 10016 | $34,054.94 | | |
| Regency Group (REGEN) | 251 West 39th Street, 6th Floor, New York, NY 10018 | $65.66 | | |

# MASTER LIST OF CREDITORS

| Creditor | Address | Amount |
|---|---|---|
| Revival New York (REVIV) | 2581 Richmond Terrace, Staten Island, NY 10303 | $49,468.45 |
| Sabre Hospitality solutions (SABRE) | 3150 Sabre Drive, MD 8502, Southlake, TX 76092 | $17,858.40 |
| Scheman & Grant Inc. (SCHGRA) | 545 8th Ave., New York, NY 10018 | $1,276.14 |
| Simon Industries, LLC (SIMON) | 45-02 37th Ave., Long Island City, NY 11101 | $3,602.60 |
| Soho Properties Inc. | 362 Fifth Avenue, 6th Floor, New York, NY 10001 | $175,000.00 |
| Soho Properties Management LLC | 362 Fifth Avenue, 6th Floor, New York, NY 10001 | $39,847.52 |
| Sonifi Solutions, Inc. (SONIFI) | 3900 W. Innovation St, Sioux Falls, SD 57107 | $15,620.12 |
| Steven Winter Associates, Inc. | 55 North Water Street, Norwalk, CT 06854 | $1,525.00 |
| STR (COSTAR) | PO Box 7410662, Chicago, IL 60674 | $3,050.68 |
| TA Connections (TACONN) | PO Box 74008563, Chicago, IL 60674 | $143.40 |
| TGI Office Automation, Inc. (TGI) | 120 3rd Street, Brooklyn, NY 11231 | $1,338.16 |
| Total Fire Protection (TFP) | 111 Crossways Park Drive West, Woodbury NY 11797 | $21,311.53 |
| Tour Connection Inc (TOURCON) | 511 Olde Towne Rd/PO Box 80220, Rochester, MI 48308 | $395.00 |
| Town House Specialty Cleaning Co. (TOWHOU) | 343 W 36th Street, Ste. 601, New York, NY 10018 | $15,242.50 |
| Travel Incoporated (TRAVINC) | 4355 River Green Parkway, Duluth, Georgia 30096 | $81.01 |
| TravelClick, Inc. (TCLICK) | 75 New Hampshire Avenue, Ste. 300, Portsmouth, NH 03801 | $8,564.42 |
| Troutman Pepper Hamilton Sanders LLP | 875 Third Avenue, New York, NY 10022 | $4,957.50 |
| Valcon Construction Advisors, Inc. | 181 Westchester Avenue, Room 403B, Port Chester, NY 10573 | $92,610.32 |
| Windsor VacParts (WINDVAC) | Mid-Atlantic Distribution Center, PO Box 1457, Ocean View DE 19970 | $754.50 |
| WNC Laundry LLC (WNCLAU) | 15 Elizabeth CT, Staten Island, NY 10307 | $26,906.50 |
| | **Total:** | **$11,292,443.16** |
| | | |
| | **Grand Total of Creditors:** | **$167,944,461.26** |