```
              UNITED STATES BANKRUPTCY COURT
              SOUTHERN DISTRICT OF NEW YORK
```

1

2    ------------------------------------
     In re:                              |  Case #23-11289-pb
3                                        |  New York, New York
        560 SEVENTH AVENUE OWNER PRIMARY LLC,  September 5, 2023
4                             Debtor.    |  2:30 p.m. calendar
     ------------------------------------

5            560 SEVENTH AVENUE OWNER PRIMARY LLC AND
             560 SEVENTH AVENUE OWNER SECONDARY LLC

6
     DOC 3 MOTION TO AUTHORIZE PAYMENT OF PRE-PETITION PAYROLL FILED
7    BY KEVIN J. NASH ON BEHALF OF 560 SEVENTH AVENUE OWNER PRIMARY
     LLC; AND DOC 7 AMENDED MOTION TO APPROVE USE OF CASH COLLATERAL

8

9       - APPEARANCES BEFORE THE HONORABLE PHILIP BENTLEY -

For debtor:                      KEVIN J. NASH, ESQ.
10                               Goldberg Weprin Finkel Goldstein LLP
                                 125 Park Avenue, 12th Floor
11                               New York, New York 10017
                                 (212) 301-6944
12                               kjnash@gwfglaw.com

13
For OWS CRE Funding, LLC:        INGRID BAGBY, ESQ.
14                               GREGORY PETRICK, ESQ.
                                 MICHELE MAMAN, ESQ.
15                               Cadwalader, Wickersham Taft LLP
                                 200 Liberty Street
16                               New York, New York 10281
                                 (212) 504-6000
17
For AREPIII MVTS, LLC and        HARVEY A. STRICKON, ESQ.
18  CREP Times Square Hotel LLC:  Paul, Hastings, Janofsky Walker LLP
                                 75 East 55th Street
19                               New York, New York 10022-3205
                                 (212) 318-6000
20                               harveystrickon@paulhastings.com

21
For Margaritaville               DAVID B KURZWEIL, ESQ.
22  Enterprises:                 Greenberg Traurig, LLP
                                 3333 Piedmont Road NE, Suite 2500
23                               Atlanta, Georgia 30305
                                 (678) 553-2680
24                               kurzweild@gtlaw.com

25       (Proceedings recorded by electronic sound recording)

2

- A P P E A R A N C E S -

| | |
|---|---|
| For DHG TSQ, LLC: | ROBERT M. SASLOFF, ESQ.<br>FRED B. RINGEL, ESQ.<br>Leech Tishman Robinson Brog PLLC<br>875 Third Avenue, 9th Floor<br>New York, New York 10022<br>(212) 603-6300 |
| For IMCMV Times Square, LLC: | JEFFREY A. REICH, ESQ.<br>LAWRENCE R. REICH, ESQ.<br>Reich, Reich & Reich P.C.<br>235 Main Street, Suite 450<br>White Plains, New York 10601<br>(914) 949-2126; (914) 949-1604 fax |
| For United States Trustee: | BRIAN S. MASUMOTO, ESQ.<br>One Bowling Green<br>New York, New York 10004-1408<br>(212) 510-0500<br>nysbnotice@gmail.com |

**LISTEN ONLY**

| | |
|---|---|
| For OWS BCA Funding, LLC: | RAYMOND NAVARO, ESQ.<br>ANTHONY GREENE, ESQ.<br>Cadwalader, Wickersham Taft LLP<br>200 Liberty Street<br>New York, New York 10281<br>(212) 504-6000 |
| For Debtwire: | TAYLOR HARRISON<br>1501 Broadway<br>New York, New York 10036<br>(859) 559-5694<br>taylor.harrison@iongroup.com |
| For Contract-Counterparty of Subsidiary: | SARA HOFFMAN, ESQ.<br>Greenberg Traurig, LLP<br>One Vanderbilt Avenue<br>New York, New York 10017<br>(212) 801-6834<br>hoffmans@gtlaw.com |
| For The ABI Project: | UDAY GORREPATI<br>2725 Turtle Ridge Drive<br>Bloomfield Township, Michigan 48302<br>(313) 284-7244<br>uday.gorrepati@gmail.com |

560 Seventh Avenue Owner Primary - 9/5/23                    3

1      THE COURT:  Good afternoon.  We are here this

2   afternoon on, principally, the debtors proposed second interim

3   cash collateral order.  And I believe we're also here for the

4   final payroll order.  Mr. Nash, shall we begin with that?  Do

5   you want to speak to that?

6      MR. NASH:  Yes, if I could.  Kevin Nash for the

7   debtor.  If I could just speak to that.  If Your Honor recall,

8   under the first day orders, we had what I would call a wage

9   order that allowed certain transition or overlap payrolls to be

10   made.  That was done and completed.  We did set up today's

11   hearing to see if there's any follow up objections to that,

12   because we styled it, if you're on a recall, as an interim, and

13   technically, today is the final.  I have received no objections.

14   I don't believe then any were filed.  And so, I would ask the

15   court to finally approve what we did on an interim basis.

16      THE COURT:  All right.  And does anybody else wish to

17   be heard with respect to the proposed payroll order?

18      MR. MASUMOTO:  Good afternoon, Your Honor, Brian

19   Masumoto for the Office of the United States Trustee.  Your

20   Honor, I don't have any opposition to the order per se, but I

21   did want to raise an issue because I believe it has some

22   connection to the cash collateral order, which has a cash

23   management component, which is that the wage order made clear

24   that payments to at least one employee, the hotel manager, I

25   believe, Grace Moore is being paid by the debtor.  So, there are

560 Seventh Avenue Owner Primary - 9/5/23                    4

1  different accounts that may be implicated with respect to the

2  debtor.  Our office is in communication with the debtor, and I

3  believe we have, in fact, a conference later this week regarding

4  the debtor's bank accounts.  But given that, there are employees

5  of the debtor, who seem to be paid, other than by accounts that

6  are not strictly the debtor's account, and I wanted to make it

7  clear that approval of the payroll order, which may approve

8  payments for employees through other than the debtors bank

9  accounts, is not an indication of our approval of their cash

10  management system.

11          THE COURT:  All right.

12          MR. SASLOFF:  Your Honor, Robert Sasloff from Leech

13  Tishman.  I am speaking on behalf of the manager, and I don't

14  have any objection to a final order being entered either.  I

15  just wanted to put on a record that we wanted the terms of the

16  so called interim order to be carried through to the final

17  order.  And with that, we would obviously support entry of a

18  final order.

19          THE COURT:  And have you had an opportunity to see the

20  proposed final order?

21          MR. SASLOFF:  I don't know if my partner, Fred Ringel,

22  had or had not.  We presumed it was not going to be any

23  different than the interim.

24          MR. NASH:  Kevin Nash, Your Honor.  If I could just

25  respond?  It would be the same form of the order.  And the

1   employee that we're talking about is a financial type of person

2   that the manager, Dream, through an affiliate, paid an allocated

3   share of that employee's salary.  And I guess it was a

4   chargeback to the debtor.  We are paying it directly under our

5   DIP account.  And so, I'll make the appropriate adjustment for

6   the U.S. Trustee.  It'll go through the DIP account, so it can

7   be clearly tracked.

8         THE COURT:  All right.  Mr. Nash, have you submitted

9   the payroll order in Word form to chambers?

10         MR. NASH:  I did the interim, I will submit a final

11   sometime today or in the morning.

12         THE COURT:  Okay.  We will look for that, and I'm

13   prepared to enter that.

14         MR. NASH:  Thank you.

15         THE COURT:  All right.  So, let's turn to the main

16   matter on the agenda, the second interim cash collateral order.

17         MR. NASH:  Yes, Your Honor.  Kevin Nash for the

18   debtor.  Ms. Bagby's on for the secured creditor.  After

19   Thursday's hearing, I think we did some negotiation, and we put

20   together on a consensual basis what we style as a second interim

21   order.  It essentially carries us into early October.  The

22   lender wanted some, I guess, added protections is the best way

23   to describe it, and more definitive events of a termination vis-

24   à-vis the settlement that was reached last week with the

25   mezzanine lender.  So, we did incorporate a series of new

1  provisions that track, which we referenced in the preamble, the

2  settlement that was reached with the mezzanine lender and

3  entered on September 1st.

4           And essentially, I look at this, and I think the

5  lender looks at it the same way, it's a stronger type of

6  document for the lender in terms of the ability to come into

7  court or to issue a notice of termination.  But at the bottom

8  line level for the debtor, it does provide fair amount of use of

9  cash collateral, consistent with the budget, and we recognize

10 that the lender is going to have their eyes on the 45-day

11 period.  And as we get closer to the end of the 45-day period,

12 there'll be obligations on the debtors to file a formal motion

13 for DIP financing and the like.  We did discuss these new

14 provisions at length.  I think it was a fair compromise on the

15 language, and I think that the cash collateral stipulation and

16 the revised order is a tough one, but a fair one.  And the

17 budgets that we put together, I think, can make sense for the

18 next five to six weeks.  Even though we have a 13-week budget,

19 we're really operating on a month-to-month basis, so to speak.

20 And I think it's a fair proposal, and it's something that the

21 hotel obviously needs, use of cash collateral, and I think it

22 gives the proper reporting and transparency to the U.S.

23 Trustee's point.  Everything's going to run through the DIP

24 accounts, which have been opened at Wells Fargo Bank.  And so,

25 they're in place.  And I do think we'll be able to operate under

560 Seventh Avenue Owner Primary - 9/5/23                7

1   this cash collateral order.

2          There isn't a media payment due this week of about 1.7

3   million.  We did check the cash balances.  I think there's over

4   $2.4 million in the lockbox.  So, there is cash available to

5   meet that payment.  And I think in the main, it's a fair

6   allocation of risk on both sides.

7          THE COURT:  Okay, thank you, Mr. Nash.  I do have a

8   number of discrete questions and comments about some of the

9   provisions that show up in the blackline, some of the provisions

10  that have been added.  But before I turn to those, let me ask,

11  does anybody else wish to be heard with respect to the proposed

12  order generally?

13         MS. BAGBY:  Good afternoon, Your Honor.  It's Ingrid

14  Bagby from Cadwalader, for OWS CRE Funding I LLC, the senior

15  lender.  As Mr. Nash said, we did negotiate the additional

16  provisions at some length.  Largely the order hues to the first

17  interim order.  But as Mr. Nash noted, there are specific

18  provisions that are intended to provide additional triggers as

19  well as additional transparency as to what is happening at the

20  property during this interim period, if you will, between when

21  the stay is lifted and when at least we understand what will be

22  happening next with respect to ownership of the hotel.  So, that

23  was the intention.

24         We did also, I would just flag for Your Honor, I'm

25  sure you saw it in the redline, paragraph 11.  One of the

560 Seventh Avenue Owner Primary - 9/5/23                    8

1  provisions that the lender would like is the ability to come to

2  court very quickly if something changes at the property or we

3  have a problem under the order.  And so, obviously, subject to

4  Your Honor scheduling and what the court requires, we would

5  like, at least the debtor, to be in agreement that we have the

6  right to come to court quickly if there is an issue.

7            THE COURT:  I saw that, and I have no problem with

8  that provision.  Okay.  Anybody else?  Mr. Masumoto, perhaps?

9            MR. MASUMOTO:  Yes, Your Honor.  Brian Masumoto for

10 the Office of the United States Trustee.

11           Your Honor, I'm not aware of whether or not a date has

12 been set for the final hearing.  I did want to indicate that

13 pursuant to the initial or the first interim order, there was a

14 provision granting a 45-day period by which the debtor can come

15 into compliance under Section 345, with respect to

16 collateralization of any accounts.  That 45-day period, I think,

17 expires on September 26th, I believe.  And so, whatever second

18 interim order is entered, I'd want to make sure that that

19 period, for coming into compliance, would be extended at least

20 through the final hearing date.

21           THE COURT:  So, have you had an opportunity to review

22 the terms of the order to see if it addresses that issue?

23           MR. MASUMOTO:  I don't believe I've seen the proposed

24 order, the second interim proposed order.  I did send an email

25 actually asking that.  I wanted to make sure that the 45-day

560 Seventh Avenue Owner Primary - 9/5/23                    9

1  period doesn't expire prior to the final hearing.

2           THE COURT:  So, let me ask if you have any other

3  comments, and then I want to hear from anyone else, and then Mr.

4  Nash can respond to everybody, including to the point you just

5  made.

6           MR. MASUMOTO:  Again, I did not see any revised

7  budget, but based upon your direction at the first hearing, I

8  don't know whether or not, one, the carve out for professional

9  fees has been finalized or whether or not that's going to be

10  kicked over until a final budget is submitted.  And also, I

11  believe as a carryover from the initial hearing, there was an

12  issue as to what burial expense would be attributed.  I believe

13  all of those were part of forthcoming budgets.  I don't know

14  whether or not they're incorporated in the current budget or

15  whether or not it'll be finalized in the final budget for the

16  final year.

17           THE COURT:  So, I have to say, and I'm not sure

18  whether I'm addressing this to everybody or to one of you in

19  particular, but I really would hope that in the future, orders

20  like this, Mr. Nash, get circulated to the U.S. Trustee's office

21  because it's not particularly efficient to resolve issues like

22  this on the fly at the hearing.

23           MS. BAGBY:  Your Honor, if I may be heard?

24           THE COURT:  Sure.

25           MS. BAGBY:  Just on that point, we did, I believe we

560 Seventh Avenue Owner Primary - 9/5/23                10

1  copied, and my colleague is verifying, that we copied Mr.

2  Masumoto's office on our submission to chambers on Friday.  So,

3  it was certainly our intention.  I apologize if for some reason

4  -- email is a tricky thing for all of us.  I apologize if it did

5  not make it through, but certainly, it was our intention and we

6  did attempt to make sure that his office received it on Friday.

7          THE COURT:  Yeah, Mr. Masumoto, I'm looking at the

8  email now, it does look like it was sent to you.

9          MR. MASUMOTO:  My apologies, Your Honor.  I guess I

10  missed it, and so, I did not have a chance to evaluate.  But I

11  just wanted to make sure, since this was an interim, it didn't

12  necessarily have to be finalized.  I just wanted to make sure

13  that the issue was not dropped.

14          THE COURT:  So, let me respond in two ways.  First,

15  I'm not going to stick you with having missed your chance to

16  review this, but I would ask you, please, let's not have this

17  happen again.

18          MR. MASUMOTO:  Understood, Your Honor.  And my

19  apologies.

20          THE COURT:  Okay.  And I want to let you finish if

21  there's any other comments you wanted to make.  And then after

22  everyone else has been heard, Mr. Nash can respond to your

23  specific comments.

24          MR. MASUMOTO:  Nothing further, Your Honor.

25          THE COURT:  Okay.  Before we return the podium to Mr.

1   Nash, would anyone else like to be heard?  Okay.  Mr. Nash?

2          MR. NASH:  Yes, Your Honor, we did try to have burial

3   expenses contained in the carve out provisions under the order.

4   I think we hit the highlights of what the United States Trustee

5   wanted.  We did open up the Wells Fargo accounts, which I think

6   will be able to meet the § 345 requirements fairly easily, and

7   we will file all the necessary papers on that.

8          The budget, I think we carried forward our original

9   budget.  It was a 13-week budget, and I think we're in week

10  three or four of that budget.  And it'll run, if my math is

11  right, for another five weeks under the existing 13-week budget.

12  So, I think we'll be in weeks either 3, 4, 5, 6 or 7, or 4, 5,

13  6, 7 or 8.  And I think we're in pretty good standing in the

14  budget.  I will, of course, run by Mr. Masumoto all of the

15  issues on § 345.  I know that's a requirement of his office and

16  I will deal with the filing of any necessary paperwork on that.

17  We certainly wanted to have carve outs, as we discussed, for

18  burial expenses as well as a creditor's committee investigation.

19  And I have a limited carve out that I reduced in an effort to

20  get this cash collateral order in proper form.

21          THE COURT:  So, let me do this.  Let's just address a

22  process to bring to rest Mr. Masumoto's issues.  Do you need the

23  order entered today or is tomorrow just as good?  That's to you,

24  Mr. Nash?

25          MR. NASH:  I think the only thing, what we did the

560 Seventh Avenue Owner Primary - 9/5/23                    12

1    last time, if I recall, we had a hearing on a Tuesday, we asked

2    that the court allow us to fund into ADP, and ADP funds on

3    Friday in any event.  And I think today is Tuesday, so that's

4    the only urgency for this afternoon.

5           THE COURT:  So, I want to understand what you're

6    asking me to do.  I guess let me help you here.  What I'm

7    inclined to do to deal with Mr. Masumoto's issues is give him

8    some period of time, whether it's a couple of hours or a little

9    bit more than that, after the hearing to review the proposed

10   order, to speak with you about whether he believes any changes

11   need to be made.  I suppose now that you've heard his points,

12   you may want to think about whether there's a change or two you

13   need to make.  But I'd like to give the two of you whatever time

14   you need to bring that to rest.  Once that's done, I'd like you

15   to submit a Word version of the order with any changes you may

16   or may not make to chambers.  If you do make changes, I'd like

17   you to submit a blackline against the version I'm currently

18   looking at, not one that includes all the prior changes.  I just

19   want to see if anything's new.

20          MR. NASH:  Fair enough, judge.

21          THE COURT:  So, do you want to do that all today, so

22   that I can sign an order later today or tell me your preference.

23          MR. NASH:  My preference is to take the afternoon and

24   speak to U.S. Trustee.  The only thing I'm asking for you to do

25   today is authorize the payments into ADP, which won't be

560 Seventh Avenue Owner Primary - 9/5/23          13

1   released until Friday in any event.

2            THE COURT:  Does anybody on the Zoom hearing have a

3   problem with that request?  So, I am prepared to authorize that.

4   Do you need me to do anything further?  Or is what I just said

5   sufficient?

6            MR. NASH:  That's sufficient.  We did that the last

7   time, and it was sufficient.

8            THE COURT:  Okay.  All right.  So, then we'll wait to

9   get your revised order with a blackline if there's any changes,

10  plus a cover note saying that everybody has signed off.  And

11  once we get that we'll look at it and be prepared to enter it

12  promptly.  It sounds like tomorrow would work.

13           MR. NASH:  Yes, Your Honor.

14           THE COURT:  Okay.  All right.  So, let's move on then,

15  to a couple of issues I had.  The first was just perhaps more

16  curiosity than anything else, but I like to understand what I'm

17  signing.  So, this question, I think, is really addressed to Ms.

18  Bagby, and it relates to pages 18 to 20 of the blackline.  I'm

19  looking at the black line that was sent to chambers.  So, it's

20  the subparagraph.  The section you added called mezz borrow or

21  lift-stay termination events.  And I've read them, and I guess I

22  just want to understand a little bit of the logic behind them.

23  Let me start with how I understand them, and then you'll correct

24  me or flush this out.  Your concern is that we're now in a sort

25  of interim period, during which you don't have complete clarity

560 Seventh Avenue Owner Primary - 9/5/23          14

1   into where the debtor stands with respect to refinancing and

2   whether it's likely to be able to refinance and pay off your

3   client's loan in full by the deadline.  And as a result, you're

4   afraid that the debtor might perhaps do a bunch of things that

5   could harm the value of the property.  Right so far?

6          MS. BAGBY:  You're correct so far, Your Honor.  I

7   think there's a next part to that, but I don't want to

8   interrupt.

9          THE COURT:  Yeah, why don't you take over?

10          MS. BAGBY:  Okay.  So, I think Your Honor captured it

11   accurately that we are concerned in this interim period, and I

12   think I've expressed this to the court before, that depending on

13   what happens with the debtor's proposed search for financing, at

14   some point, the debtor may not be as incentivized to run the

15   hotel the way it is running the hotel now.  And so, what we

16   tried to do with this, with what I'll call little sub two, which

17   is the termination events, as well as the following paragraph

18   little three, is to capture many things that would impact the

19   value of the hotel.  Some of which, I would say, are things that

20   a debtor normally should come to the court and seek relief for,

21   for perhaps changing a significant contract.  But what we tried

22   to do is say, we don't want these things to happen, and we would

23   like a certification from you that these things haven't

24   happened.  And it's that second piece that's actually very

25   important to us, I think, because the debtor remains in

560 Seventh Avenue Owner Primary - 9/5/23                15

1   possession during this period, but we need to make sure we have

2   transparency that everything is sort of running pursuant to the

3   status quo, and that all of the sort of steps of preservation

4   that a debtor would normally take are being taken.  So, that's

5   the intention behind this.

6           THE COURT:  So, I understand all that.  That all makes

7   sense to me.  The one thing that I'm a little puzzled about is,

8   what would the debtor's motivation be -- I mean, I think the

9   common thread of the various things you list are things that

10  would harm the hotel.  And the scenario you're worried about is

11  where the debtor's principles conclude, they're going to lose

12  the hotel.  So, it doesn't hurt them to harm the hotel.  But how

13  does it help them?

14          MS. BAGBY:  Well, I'm not sure that it -- first of

15  all, I certainly don't want to ascribe motives to anyone.  This

16  is all, at this stage of the game, prophylactic from our

17  perspective.

18          THE COURT:  And let me make clear, I don't mean to

19  sling any mud myself either.  I'm just trying to understand the

20  thinking behind the lawyer's drafting.

21          MS. BAGBY:  Absolutely.  So, the concern is that it's

22  not perhaps necessarily that it would be malevolent intent.

23  Maybe it could be at some point.  As Your Honor pointed out, the

24  principals may determine that they cannot keep the hotel.  That

25  the financing is not available; they cannot keep the hotel.  It

1  may not help them to harm the hotel, but it may also just not be

2  motivational to go out of your way to make sure that everything

3  that needs to be done on a day-to-day basis is being done.  So,

4  I'd liken it to an economic incentive.  Right?  Once you take

5  away the economic incentive for running the hotel, which is

6  presumably your equity interest, then you have to ask, well,

7  what incentivizes you to make sure that, for example, you're in

8  compliance with all of your legal obligations?  And maybe the

9  answer is because you have to give a certification under your

10  cash collateral order.

11          THE COURT:  Okay.

12          MS. BAGBY:  But that's the thinking, Your Honor.

13          THE COURT:  Okay.  No, I appreciate that, and I

14  assumed that this is probably based on bitter experience that

15  you or your partners have had in past cases.  So, I'm not

16  questioning it, I just wanted to make sure I understood it.

17          MR. NASH:  Your Honor, if I could just weigh in?

18  Kevin Nash for the debtor.

19          THE COURT:  Yes.  Go ahead.

20          MR. NASH:  I understood the concerns.  I didn't

21  hesitate to negotiating incorporating language.  Because

22  obviously, we do take pride in the way the hotel is operating.

23  There is $77 million of equity that's been invested in this

24  hotel over and above the financing.  And we've had some ups and

25  downs with various creditors, but operationally, we're proud of

560 Seventh Avenue Owner Primary - 9/5/23                17

1  the fact where the hotel operates and how it's performing.  And

2  so, we didn't really hesitate on this.  These are, in my mind,

3  basic things that will be done no matter what, have to be done

4  no matter what.  And so, we didn't look at it this as

5  punishment, we looked at it as the lenders want to keep an eye

6  on the ball, they want the owners to keep an eye on the ball.

7  And we intend to do that.

8         We also recognize that there is a 45-day window that's

9  going to come to an end.  A lot of things happen towards the end

10  of windows.  The money that we believe that will come into this

11  is overseas monies.  And one of the managers has been overseas

12  since well before Labor Day.  So, we want to make sure, no

13  matter what, everybody can be proud of the way the hotel has

14  been operated.  The proof is in the pudding, so to speak.  The

15  occupancy levels are good.  The ADR room rates are good.  The

16  revenue per room is good.  It all was put forward in the

17  paperwork last week.  So, we don't object to this provision.  We

18  think it's intuitively correct on our part to be able to make

19  these certifications, and if there is a problem, to notify the

20  lender.

21         THE COURT:  Okay.  No, I appreciate both of your

22  comments, Mr. Nash and Ms. Bagby.  And I want to make sure

23  nobody misconstrues my comments.  Mr. Nash, I have no doubt that

24  your clients will act consistently in good faith, whatever the

25  situation turns out to be with respect to the refinancing.  But

560 Seventh Avenue Owner Primary - 9/5/23          18

1   I too have had many experiences where the lender and the debtor

2   don't trust each other, or are of a trust but verify mindset.

3   And so, I think it's very healthy that you and Ms. Bagby were

4   able to work out something that satisfies her clients concerns,

5   and that you're comfortable with.  And I gather that's what

6   you've done.  So, let's move on.  I'm glad the two of you worked

7   out those issues and didn't have to come running into court to

8   ask for relief to deal with them.

9         My remaining comments and questions relate to

10  paragraph 7.  It's on pages 24 to 25 of the clean version of the

11  order.  It's the paragraph called carve out.  And I think that

12  somebody was too hasty in drafting part of this paragraph

13  because part of it gets very complicated, and I think isn't

14  English and doesn't fit together.  It needs to be clarified.

15  And I'm referring to, basically, the bottom third of page 24,

16  starting with the italicized word "provided".  Do you see where

17  I'm looking?  Tell me when --

18        MR. NASH:  I'm just working off the redline.

19        THE COURT:  Oh, okay.

20        MS. BAGBY:  Yes, it's the bottom of page 25 of the

21  redline.

22        MR. NASH:  Yes, I see it.

23        THE COURT:  Okay.  So, I guess, just to put this in

24  context, I think where the drafting might have gotten a little

25  bit mucked up is, you're continuing this long sequence with

1   little one, two, three, and then where you put -- actually

2   little four and little five, I think that's a different

3   sequence.  It should be like X and Y because I don't think,

4   logically, it's a continuation.  I think the gist of what you're

5   saying is, professional fees, including a committee, if one is

6   appointed, are carved out subject to the following, right?

7   Provided, everything that follows the word "provided."  And

8   then, the subject to the following consists of several concepts.

9   And I guess what I want to do is talk through what those

10  concepts are, make sure that we're all on the same page, and

11  then ask the two of you to tweak the language to make sure it

12  clearly incorporates these concepts.

13          So, here's what I think you're doing here or trying to

14  do, is the proviso says, that the amount of professional fees

15  exclusive of creditor committee investigation, and let's call it

16  creditor committee lien challenge fees, shall not exceed the

17  lesser of, the amount in the budget, or the sum of 75,000.  But

18  it then gets confusing because you've already carved out

19  creditor committee lien challenge fees, but you then say the sum

20  of 75,000 for the debtor's counsel.  So, I can't tell whether

21  the 75 is for debtor and committee together.  I realize that the

22  odds of you having a committee are now very unlikely, but we

23  still have to assume it's possible, unless you want to just

24  change the drafting.  So, is the 75 for everybody or just

25  debtors counsel?

560 Seventh Avenue Owner Primary - 9/5/23                    20

1        MS. BAGBY:  Your Honor, it's Ingrid Bagby.  Our

2    understanding was that it was solely for debtors counsel, that

3    that was the intention.  I certainly understand Your Honor's

4    point with respect to the drafting.  That could be much cleaner.

5        THE COURT:  So, put aside the budget.  I want to

6    return to the approved budget because I had some separate issues

7    with that.  But put that aside for a second.  If we're just in

8    the world of what's now little five, it's 75 for the debtors

9    counsel and then what for the creditors committee?  I mean for

10   the creditors committee, it seems to me you address a subset of

11   their fees, but not the entirety of their fees.  You address

12   their fees for lien challenge, which won't be more than 50.

13       MS. BAGBY:  That's correct, Your Honor.  I think the

14   intention, and again, I'll let Mr. Nash speak.  But I think the

15   intention there was to ensure that they would get whatever was

16   in the allowed budget.  Now, there's obviously nothing in the

17   allowed budget now since there isn't a committee, but presumably

18   in the future, as you said, there could be a committee and their

19   fees would be captured in the budget.

20       THE COURT:  I see.

21       MS. BAGBY:  So, I think this may be a drafting where

22   we need to clear up the drafting.

23       THE COURT:  Okay.  But just to understand the concept

24   and Mr. Nash will speak up if he sees it differently.  But I

25   gather what you had in mind is, debtor won't spend more than 75,

560 Seventh Avenue Owner Primary - 9/5/23                21

1   debtor's professionals, creditors committee won't spend what's

2   more than in the budget, and the portion of its fees that go to

3   lien challenge won't exceed 50.  And that last piece would be a

4   subset of what's in the budget for the committee.

5         MS. BAGBY:  That's correct, Your Honor.

6         THE COURT:  Mr. Nash, are you on the same page?

7         MR. NASH:  Yes.  That was basically my understanding,

8   and I got to 75 because I believe that the budget was $25,000 a

9   month. and I thought that this would be an August, September,

10  October type of coverage, and that would equal the $75,000.  And

11  I thought we might have budgeted something for a creditors

12  committee in the budget, and the big item, if there is a

13  creditors committee, would be the investigation of the lien and

14  that's covered by the $50,000.

15        THE COURT:  Okay.  So, let's talk about the budget

16  because it's a different point, but it's intertwined.  These are

17  all intertwined.  Here's a problem I have there.  Approved

18  budget is defined on page 14 of the blackline, and it's

19  basically the budget that's attached to this order, plus all

20  subsequent budgets prepared by the debtor and approved by the

21  lender.  Right so far?

22        MS. BAGBY:  That's correct, Your Honor.

23        THE COURT:  Okay.  So, right now the budget doesn't

24  have anything for anybody's fees.  That's a problem.  It's a

25  problem if you're trying to apply this paragraph.  And there's a

1   further problem, which is even if the budget attached to your

2   proposed order had fees, the definition on page 14 allows that

3   to be changed from month to month without court approval.  So,

4   if I'm being paranoid or cynical, whatever the word is, and if a

5   committee were appointed, it leaves open the possibility that

6   the committee's fees get zeroed out or squeezed next month or

7   the month after without any judicial review.

8           MS. BAGBY:  Your Honor, if I may respond to that?

9           THE COURT:  Sure.

10          MS. BAGBY:  And then, I'll defer to Mr. Nash with

11  respect to the reflection of his fees on the budget or the lack

12  thereof.  So, the intention and how it's been working is that

13  there is a new budget, a refreshed budget, I would say every

14  week based on expenses.  So, as of now, there wouldn't be a

15  committee line reflected.  If there were a point in time in the

16  future where a committee were formed, obviously we would be

17  reflecting an amount for the committee, and I would expect that

18  that would be as part of a discussion, frankly, with committee

19  professionals and counsel.  So, I --

20          THE COURT:  Isn't the right way to deal with it -- I

21  mean, I realize that we're spending a lot of time now on

22  something that's very unlikely to happen, but nevertheless,

23  we're lawyers, we sort of have to do that.  Isn't the right way

24  to put in some sort of mechanism that says, if a committee is

25  appointed, the proper carve out for their fees will be dealt

560 Seventh Avenue Owner Primary - 9/5/23          23

1   with in an order that will come before the court for approval.

2           MS. BAGBY:  Oh, absolutely, Your Honor.

3           THE COURT:  Okay.

4           MS. BAGBY:  We're more than happy to include that.

5           THE COURT:  Let's do that.  That's what was missing

6   here from my standpoint.  And that would solve that part of the

7   problem.  Then I guess it still leaves the sort of funny

8   question of, the initial approved budget, the one that's annexed

9   to the order I'm going to sign, doesn't have anybody's fees,

10  including the debtor, but you're asking me to sign an order

11  saying their fees won't exceed the amount that's not stated in

12  that budget.  I guess that means that it won't exceed 75,000 and

13  that's the end of it.  And if at some point you put numbers in

14  that budget, then that would be a potential lesser cap.

15          MS. BAGBY:  I defer to Mr. Nash on his fees.

16          MR. NASH:  Kevin Nash for the debtor.  That's the way

17  I understood it.  We had a discussion at $25,000 a month.

18  That's how we got to $75,000.  We did keep those items open.  I

19  guess they were still under discussion earlier on.  But yes, the

20  $25,000 a month is an appropriate cap in my mind.

21          THE COURT:  Okay.  All right.  Then I guess maybe for

22  that piece of the issue I had, maybe we can essentially leave

23  that part of it as is, but with the understanding that, if at

24  some point there's a dispute over the amount of fees in the

25  budget to cover the debtor's professionals, the parties can

560 Seventh Avenue Owner Primary - 9/5/23                    24

1    bring it to me for a resolution.

2            MS. BAGBY:  We understand, Your Honor, and agree.

3            THE COURT:  Okay.  All right.  The final comment I had

4    here is just a typo, and that is, near the end of the passage

5    we're looking at, it says, to the extent permitted under

6    paragraph 10 hereof, it's now paragraph 9.

7            MS. BAGBY:  We'll make that change, Your Honor.

8            HE COURT:  Yeah.  Okay.  So, is the right way to leave

9    this, is that the two of you will put your heads together, tweak

10   the language in light of the discussion we just had, and submit

11   it to me?  And I'll review it.  And if I need to get you back on

12   a Zoom, I'll let you know.  But I expect it's highly likely that

13   the two of you will solve it quite nicely between yourselves.

14           MS. BAGBY:  We're happy to do so, Your Honor.  I'm

15   hopeful we can do that.

16           THE COURT:  I am too.  Okay, very good.  So, those are

17   the only comments I had.  I will leave it to the two of you and

18   Mr. Masumoto to deal with the follow up, and we'll get your

19   revised order when we get it, and we'll turn to it promptly.

20           MR. MASUMOTO:  Excuse me, Your Honor?  Brian Masumoto

21   for the Office of the United States Trustee.

22           Your Honor, I was wondering, have the parties and

23   chambers agreed upon a final hearing date?  Will the next cash

24   collateral hearing be a final hearing, and has that date been

25   agreed upon?

560 Seventh Avenue Owner Primary - 9/5/23                    25

1      THE COURT:  I don't actually know the answer.  Mr.

2   Nash, do you know the answer?

3      MR. NASH:  We haven't called chambers, but I do

4   believe it's going to be either the week before October 15th or

5   around October 16th.

6      MR. MASUMOTO:  All right, thank you.  Your Honor, just

7   one final point.  I did discuss prior to the hearing with Mr.

8   Nash, it is my understanding that the debtors will file their

9   schedules and statement of financial affairs by Thursday of this

10  week.  I wanted to make sure that there was sufficient time for

11  the documents to be filed prior to the 341 meeting.  That will

12  be a combined 341 meeting for both the primary and secondary

13  debtors.

14      THE COURT:  When is that scheduled for?

15      MR. MASUMOTO:  September 18th is the date for the 341

16  hearing.

17      THE COURT:  Okay.

18      MR. MASUMOTO:  I took it, that if in fact they filed

19  by Thursday, that should be sufficient time for parties to

20  review the filing for purposes of the 341 hearing.

21      THE COURT:  All right, Mr. Nash, did you want to

22  respond to that?

23      MR. NASH:  Yes.  I ask till to Thursday.  The

24  schedules are substantially complete.  I just want another day

25  to review them, and we'll have them on Thursday on the docket.

560 Seventh Avenue Owner Primary - 9/5/23                26

1      THE COURT:  All right.  I think that completes today's

2  hearing.  Is there any final issue that anybody would like to

3  bring up?

4      MR. NASH:  I wouldn't, Your Honor, I'd just like to

5  comment.  Obviously, over the weekend, Jimmy Buffett died, and I

6  didn't realize.  I kind of realized, but he was an iconic

7  figure, and a lot of the weekend was devoted to him, so I do

8  salute him.

9      THE COURT:  You know, it makes me wonder, I hope that

10  his passing is not a negative for the debtors here.  I would

11  think it might give you a short term boost in profits, but I

12  hope that long term, it bodes, at least not negatively, for the

13  enterprise.

14      MR. KUZWEIL:  Your Honor, David Kurzweil on behalf of

15  Margaritaville Enterprises.  We'd like to thank the court for

16  its acknowledgement of Jimmy Buffett, prior to starting the

17  hearing.  So, thank you for that.

18      THE COURT:  Well, he certainly was a real presence in

19  American life.  So, my best wishes to everybody in the

20  enterprise and, by extension, in his family.

21      MR. KURZWEIL:  Thank you, Your Honor.

22      THE COURT:  All right, thank you, everybody.

23      MR. NASH:  Thank you, judge.

24      THE COURT:  Until next time.

25      MR. NASH:  Yes.

560 Seventh Avenue Owner Primary - 9/5/23                    27

1        THE COURT:  Take care.

2        MS. BAGBY:  Thank you.

3        MR. MASUMOTO:  Thank you, Your Honor.

4                        - oOo -

5                     CERTIFICATION

6   I, Rochelle V. Grant, approved transcriber, certify that the

7   foregoing is a correct transcript from the official electronic

8   sound recording of the proceedings in this matter, 23-11289-pb,

9   held on 9/5/23.

10  *Rochelle V. Grant*

11  September 6, 2023

12  Transcribed by:
    AA Express Transcripts
13  195 Willoughby Ave, Ste 1514
    Brooklyn, NY 11205
14  (888) 456-9716
    contact@aaexpresstranscripts.com

15

16

17

18

19

20

21

22

23

24

25