**TARTER KRINSKY & DROGIN LLP**
*Counsel to Garment Center Congregation*
1350 Broadway, 11th Floor
New York, New York 10018
Tel (212) 216-8000
Scott S. Markowitz, Esq.
Debra Bodian Bernstein, Esq.
smarkowitz@tarterkrinsky.com
dbernstein@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:

560 Seventh Avenue Owner Primary LLC,

Debtor.

----------------------------------------------------------x

Chapter 11

Case No.: 23-11289 (PB)

## GARMENT CENTER CONGREGATION'S OBJECTION TO THE MOTION BY CUBESMART, L.P. FOR RELIEF FROM THE AUTOMATIC STAY

Garment Center Congregation, party in interest ("Garment Center"), by and through its undersigned counsel, respectfully submits this opposition to the motion by CubeSmart, L.P. ("CubeSmart") for an order modifying the automatic stay.

1.       Pursuant to a lease agreement dated May 4, 1977 (as amended by a First Lease Amendment and a Second Lease Amendment, the "Lease") between the Debtor and Garment Center, which Lease has been the subject of prior litigation in this bankruptcy proceeding, the Debtor is obligated to pay for the storage of Garment Center's personal property, which includes memorial plaques, prayer books, prayer shawls, furniture, and other significant, sacred and irreplaceable items, until Garment Center is moved back into the permanent space that the Debtor is obligated to build for Garment Center.  (See First Amendment to Lease, para. 4, amending Article 43 of Lease; Exhibit "A" hereto).  Many of these items are being stored by Debtor at CubeSmart's storage facility in Plainview, New York.

2.      Based on the Debtor's apparent failure to continue to pay the storage fees to CubeSmart, CubeSmart is seeking to modify the automatic stay to permit CubeSmart to exercise its purported non-bankruptcy rights and remedies with respect to Garment Center's personal property that is contained in the CubeSmart storage unit that is being rented by the Debtor. CubeSmart states in its motion papers that it is seeking to obtain possession of and sell the property, which belongs to Garment Center, and apply the resulting proceeds to the amounts owed by Debtor to CubeSmart.

3.      We have been advised that the Debtor is working with CubeSmart to pay the outstanding debt and pay the storage fees moving forward, and that a resolution is imminent. However, since the matter has not yet been settled and CubeSmart's motion has not been withdrawn, Garment Center submits its vigorous opposition to the motion, because it is Garment Center's irreplaceable personal property that is contained in the storage unit. Garment Center's property should not be removed from the storage unit by CubeSmart or anyone on its behalf.

4.      Additionally, because of the Debtor's outstanding balance to CubeSmart for the storage unit, Garment Center has been denied access by CubeSmart to the storage unit. Garment Center has been attempting to access the unit to obtain items that belong to, and have been requested by, individual members of the congregation.

5.      CubeSmart's motion should be denied, and this issue should be resolved promptly by the Debtor so that Garment Center's personal property remains safely in the storage facility and

Garment Center is allowed access to its personal property.

Dated: New York, New York
September 10, 2024

**TARTER KRINSKY & DROGIN LLP**
*Counsel to Garment Center Congregation*

By: */s/ Debra Bodian Bernstein*
Scott S. Markowitz, Esq.
Debra Bodian Bernstein, Esq.
1350 Broadway, 11th Floor
New York, New York 10018
Tel: (212) 216-8000
smarkowitz@tarterkrinsky.com
dbernstein@tarterkrinsky.com

**EXHIBIT A**

## FIRST AMENDMENT TO LEASE

**THIS FIRST AMENDMENT TO LEASE** (this "**Amendment**") is made and entered into as of the 7th day of February, 2014, by and between SEVENTH AVENUE DEVELOPMENT, LLC, a Delaware limited liability company, having an address at c/o Soho Properties Inc., 31 West 27th Street, 9th Floor, New York, New York 10001 ("**Successor Landlord**"), and GARMENT CENTER CONGREGATION, a New York religious corporation, having an address at 205 West 40th Street, New York, New York 10018 ( "**Tenant**").

## W I T N E S S E T H :

**WHEREAS**, Tenant and Albert A. List entered into that certain lease dated May 4, 1977, and recorded in the Office of the City Register, New York County, on May 6, 1977 at Reel 399 Page 920, which lease was assigned to The New School (formerly known as New School for Social Research) a New York educational corporation ("**Landlord**") pursuant to an Assignment of Leases, by and between Albert A. List and New School for Social Research, dated June 29, 1978 (collectively the "**Lease**") for a portion of the Premises (defined below) consisting of all of the ground floor, excepting the lobby area, and all of the basement, excepting the mechanical rooms, as such demised premises are more specifically described in the Lease (collectively the "**Demised Premises**");

**WHEREAS**, Successor Landlord is Purchaser under that certain Agreement of Sale, dated as of September 27, 2013, by and between Successor Landlord and Landlord as the Seller (the "**Agreement of Sale**"), of that certain parcel of land located at 560 7th Avenue and 205 West 40th Street, New York, New York 10018 (as more particularly described on Exhibit "A" attached hereto and made a part hereof) together with all appurtenances, buildings and other improvements in or affecting the land (collectively the "**Premises**"), which includes the Demised Premises;

**WHEREAS**, the Lease contains provisions for temporary relocation of Tenant to space other than the Demised Premises (the "**Interim Quarters**") in order to permit redevelopment of the Premises by the owner thereof, which must include restoration of Tenant's occupancy to newly-constructed space within the Premises (the "**Permanent Quarters**") once construction of the Permanent Quarters has been completed;

**WHEREAS**, Tenant and Successor Landlord desire to document in this Amendment their agreement concerning certain details applicable to such relocation and restoration and to provide for a payment to Tenant in consideration for Tenant agreeing, in this Amendment, to have its occupancy temporarily relocated earlier than the date provided for in the Lease in order to permit redevelopment of the Premises; and

**WHEREAS**, Successor Landlord and Tenant desire to amend the Lease upon the terms and conditions hereinafter set forth, but to be effective only upon, and conditioned on the occurrence of, the Closing Date under the Agreement of Sale (*i.e.* the date on which a deed to the Premises shall be delivered and title thereto conveyed to the Successor Landlord) (the "**Effective**

1

**Date**"), except to the extent that this Amendment expressly provides that certain terms shall take effect immediately upon execution of this Amendment);

**NOW, THEREFORE**, in consideration of Ten and 00/100 Dollars ($10.00) and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. The recitals to this Amendment are hereby incorporated herein by reference. All capitalized terms used herein, which are not specifically defined in this Amendment, shall have the meanings ascribed in the Lease unless the context clearly indicates otherwise. From and after the Effective Date hereof, all references to "the Lease" or "this Lease" shall be deemed to mean the Lease, as amended by this Amendment.

2. From and after the Effective Date, the phrase in the first sentence of Article 43 which reads: "the parties hereto agree that at any time after the fortieth (40) anniversary of the commencement date of this lease" is hereby deleted in its entirety and replaced with "the parties hereto agree that at any time after the Effective Date".

3. From and after the Effective Date, the phrase in the first sentence of Article 43 which reads: "upon not less than six (6) months prior written notice to Tenant" is hereby deleted in its entirety and replaced with "upon not less than thirty (30) days prior written notice to Tenant".

4. From and after the Effective Date, Article 43 is hereby amended to add the following at the end thereof:

"Successor Landlord, at its sole cost and expense, shall enter into the lease or other occupancy agreement ("**Interim Quarters Lease**") with the landlord of the Interim Quarters ("**Interim Quarters Landlord**") which shall provide for occupancy by Tenant for a term, (x) to commence on the date reasonably agreed upon by Successor Landlord and Tenant, pursuant to the terms of the Lease, as the date that Tenant shall vacate the Demised Premises and relocate to the Interim Quarters, provided that the Interim Quarters is ready for occupancy and use by Tenant, and (y) to continue until and terminate no earlier than, the date that Tenant's occupancy has been restored by Successor Landlord into the Permanent Quarters. Interim Quarters Landlord shall look solely to Successor Landlord for any and all amounts payable, and for the performance of any and all other obligations of the lessee (other than any other obligations expressly agreed in a joinder by Tenant to the Interim Quarters Lease to be performed by Tenant itself (any such obligations, the "**Joinder Obligations**")), under the Interim Quarters Lease or otherwise with respect to the occupancy by Tenant of the Interim Quarters (except that Tenant shall be responsible for any damage to the Interim Quarters caused by Tenant that is not covered by insurance (or, if Successor Landlord failed to maintain the insurance required under the Lease, that would not have been covered by such insurance) and which is of a type for which Tenant would have been responsible under the terms of the Lease in the Demised Premises), and no default under the lease in such payment or

2

performance obligations (other than a default, after applicable notice and beyond applicable cure periods, by Tenant of any Joinder Obligations) shall disturb Tenant's use or occupancy of the Interim Quarters.  In addition to paying all of the costs of, and performing all of the other obligations (other than a default, after applicable notice and beyond applicable cure periods, by Tenant of any Joinder Obligations) under the Interim Quarters Lease and otherwise relating to, the temporary occupancy by Tenant of the Interim Quarters (notwithstanding any delays in Successor Landlord's construction of the New Building), Successor Landlord shall pay all the costs, subject to the parenthetical in clause (iii) hereinbelow as to legal and owner's representation costs  (including, without limitation, the costs listed on Schedule "I" attached hereto and made a part hereof) incurred by Tenant in connection with (i) development of, and review and approval of, the programming for, and the design and construction of, the Permanent Quarters, (ii) relocation of Tenant back to the Permanent Quarters, and (iii) all legal and owner's representation (subject to the caps set forth herein), design, engineering and other professional services in connection with documenting these transactions and confirming conformity of the construction of the Permanent Quarters to the plans and specifications subject to Tenant's approval in accordance with the provisions of Article 43 of the Lease, as the same are further defined by the provisions of this Amendment.  In the event that Tenant's occupancy in the Interim Quarters is disturbed, suspended or terminated for any reason whatsoever, other than due to willful and material misconduct by Tenant, Successor Landlord shall secure, at the sole expense of Successor Landlord, a replacement Interim Quarters acceptable to Tenant, in accordance with the programming for Tenant that the parties agreed to be applicable to the initial Interim Quarters.

Notwithstanding anything to the contrary in this Article 43, Tenant shall not be required to move on the dates listed on Schedule "IV" attached hereto and made a part hereof.

In further definition of the provisions of, and obligations under, this Article 43, Successor Landlord shall:

(a) use moving companies experienced in moving art to move Tenant's property to and from the Interim Quarters and the storage location, and from and back into the Permanent Quarters;

(b) provide storage of Tenant's property not relocated to the Interim Quarters for use in the Interim Quarters in a storage facility satisfactory to Tenant (including with controlled humidity for property which may be adversely affected without such controls), which storage contract shall be for Tenant's benefit, but such storage facility shall look solely to Successor Landlord for any and all amounts payable under the storage facility contract;

(c) prior to Tenant's move out of the Demised Premises, deliver to Tenant an architect's or counsel's opinion letter, addressed to Tenant and permitting reliance by Tenant, confirming that all legal or other requirements relating to zoning, land

3

use regulations, building code, plumbing code, mechanical code, fuel gas code, electrical code and energy code for Tenant, as a synagogue, to occupy the Permanent Quarters in the New Building, have been met or in all circumstances will be met; and

(d) place durable signs, in accordance with applicable law, acceptable to Tenant, on the construction site of the New Building advertising the address of the Interim Quarters and the future return of Tenant to the New Building, of sufficient size and location to provide adequate notice to existing and potential congregation members and attendees at services of the temporary relocation, and planned return, of Tenant.

Successor Landlord shall provide the Interim Quarters to Tenant in a location within the Permissible Quadrant (as defined in Schedule "II" hereto), which Interim Quarters shall satisfy, without limitation, the specifications listed on Schedule "II" attached hereto and made a part hereof. Both parties agree that the Interim Quarters must be in accordance with the provisions of Article 43 of the Lease, reasonably acceptable to Tenant as temporary space and reasonably sufficient to enable Tenant to conduct its affairs substantially as conducted at the Demised Premises, as the same is further defined by the provisions of this Amendment.

In further definition of the provisions of, and obligations under, Article 43, Successor Landlord shall design the Permanent Quarters in the New Building subject to Tenant's approval, which approval Tenant agrees not to unreasonably withhold or delay as provided in Article 43 of the Lease, as the same is further defined by the provisions of this Amendment, and such design shall satisfy, without limitation, the specifications listed on Schedule "III" attached hereto and made a part hereof.

5.      Within thirty (30) days following the execution of this Amendment, Successor Landlord shall prepare, and deliver to Tenant, for Tenant's approval, draft programming and minimum specifications for the Interim Quarters. In the event that Successor Landlord and Tenant fail to agree upon programming and minimum specifications for the Interim Quarters (the "**Interim Quarters Minimum Specifications**"), the Interim Quarters Minimum Specifications shall reflect programming and specifications in accordance with Schedule "II" hereto and, to the extent not addressed in such Schedule, shall be consistent with the use currently being made of the Demised Premises by Tenant.

6.      Prior to Tenant's move into the Interim Quarters, Successor Landlord shall prepare, and deliver to Tenant, for Tenant's approval prior to Successor Landlord's commencement of construction of the New Building, draft programming and minimum specifications for the Permanent Quarters. In the event that Successor Landlord and Tenant fail to agree upon programming and specifications for the Permanent Quarters (the "**Permanent Quarters Minimum Specifications**"), the Permanent Quarters Minimum Specifications shall reflect programming and minimum specifications in accordance with Schedule "III" hereto and,

4

to the extent not addressed in such Schedule, shall be consistent with the use currently being made of the Demised Premises by Tenant.

7.      On or after the Effective Date hereof, Successor Landlord or Tenant may, at its sole cost and expense, record this Amendment or a memorandum thereof in the form of Exhibit B hereto.

8.      In consideration for this Amendment, Successor Landlord agrees to pay to Tenant Five Million and 00/100 Dollars ($5,000,000.00) (the "**Funds**") as follows:

(a)  One Hundred Thousand and No/100 Dollars ($100,000.00) shall be paid by Successor Landlord to Tenant on the Effective Date and shall not be refundable to Successor Landlord for any reason other than a material default by Tenant under this Amendment which is not cured by Tenant within a reasonable time following written notice of the same;

(b)  Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00) (the "**Escrow Funds**") shall be paid by Successor Landlord either delivering funds in such amount into escrow, or delivering a Letter of Credit, in either case in accordance with Section 9 below, on the Effective Date, which funds in escrow, or the proceeds of a draw on such Letter of Credit, shall be released to Tenant no later than the earliest of (x) the date of Tenant's move out of the Interim Quarters (provided that actually completing such move is conditioned upon Successor Landlord's fulfillment of its obligations to construct the Permanent Quarters, prepare the Permanent Quarters and move Tenant out of the Interim Quarters and into the Permanent Quarters, as set forth in the Lease, as modified by this Amendment) and (y) the date of any default by Successor Landlord under the Interim Quarters Lease or this Lease, provided that Successor Landlord receives written notice and ten (10) business days to cure such default after such notice, and (z) the date, if any, that Successor Landlord has abandoned the completion of construction of the New Building or has surrendered the Premises to any of its lenders or any designee of any of them, or that a foreclosure action concerning the Premises or the equity in Successor Landlord has been commenced without being dismissed or stayed within 60 days after the date of commencement thereof.

(c)  Two Million Four Hundred Thousand and 00/100 Dollars ($2,400,000.00) (the "**Second Payment**") shall be paid by Successor Landlord to Tenant simultaneously with Tenant's move out of the Demised Premises (provided that actually completing such move out is conditioned upon Successor Landlord's fulfillment of its obligations to enter into the Interim Quarters Lease, prepare the Interim Quarters and move Tenant into the Interim Quarters, as set forth in the

5

Lease, as modified by this Amendment).

9.    Upon the Effective Date, Successor Landlord shall either (i) deposit the Funds described in Section 8(b) above with Stewart Title Insurance Company (the "**Escrow Agent**") in an interest bearing account with a "money center" bank which is authorized by the State of New York to and does conduct banking business in the State of New York, such as J.P. Morgan Chase Bank, N.A., Citibank, N.A., Wells Fargo Bank, N.A., Bank of America, N.A. or such bank otherwise reasonably acceptable to Successor Landlord and Tenant (an "**Acceptable Bank**"), pursuant to an escrow agreement to be executed by the parties simultaneously herewith (the "**Escrow Agreement**") in the form of Exhibit C hereto or (ii) provide an irrevocable, unconditional, "clean", transferable, commercial letter of credit naming Tenant as the beneficiary thereof (the "**Letter of Credit**"), issued by an Acceptable Bank, in form and substance reasonably acceptable to Successor Landlord and Tenant, with an expiration date no earlier than 365 days from the date of issuance.  In the event that such Letter of Credit is not renewed at least thirty (30) days prior to its expiration date, Tenant may draw on such Letter of Credit and apply the cash proceeds of the Letter of Credit as described in clause (9)(i) above.

10.    Without limiting the rights of Tenant or Successor Landlord under Article 43 of the Lease, as modified by this Amendment, in the event that (i) by March 31, 2015 Successor Landlord has presented to Tenant at least three (3) proposals for Interim Quarters that satisfy the Interim Quarters Minimum Specifications and which are available for lease to Successor Landlord for use by Tenant on terms in accordance with the provisions of this Lease, and Tenant has unreasonably rejected three (3) proposals for Interim Quarters that satisfy the Interim Quarters Minimum Specifications and  which are available for lease to Successor Landlord for use by Tenant on terms in accordance with the provisions of this Lease, and (ii) Tenant has not notified Successor Landlord, by May 1, 2015, that Tenant surrenders possession of the Demised Premises to Landlord in accordance with the provisions of Section 43 of the Lease and this Amendment, then, at Successor Landlord's option, the Escrow Funds or Letter of Credit shall be returned to Successor Landlord and Successor Landlord shall not be obligated to pay to Tenant the Second Payment, and Sections 2, 3, 8(b) and (c), and 9 above shall be of no further force or effect.  Successor Landlord acknowledges that Tenant has presented to Successor Landlord proposed interim quarters at 218 W. 40th Street and 224 W. 36th Street that are satisfactory to Tenant as locations and spaces that could be improved and furnished to meet the requirements under the Lease for the Interim Quarters; these locations are not considered locations that Landlord has presented to Tenant for purposes of this Section.

11.    In the event that Successor Landlord and Tenant fail to agree on any matter with respect to Tenant vacating the Demised Premises, including, without limitation, the sufficiency of the Interim Quarters or the terms of the occupancy agreement, the parties hereto hereby agree to engage Richard Fries, Marcus Rayner, Joshua Stein or Richard Claman to mediate such disagreement and to allow at least thirty (30) days for such mediation before resort to any other remedies.

12.    Successor Landlord (i) acknowledges that Tenant has hired Gibson Dunn & Crutcher LLP ("**Tenant's Counsel**") to advise Tenant regarding this transaction between

file:///I:\Users\MMcLeod\El-Gamal\Amendment to Lease

Successor Landlord and Tenant, (ii) agrees, upon the execution of this Amendment, to pay Tenant's Counsel's attorneys' fees and expenses relating to such matter through the date hereof, and thereafter shall remain obligated to pay, even if the Effective Date does not occur, for any reason, on or before the scheduled closing date under the Agreement of Sale, (A) the fees in an amount not to exceed an aggregate amount of Sixty-Five Thousand and No/100 Dollars ($65,000) for services rendered in connection with this Amendment by Tenant's Counsel through the Effective Date and (B) the fees in an amount not to exceed an aggregate amount of Six Thousand Five Hundred Dollars ($6,500) for review and comment on the Interim Quarters Lease and the Subordination, Non-Disturbance and Attornment Agreement (Successor Landlord acknowledges that it shall remain liable to pay the reasonable fees, subject to Section 13 hereof, of such firm for other services rendered to Tenant after the Effective Date), (iii) acknowledges that Tenant will hire Zubatkin Owner Representation, LLC or a similar owners representation firm ("**Tenant's Representative**") to (A) review, revise if necessary or advisable and approve the specifications in the schedules attached to this Amendment, the Interim Quarters Minimum Specifications, and the construction plans and specifications for the Permanent Quarters, (B) periodically inspect construction of the Interim Quarters and the Permanent Quarters, and (C) sign off on the construction, fixturing and any other task deemed necessary or advisable with respect to the Interim Quarters and the Permanent Quarters, and (iv) agrees to pay the fees and expenses of Tenant's Representative in the amount set forth for Phase I work in that certain Proposal for Owner's Representation Services, dated February 6, 2014, by Zubatkin Owner Representation, for such services even if the Effective Date does not occur, for any reason, on a monthly basis, not more than 30 days following the date of each invoice, as invoices for such services are rendered.

13.    In the event Successor Landlord or Tenant commences an action or proceeding against the other party with respect to the Lease, as modified by this Amendment, Tenant shall not be entitled to recover its expenses, including reasonable legal fees and expenses in connection therewith, unless Tenant is the prevailing party, in which case Tenant shall be entitled to recover its expenses, including reasonable legal fees and expenses in connection therewith.

14.    Except as herein expressly modified or amended, the Lease shall remain in full force and effect in accordance with its terms and the parties hereto ratify and confirm the same, as modified and amended hereby. Each party represents and warrants to the other that it has not issued a notice of default under the Lease, and that it does not have knowledge of any matter which constitutes, or which with the giving of notice, the passage of time or both, would constitute a default under the Lease.

15.    Tenant from time to time upon receipt of request by Successor Landlord shall execute and deliver such documents and take such further acts as may be necessary or appropriate to further effectuate this Amendment; provided that such request shall be at the sole cost and expense of Successor Landlord and shall not alter Tenant's rights under the Lease. This Amendment shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns. This Amendment shall be interpreted in accordance with the laws of the State of New York applicable to agreements executed and wholly performed therein. This Amendment may be executed in counterparts, each of which shall be deemed an original

7

and all of which, when taken together, constitute one and the same document.

16.    Successor Landlord represents and warrants that:

(a) Successor Landlord is a limited liability company duly organized, validly existing and in good standing under the laws of the State of New York and has complied with all certifications, filings and requirements necessary to continue as a limited liability company in the State of New York;

(b) Successor Landlord has all necessary authority to execute, deliver and perform its obligations under this agreement, its execution, delivery and performance of its obligations under this agreement has been duly authorized by all persons required therefor, and this agreement is the valid, legally binding and enforceable obligation of Successor Landlord; and

(c) The execution of this Amendment does not violate any agreements binding upon Successor Landlord or any provisions of Successor Landlord's organizational documents.

(d) To Successor Landlord's knowledge, the Lease, as modified by this Amendment, is in full force and effect, and Successor Landlord has no knowledge of any act, event, circumstance or condition which constitutes, or which with the giving of notice or the passage of time or both, would constitute, a default thereunder or which has impaired or which would impair the enforceability thereof.

17.    Tenant represents and warrants that:

(a) Tenant is a religious corporation duly organized, validly existing and in good standing under the laws of the State of New York and has complied with all certifications, filings and requirements necessary to continue as a religious corporation in the State of New York;

(b) Tenant has all necessary authority to execute, deliver and perform its obligations under this agreement, its execution, delivery and performance of its obligations under this agreement has been duly authorized by all persons required therefor, and this agreement is the valid, legally binding and enforceable obligation of Tenant; and

(c) The execution of this Amendment does not violate any agreements binding upon Tenant or any provisions of Tenant's organizational documents.

(d) To Tenant's knowledge, the Lease, as modified by this Amendment, is in full force and effect, and Tenant has no knowledge of any act, event, circumstance or condition which constitutes, or which with the giving of notice or the passage of time or both, would constitute, a default thereunder or which has impaired or which would impair the enforceability thereof.

18.    Notwithstanding anything to the contrary in the Lease, as modified by this Amendment, the Lease, as modified by this Amendment, shall not be subject and subordinate to any ground or underlying leases or to any mortgages which may now or hereafter affect the real property or the building of which the Premises form a part, or to any renewals, modifications,

8

consolidations, replacements or extensions thereof, unless the holder of each such mortgage and/or the landlord under each such lease shall agree in writing, for the benefit of Tenant, that as long as Tenant shall not be in default under any of the covenants, terms or conditions of this Lease on the part of Tenant to be performed and observed beyond the applicable periods of notice and grace, if any, such holder or landlord shall not join Tenant as a defendant in any action brought to foreclose any such mortgage or terminate any such lease due to a default by the tenant thereunder, and shall recognize this Lease and the term demised hereunder notwithstanding the foreclosure of any such mortgage or the termination of any such lease, provided the Tenant shall agree to attorn to the holder of any such mortgage or the purchaser at a foreclosure sale or the landlord under any such lease, if any such party shall become the landlord under the Lease.

19.     Neither Tenant nor any person who is on the Board of Directors of Tenant owns a controlling interest in or otherwise controls Tenant is (i) listed on the Specially Designated Nationals and Blocked Persons List or any other similar list maintained by the Office of Foreign Assets Control, Department of the Treasury, pursuant to any authorizing statute, Executive Order or regulation, (ii) a "specially designated global terrorist" or other person listed in Appendix A to Chapter V of 31 C.F.R., as the same has been from time to time updated and amended, or (iii) a person either (A) included within the term "designated national" as defined in the Cuban Assets Control Regulations, 31 C.F.R. Part 515 or (B) designated under Sections 1(a), 1(b), 1(c) or 1(d) of Executive Order No. 13224, 66 Fed. Reg. 49079 (published September 25, 2001) or a person similarly designated under any related enabling legislation or any other similar Executive Orders.

20.     Neither Successor Landlord nor any person who owns a controlling interest in or otherwise controls Successor Landlord is (i) listed on the Specially Designated Nationals and Blocked Persons List or any other similar list maintained by the Office of Foreign Assets Control, Department of the Treasury, pursuant to any authorizing statute, Executive Order or regulation, (ii) a "specially designated global terrorist" or other person listed in Appendix A to Chapter V of 31 C.F.R., as the same has been from time to time updated and amended, or (iii) a person either (A) included within the term "designated national" as defined in the Cuban Assets Control Regulations, 31 C.F.R. Part 515 or (B) designated under Sections 1(a), 1(b), 1(c) or 1(d) of Executive Order No. 13224, 66 Fed. Reg. 49079 (published September 25, 2001) or a person similarly designated under any related enabling legislation or any other similar Executive Orders.

21.     Each party hereto has taken measures as required by law to assure that, with respect to each holder of a direct or indirect interest in such party, funds invested by such holders directly or indirectly in such party, are derived from legal sources and such measures have been undertaken in accordance with the Bank Secrecy Act, 31 U.S.C. §§ 5311 et seq., and all applicable laws, regulations and government guidance on compliance therewith and on the prevention and detection of money laundering violations under 18 U.S.C. §§ 1956 and 1957.

22.     This Amendment and the Lease contain the entire agreement of the parties with respect to the subject matter hereof and all prior negotiations, understandings or agreements between the parties with respect to the subject matter hereof are merged herein.

file:///I:\Users\MMcLeod\El-Gamal\Amendment to Lease

23.     Except as expressly set forth herein, all of the terms, provisions, covenants and conditions of the Lease shall remain unmodified, in full force and effect, and binding upon the parties hereto, their respective legal representatives, successors and permitted assigns.   The Lease, as amended by this Amendment, is hereby ratified and confirmed.   In the event of a conflict or inconsistency between a provision in the Lease and a provision in this Amendment, the provision in this Amendment shall control to the extent of such conflict or inconsistency.

24.     This Amendment shall not be changed, modified or cancelled orally, but only in a written instrument executed by both parties hereto.

{Signature Page Follows}

file:///I:\Users\MMcLeod\El-Gamal\Amendment to Lease

**IN WITNESS WHEREOF**, the parties hereto have duly executed and delivered this Amendment to as of the date first written above.

SEVENTH AVENUE DEVELOPMENT, LLC,
a Delaware limited liability company

By: _____
Name: Sharif El Gamal
Title:  Managing Member


GARMENT CENTER CONGREGATION

By: _____
Name: Jack Ratusch
Title:  President

STATE OF NEW YORK    )
                     )  ss:
COUNTY OF NEW YORK   )

On February 7th, 2014, before me, the undersigned personally appeared *Sharif El-Gamal* personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on this instrument, the individual, or the person upon behalf of individual acted, executed this instrument.

_____
Notary Public

My commission expires:

_____
June 4, 2014


STATE OF NEW YORK    )
                     )  ss:
COUNTY OF NEW YORK   )

On February 7th, 2014, before me, the undersigned personally appeared *Jack Ratusch* personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on this instrument, the individual, or the person upon behalf of individual acted, executed this instrument.

_____
Notary Public

My commission expires:

_____
June 4, 2014

12

## <u>SCHEDULE I</u>

1. All costs of moving Tenant to the Interim Quarters

2. All rent and additional rent payable under the occupancy agreement of the Interim Quarters

3. All other occupancy and other costs at the Interim Quarters whether or not payable to the landlord at the Interim Quarters, which shall include, without limitation:

    a. All costs of the one-time alterations to the Interim Quarters

    b. All costs of operation, maintenance and repairs of the Interim Quarters of whatsoever kind or nature, to the extent not provided by Interim Quarters Landlord, in accordance with the provisions of Article 44 of the Lease (except that Tenant shall be responsible for any damage to the Interim Quarters caused by Tenant that is not covered by insurance (or, if Successor Landlord failed to maintain the insurance required under the Lease, that would not have been covered by such insurance) and which is of a type for which Tenant would have been responsible under the terms of the Lease in the Demised Premises)

    c. All utilities costs and charges

    d. All costs of insurance, which shall include, without limitation: (i) $1,000,000 coverage of general commercial liability insurance (ii) $4,000,000 umbrella policy coverage, (iii) fire and casualty insurance covering all of Tenant's property, and (iv) any other insurance required under the Interim Quarters Lease

    e. All costs of furnishing of the Interim Quarters of whatsoever kind or nature, provided such costs are limited to amount required to provide furnishings comparable to those in the Demised Premises

    f. Any security deposit or letter of credit required by Interim Quarters Landlord (if a guaranty is required by Interim Quarters Landlord, Successor Landlord shall sign such guaranty)

    g. Any costs of use of the HVAC system of the Interim Quarters as set forth in Schedule "II" Section 6 hereinbelow.

4. All costs of storage of Tenant's property and fixtures from the Demised Premises not used at the Interim Quarters

5. If the Interim Quarters does not contain a kosher kitchen, all catering costs for up to seventy-five (75) people once per week and during the holidays observed at the synagogue

13

6. All costs to publicize the temporary location of Tenant's services in an amount not to exceed Three Thousand and No/100 Dollars ($3,000) per annum

7. All costs of decorating the Interim Quarters, provided that such costs are limited to amount required to provide space comparable to the Demised Premises

8. All costs of moving Tenant from the Interim Quarters to the New Building

## SCHEDULE II

Interim Quarters Specifications

1.  The Interim Quarters shall (i) be located between 34th Street and 42nd Street and between 6th Avenue and 8th Avenue (the "**Permissible Quadrant**"), (ii) have a minimum seating capacity of at least two hundred (200) seats in a sanctuary configuration, (iii) have an area for an altar and ark (which ark may be the same ark in the Demised Premises as of the date hereof or which may be a temporary ark), and (iv) to the extent required by applicable law, have a public assembly permit.

2.  Subject to availability, there shall be a kosher kitchen, which shall be equipped with a refrigerator and a dishwasher, but if a kosher kitchen is not available, Successor Landlord shall pay for catering costs as set forth in Schedule "I" Section 5 hereinabove;

3.  There shall be a general office with a minimum capacity and office equipment comparable to those in the Demised Premises;

4.  There shall be an office, designated as Rabbi's office, with office furniture, including, but not limited to, an office desk, an office chair, a sofa and lighting comparable to those in the Demised Premises;

5.  The Interim Quarters shall be accessible to Tenant twenty four (24) hours per day, seven (7) days per week, and three hundred sixty five (365) days per year;

6.  The HVAC system shall accommodate arrangements for use of the HVAC system during religious services on evenings, weekends and holidays, including, but not limited to, heat and air conditioning during services on weekends and holidays with the temperature maintained at a level satisfactory to Tenant;

7.  There shall be men's and women's bathrooms, which shall be handicapped-accessible if required by applicable law, as well as sufficient additional men's and women's bathroom stalls for the Interim Quarters occupancy capacity;

8.  If the Interim Quarters is not solely on a ground floor, there shall be an elevator that either (i) shall be Sabbath compliant or (ii) shall be operated on the Sabbath by an individual hired at Successor Landlord's expense; and

9.  All the memorial plaques and the tree of life in the lobby of the existing synagogue shall be installed and the lighting on the plaques shall be operating.

file:///I:\Users\MMcLeod\El-Gamal\Amendment to Lease

## SCHEDULE III

Permanent Quarters Specifications

1.  The main sanctuary room shall (i) have a minimum seating capacity of three hundred (300) seats, upon which seats shall be installed, at the sole cost and expense of Successor Landlord, either (a) the donor plaques on the seats in the Demised Premises as of the date hereof (the "**Donor Plaques**") or (b) new plaques substantially similar to the Donor Plaques, and (ii) contain at least the same square feet as the square footage of the Demised Premises;

2.  There shall be an auxiliary service space which shall have a minimum seating capacity of seventy-five (75) seats, upon which seats shall be installed either (a) the Donor Plaques or (b) new plaques substantially similar to the Donor Plaques;

3.  The seats in the main sanctuary room and the auxiliary room shall either be (i) the same seats in the Demised Premises as of the date hereof (the "**Current Seats**") reupholstered with new foam and new fabric, or (ii) new seats of at least the same quality and character of the Current Seats unless otherwise approved by Tenant.

4.  There shall be men's and women's bathrooms, which shall be handicapped-accessible in accordance with applicable law;

5.  The stained glass windows that are in the Demised Premises as of the date hereof shall be incorporated into the design of the Permanent Quarters in a manner reasonably acceptable to Tenant, subject to the replacement, by Successor Landlord, of any such stained glass windows that are damaged;

6.  There shall be a general office with a minimum capacity of four (4) office desks, and which shall include customary office equipment reasonably acceptable to Tenant, provided same exist in the Demised Premises;

7.  There shall be a separate office, designated as "Rabbi's Office", with customary office furniture, including, but not limited to, an office desk, an office chair, a sofa and lighting, equipment, a bathroom and wash sinks, provided same exist in the Demised Premises, and with power and otherwise capable of supporting typical office equipment;

8.  There shall be a conference room;

9.  There shall be men's and women's bathrooms, and same shall be adjoining the conference room if same are adjoining the conference room in the Demised Premises;

10. There shall be a fully-equipped professional kitchen capable of being used by a full-staffed

16

caterer with separate facilities for both "Meat Meals" and "Dairy Meals";

11. There shall be a ground level entrance to the Permanent Quarters, which entrance shall have a marquee, in accordance with applicable law and reasonably acceptable to Tenant, extending over the sidewalk adjacent to the New Building to a maximum distance from the curb of one foot (1') six inches (6"), if permitted by law, in a manner that is aesthetically pleasing to the building with signage reasonably acceptable to Tenant that is aesthetically pleasing to the building;

12. There shall be an "Open Air Sukkah";

13. There shall be a Sabbath compliant elevator; and

14. All the memorial plaques and the tree of life in the lobby of the existing synagogue shall be installed and the lighting on the plaques shall be operating.

file:///I:\Users\MMcLeod\El-Gamal\Amendment to Lease

## SCHEDULE IV

<u>Moving Blackout Dates</u>

March 11, 2014 through March 19, 2014

April 7, 2014 through April 30, 2014

May 28, 2014 through June 12, 2014

September 1, 2014 through October 25, 2014

February 26, 2015 through March 10, 2015

March 23, 2015 through April 19, 2015

May 18, 2015 through June 2, 2015

August 28, 2015 through October 11, 2015

file:///I:\Users\MMcLeod\El-Gamal\Amendment to Lease

**EXHIBIT A**

Legal Description

BEGINNING at the corner formed by the intersection
of the westerly side of Seventh Avenue with the northerly
side of 40th Street; running thence northerly along the
westerly side of Seventh Avenue, 74 feet 2 inches; thence
westerly parallel with 40th Street, 100 feet; thence
northerly parallel with Seventh Avenue, 24 feet 7 inches;
thence westerly parallel with 40th Street, 25 feet; thence
southerly parallel with Seventh Avenue, 98 feet 9 inches
to the northerly side of 40th Street; and thence easterly
along the northerly side of 40th Street, 125 feet to the
corner, the point or place of beginning;

file:///I:\Users\MMcLeod\El-Gamal\Amendment to Lease

## **EXHIBIT B**

Form of Memorandum of Lease

MEMORANDUM OF LEASE

between

SEVENTH AVENUE DEVELOPMENT, LLC

as Landlord

and

GARMENT CENTER CONGREGATION

as Tenant

Dated:  February __, 2014

Location of Premises

Address:        205 West 40th Street
Block:          01012
Lot:            0029
City, County and State of New York

Record and Return to:

Gibson, Dunn & Crutcher LLP
200 Park Avenue, 50th Floor
New York, New York 10166
Attn: Andrew Lance

RECORDING REQUESTED BY AND
AFTER RECORDING, RETURN TO:


Gibson, Dunn & Crutcher LLP
200 Park Avenue, 50th Floor
New York, New York 10166
Attn: Andrew Lance

_____
SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

**MEMORANDUM OF LEASE**

Capitalized terms not otherwise defined in this memorandum of lease (this "***Memorandum***")
shall have the meanings set forth in the lease described below (the "***Lease***").

| | |
|---|---|
| NAME AND ADDRESS OF LANDLORD: | SEVENTH AVENUE DEVELOPMENT, LLC c/o Soho Properties Inc. 31 West 27th Street, 9th Floor New York, New York 10001 |
| NAME AND ADDRESS OF TENANT: | GARMENT CENTER CONGREGATION 205 West 40th Street New York, New York 10018 |
| DATE OF LEASE: | May 4, 1977 |
| DATE OF FIRST AMENDMENT: | February 7, 2014 |
| DEMISED PREMISES: | 205 West 40th Street, New York, New York (Block 01012, Lot 0029) more particularly described in <u>Exhibit A</u> annexed hereto. |
| COMMENCEMENT DATE: | May 4, 1977 |
| EXPIRATION DATE: | May 3, 2076 or such earlier date on which the Lease may be terminated in accordance with its terms. |
| RELOCATION: | The Lease, as modified by the Amendment, provides for temporary relocation of Tenant, at the expense of Landlord, in order to accommodate redevelopment of the Building, subject to certain conditions, including, but not limited to, Landlord's payment to Tenant of certain amounts set forth in the Lease and Landlord, at Landlord's expense, leasing for Tenant, and providing to Tenant, interim premises which meet certain specifications for Tenant to occupy during the redevelopment of the Premises. In the event of, and as a condition to, such temporary relocation, Landlord also is obligated to reconstruct, at Landlord's expense, permanent |

premises in the redeveloped Building for Tenant to occupy following completion of the redevelopment during the balance of the term of the Lease.

SUBORDINATION AND
NONDISTURBANCE:

The Lease shall not be subject and subordinate to any ground or underlying leases or to any mortgages which may now or hereafter affect the real property or the building of which the Premises for a part, unless the holder of each such mortgage and/or the landlord under each such lease shall agree in writing, for the benefit of Tenant, that as long as Tenant shall not be in default under the Lease beyond applicable periods of notice and grace, if any, such holder or landlord shall not join Tenant as a defendant in any action brought to foreclose any such mortgage or terminate any such lease due to a default by the tenant thereunder, and shall recognize this Lease and the term demised hereunder notwithstanding the foreclosure of any such mortgage or the termination of any such lease, provided the Tenant shall agree to attorn to the holder of any such mortgage or the purchaser at a foreclosure sale or the landlord under any such lease, if any such party shall become the landlord under the Lease.

This instrument is intended to be only a memorandum of lease, and reference to the Lease is hereby made for all of the terms, conditions and covenants of the parties. This Memorandum shall not be construed to modify, change, vary or interpret the Lease or any of the terms, covenants or conditions thereof. In all instances, reference to the Lease should be made for a full description of the rights and obligations of the parties. The recordation of this Memorandum is in lieu of, and with like effect as, the recordation of the Lease.

**[SIGNATURES ON NEXT PAGE]**

IN WITNESS WHEREOF, Landlord and Tenant have duly executed this Memorandum on the year and date first written above.

LANDLORD:

SEVENTH AVENUE DEVELOPMENT, LLC

By: _____
Name: Sharif El-Gamal
Title:  Managing Member

TENANT:

GARMENT CENTER CONGREGATION

By: _____
Name: Jack Ratusch
Title:  President

[Signature Page to Memo of Lease]

## <u>ACKNOWLEDGMENTS</u>

State of New York     )
County of New York  ) ss.:

On the _____ day of February in the year 2014 before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.


                                  _____
                                  Notary Public

State of New York     )
County of New York  ) ss.:

On the _____ day of February in the year 2014 before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.


                                  _____
                                  Notary Public

EXHIBIT A

Legal Description

      BEGINNING at the corner formed by the intersection
of the westerly side of Seventh Avenue with the northerly
side of 40th Street; running thence northerly along the
westerly side of Seventh Avenue, 74 feet 2 inches; thence
westerly parallel with 40th Street, 100 feet; thence
northerly parallel with Seventh Avenue, 24 feet 7 inches;
thence westerly parallel with 40th Street, 25 feet; thence
southerly parallel with Seventh Avenue, 98 feet 9 inches
to the northerly side of 40th Street; and thence easterly
along the northerly side of 40th Street, 125 feet to the
corner, the point or place of beginning;

## EXHIBIT C

<u>Form of Escrow Agreement</u>

## ESCROW AGREEMENT

AGREEMENT made as of this 7th day of February, 2014, by and among SEVENTH AVENUE DEVELOPMENT, LLC, a Delaware limited liability company, having an address at c/o Soho Properties Inc., 31 West 27th Street, 9th Floor, New York, New York 10001 ("**Successor Landlord**"), and GARMENT CENTER CONGREGATION, a New York religious corporation, having an address at 205 West 40th Street, New York, New York 10018 ("**Tenant**"), and STEWART TITLE INSURANCE COMPANY, having an address at 300 East 42nd Street, 4th Floor, New York, NY 10017 ("**Escrow Agent**").

### WITNESSETH

**WHEREAS**, Tenant and Albert A. List entered into that certain lease dated May 4, 1977, which lease was assigned to The New School (formerly known as New School for Social Research) ("**Landlord**") pursuant to an Assignment of Leases, by and between Albert A. List and New School for Social Research, dated June 29, 1978 (collectively the "**Lease**") for the Demised Premises (as defined in the Amendment (defined below)).

**WHEREAS**, Successor Landlord is Purchaser under that certain Agreement of Sale, dated as of September 27, 2013, by and between Successor Landlord and Landlord as the Seller (the "**Agreement of Sale**"), of the Premises (as defined in the Amendment);

**WHEREAS**, Tenant and Successor Landlord have entered into that certain First Amendment to Lease, dated as of February 7, 2014, by and between Successor Landlord and Tenant, to document their agreement concerning certain details applicable to Tenant's relocation and restoration in accordance with provisions of the Lease and to provide for a payment in the aggregate amount of Five Million and No/100 Dollars ($5,000,000.00) (the "**Funds**") to Tenant in consideration for Tenant agreeing to have its occupancy temporarily relocated earlier than the date provided for in the Lease in order to permit redevelopment of the Premises;

**WHEREAS**, Successor Landlord and Tenant have amended the Lease upon the terms and conditions set forth in the Amendment, but to be effective only upon, and conditioned on the occurrence of, the Closing Date (as defined in the Agreement of Sale) under the Agreement of Sale (the "**Effective Date**"), except to the extent that the Amendment expressly provides that certain terms shall take effect immediately upon execution of the Amendment;

**WHEREAS**, in accordance with the provisions of the Amendment, Successor Landlord is obligated to deposit into escrow upon the Effective Date Two Million Five Hundred Thousand and No/100 Dollars ($2,500,000.00) (the "**Escrow Funds**"); and

**WHEREAS**, in furtherance of the Amendment, Successor Landlord and Tenant desire that the Escrow Agent hold the Escrow Funds in escrow, and Escrow Agent is willing to do so, on the terms and conditions hereinafter set forth.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is duly acknowledged, the parties hereto agree as follows:

1.      The Escrow Funds shall be delivered to the Escrow Agent either (a) in the form of an unendorsed check issued by a bank which is a member of the New York Clearinghouse Association, in the amount of the Escrow Funds payable to the order of Escrow Agent, as Escrow Agent, or (b) by wire transfer pursuant to Escrow Agent's wire instructions annexed to this Agreement.

2.      The Escrow Funds shall be deposited by Escrow Agent in an interest bearing account with a "money center" bank which is authorized by the State of New York to and does conduct banking business in the State of New York, such as J.P. Morgan Chase Bank, N.A., Citibank, N.A., Wells Fargo Bank, N.A., Bank of America, N.A. or such bank otherwise reasonably acceptable to Successor Landlord and Tenant, as selected by Escrow Agent.  All interest will accrue to and be reported to applicable taxing authorities, including the Internal Revenue Service, for the account of the party to whom such interest is or will be paid.  Upon request of the Escrow Agent, the parties hereto shall supply the Escrow Agent with his/her/its Social Security/Federal Identification Number.  A Form W-9 is annexed to this Escrow Agreement and must be completed by either Successor Landlord or Tenant, as the case may be, concurrently with the execution of this Agreement.

Successor Landlord and Tenant agree that the Escrow Agent shall not be responsible for any penalties, loss of principal or interest, or the consequences of a delay in withdrawal of the Escrow Funds and interest accrued thereon, (the "**Escrow**"), if any, which may be imposed as a result of the making or the redeeming of the above investment, as the case may be, pursuant to this Agreement. Successor Landlord and Tenant also agree that Escrow Agent shall not be liable for any loss or impairment of the Escrow Funds while the Escrow Funds are in the course of collection or of the Escrow if such loss or impairment results from the failure, insolvency or suspension of the financial institution in which the Escrow Funds are deposited.  The failure to provide the W-9 as required in this paragraph will result in the Escrow Funds being placed in a non-interest bearing account.

3.      Escrow Agent shall hold the Escrow Funds and all interest accrued thereon and shall dispose of the same only in accordance with the following provisions:

(a) Escrow Agent shall deliver the Escrow to Successor Landlord or Tenant, as the case may be, as follows:

(i)   to Successor Landlord or Tenant as designated by an instruction letter jointly executed by both Successor Landlord and Tenant; or

(ii)  to Successor Landlord, after receipt of Successor Landlord's demand in which Successor Landlord certifies either that Successor Landlord is entitled to receive the Escrow; but Escrow Agent shall not honor Successor Landlord's demand until more than ten (10) business days after Escrow Agent has given a copy of Successor Landlord's demand to Tenant in accordance with Section 3 (b)(i) of this Agreement, nor thereafter if

4

Escrow Agent receives a Notice of Objection from Tenant as provided for in said Section within such ten (10) day period; or

(iii)    to Tenant, after receipt of Tenant's demand in which Tenant certifies that Tenant is entitled to receive the Escrow. Escrow Agent shall not honor Tenant's demand until more than ten (10) business days after Escrow Agent has given a copy of Tenant's demand to Successor Landlord in accordance with Section 3(b)(i) of this Agreement, nor thereafter if Escrow Agent receives a Notice of Objection from Successor Landlord as provided for in said Section within such ten (10) day period.

Upon delivery of the Escrow, Escrow Agent shall be relieved of all liability hereunder and, with respect to the Escrow, Escrow Agent shall deliver the Escrow at the election of the party entitled to receive the same by (i) a good, unendorsed check of Escrow Agent payable to the order of such party, or (ii) a bank wire transfer to an account designated by such party.

(b) (i) Upon receipt of a written demand from Successor Landlord or Tenant under Section 3 (a)(ii) or (iii) above, Escrow Agent shall send a copy of such demand to the other party. Within ten (10) business days after the date of receiving same, but not thereafter, the other party may object to delivery of the Escrow to the party making such demand by giving a notice of objection ("**Notice of Objection**") to Escrow Agent. After receiving a Notice of Objection, Escrow Agent shall send a copy of such Notice of Objection to the party who made the demand, and thereafter, in its sole and absolute discretion, Escrow Agent may elect to either:

(A)    continue to hold the Escrow until Escrow Agent receives a written agreement of Tenant and Successor Landlord directing the disbursement of the Escrow, in which event Escrow Agent shall disburse the Escrow in accordance with such agreement; or

(B)    deposit the Escrow into any court of competent jurisdiction and bring any action of interpleader or any other proceeding.

In the event of any litigation between Successor Landlord and Tenant, Escrow Agent may deposit the Escrow with the clerk of the court in which such litigation is pending.  Upon the making of such deposit, Escrow Agent shall be relieved of its duties hereunder and shall have no liability thereafter to any party whatsoever.

(b) (ii) If Escrow Agent is uncertain for any reason whatsoever as to its duties or rights hereunder and whether or not Escrow Agent has received any written demand under Section 3(a)(ii) or (iii), or Notice of Objection under Section 3(b)(i), notwithstanding anything to the contrary herein, Escrow Agent may hold and apply the Escrow pursuant to Section 3(b)(i)(A) or (B) or may deposit the Escrow into any court of competent jurisdiction or may decline to take any other action whatsoever.  In the event the Escrow is deposited in a court by Escrow Agent pursuant to this Section 3, Escrow Agent shall be entitled to rely upon the decision of such court.  In the event of any dispute whatsoever among the parties with respect to disposition of the Escrow, Tenant and Successor Landlord shall pay the reasonable attorneys' fees and disbursements incurred by Escrow Agent (which said parties shall share equally, but for which said

5

parties shall be jointly and severally liable) for any litigation in which Escrow Agent is named as, or becomes, a party.

4.     To secure the full and punctual payment and performance of all obligations of Successor Landlord now or hereafter existing with respect to the Lease, Successor Landlord hereby grants to Tenant a first priority continuing security interest in and to the Escrow and the funds therein.

5.     Escrow Agent shall have no duties or responsibilities except those set forth herein, which the parties hereto agree are ministerial in nature.  Successor Landlord and Tenant acknowledge that Escrow Agent is serving without compensation, solely as an accommodation to the parties hereto, and except for the gross negligence or willful misconduct of the Escrow Agent, Escrow Agent shall have no liability of any kind whatsoever arising out of or in connection with its activity as Escrow Agent.  Successor Landlord and Tenant jointly and severally agree to and do hereby indemnify and hold harmless Escrow Agent from all suits, actions, loss, costs, claims, damages, liabilities, and expenses (including, without limitation, attorneys' fees and disbursements) ("**Liabilities**") which may be incurred by reason of its acting as Escrow Agent.  In no event shall the Escrow Agent be liable for any lost profits or for any incidental, special, consequential or punitive damages whether or not the Escrow Agent knew of the possibility or likelihood of such damages.  Escrow Agent's substantial compliance with its standard procedures for provision of the services required pursuant to this Agreement shall be deemed to constitute the exercise of ordinary and due care.  Tenant and Successor Landlord hereby agree to jointly and severally indemnify and hold harmless the Escrow Agent, and its successors and assigns, from and against any and all Liabilities asserted against them in connection with this Agreement, other than those Liabilities caused by their gross negligence or willful misconduct of the Escrow Agent.

6.     All notices, demands, offers, elections or other communications required or permitted by this Escrow Agreement shall be in writing and shall be delivered by hand delivery, reliable overnight courier addressed to the party at the following addresses:

To Successor Landlord:

Seventh Avenue Development, LLC
c/o Soho Properties Inc.
31 West 27th Street, 9th Floor
New York, New York 10001

To Successor Landlord's Counsel:

Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, New York 10036
Attn: Douglas Taus, Esq.

To Tenant:

Garment Center Congregation
205 West 40th Street
New York, New York 10018

To Tenant's Counsel:

Gibson, Dunn & Crutcher LLP
200 Park Avenue, 50th Floor
New York, New York 10166

Attn: Andrew Lance, Esq.

To Stewart Title Insurance
Company (Escrow Agent):

Stewart Title Insurance Company
300 East 42nd Street, 4th Floor
New York, NY 10017
Attn:

Notice shall be deemed to have been given or delivered if personally delivered, upon delivery; or, if sent by overnight courier, on the first day after being sent. Notwithstanding the preceding sentence to the contrary, and solely with respect to the Escrow Agent, notice shall be deemed to have been given or delivered to the Escrow Agent on the date of the Escrow Agent's actual receipt or refusal of such notice.

In its capacity as Escrow Agent, Escrow Agent shall not be responsible for the genuineness or validity of any instrument, document or item deposited with it, and shall have no responsibility other than to faithfully follow the instructions contained herein. The parties hereto agree that Escrow Agent is fully protected in acting in accordance with any written instrument given to it hereunder by any of the parties hereto believed by Escrow Agent to have been signed by the proper person. Escrow Agent may assume that any person purporting to give any notice hereunder has been duly authorized to do so. Escrow Agent shall have no obligation to review or confirm that actions taken pursuant to such notice in accordance with this Agreement comply with any other agreement or document.

7.      Escrow Agent hereunder may resign at any time on giving five (5) days prior written notice to that effect to each of Successor Landlord and Tenant.  In such event, a successor Escrow Agent shall be selected by Tenant and approved by Successor Landlord.  Escrow Agent shall then deliver to the successor Escrow Agent the Escrow Funds and any interest earned thereon, if any, to be held by the successor Escrow Agent pursuant to the terms of this Escrow Agreement.  If no successor Escrow Agent is designated and qualified within five (5) business days after Escrow Agent's resignation is effective, Escrow Agent may apply to a qualified court for the appointment of a successor Escrow Agent. The expenses thereof shall be equally borne by Successor Landlord and Tenant.

8.      Escrow Agent shall have no duties or responsibilities other than those expressly set forth herein.  Escrow Agent shall have no duty to enforce any obligation of any person to make any payment or delivery or to enforce any obligation of any person to perform any other act.  Escrow Agent shall have no liability to the other parties hereto or to anyone else by reason of any failure on the part of any party hereto or any maker, guarantor, endorser or other signatory of any document or any other person to perform such person's obligations under such document.

9.      Escrow Agent shall be entitled to select any and all counsel who may be retained to defend or prosecute any action on behalf of Escrow Agent under or arising out of this Agreement.

10.    The duties and obligations of the Escrow Agent shall be determined solely by the express provisions of this Agreement, and, except as expressly set forth herein, Escrow Agent will not be charged with knowledge of any provisions of the Amendment or any other documents executed in connection with the Amendment. Escrow Agent shall not be liable except for (i) the performance of its duties and obligations as are specifically set forth in this Agreement and (ii) the gross negligence or willful misconduct of Escrow Agent as otherwise provided in this Agreement, and no implied covenants or obligations shall be read into this Agreement against the Escrow Agent.

12.    If either Tenant or Successor Landlord becomes subject to a voluntary or involuntary proceeding under the United States Bankruptcy Code, or if the Escrow Agent is otherwise served with legal process which Escrow Agent in good faith believes affects funds deposited with Escrow Agent, Escrow Agent shall have the right to place a hold on funds deposited with the Escrow Agent until such time as Escrow Agent receives an appropriate court order or other assurances satisfactory to Escrow Agent (in Escrow Agent's sole discretion) establishing that the funds may continue to be held or disbursed, as the case may be, according to the instructions contained in this Agreement.

13.    If at any time Escrow Agent, in good faith, is in doubt as to the action it should take under this Agreement, Escrow Agent shall have the right (i) to place a hold on funds on deposit with the Escrow Agent until such time as Escrow Agent receives an appropriate court order or other assurances satisfactory to Escrow Agent as to the disposition of funds in the Escrow Agent's possession; or (ii) to commence, at the expense of both Successor Landlord and Tenant, an interpleader action in any court of competent jurisdiction situated in New York County in the State of New York and to take no further action except in accordance with joint instructions from Tenant and Successor Landlord or in accordance with the final order of the court in such action.

14.    It is expressly agreed that this Agreement is for the sole benefit of the parties hereto and shall not be construed or deemed to have been made for the benefit of any third party or parties.

15.    This Agreement and the obligations of the parties hereunder shall be interpreted, construed and enforced in accordance with the laws of the State of New York applicable to contracts executed, delivered and to be fully performed in New York.

16.    If any provision of this Agreement or the application thereof to any entity, person or circumstances shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provisions to other entities, persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

17.    This Agreement contains the entire understanding between the parties hereto. No waivers, variations, modifications or changes hereto shall be binding upon any party hereto, unless set forth in a document duly executed by all parties hereto.

18.    Whenever used herein, the singular number shall include the plural, and the use of any gender shall include all genders. Obligations under this Agreement shall be binding upon Successor Landlord and Tenant, jointly and severally. This Agreement shall be binding upon and enforceable between, and inure to the benefit of, Successor

Landlord and Tenant, their heirs, executors, administrators, legal representatives, successors, assigns or trustees.

19.    This Agreement may be executed in multiple original counterparts, all of which shall be deemed to be originals and with the same effect as if all parties hereto had signed the same document.  All such counterparts shall be construed together and shall constitute one and the same instrument.

20.    The provisions of this Agreement shall survive its termination and the termination of the Lease, as modified by the Amendment.

{Signature Page Follows}

9

**IN WITNESS WHEREOF**, the parties hereto have executed and delivered this Agreement as of the date first above written.

**SUCCESSOR LANDLORD:**

SEVENTH AVENUE DEVELOPMENT, LLC

By: _____
Name: Sharif El-Gamal
Title:   Managing Member

{Signatures Continue on Next Page}

[Signature Page to Escrow Agreement]

**TENANT:**


GARMENT CENTER CONGREGATION


By: _____
Name: Jack Ratusch
Title:   President


{Signatures Continue on Next Page}

[Signature Page to Escrow Agreement]

**ESCROW AGENT:**

STEWART TITLE INSURANCE COMPANY

By: _____

Name:

Title:

**WIRE INSTRUCTIONS AND FORM W-9 TO BE ANNEXED TO THIS AGREEMENT**

**<u>Wire Instructions</u>**

**<u>W-9 Form</u>**