**COZEN O'CONNOR**
Frederick E. Schmidt, Jr.
3WTC, 175 Greenwich Street, 55th Floor
New York, New York 10007
(212) 883-4948
eschmidt@cozen.com

Christina M. Sanfelippo
123 N Wacker Drive, Ste. 1800
Chicago, Illinois 60606
(312) 382-3100
csanfelippo@cozen.com

*Attorneys for 560 Seventh Avenue Owner Primary LLC,*
*Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
In re:

560 SEVENTH AVENUE OWNER PRIMARY
LLC,

                       Debtor.
--------------------------------------------------------x

Chapter 11

Case No. 23-11289-PB

## NOTICE OF FILING OF REVISED PROPOSED PLAN CONFIRMATION ORDER

     **PLEASE TAKE NOTICE** that on February 5, 2025, the United States Bankruptcy Court

for the Southern District of New York (the "Court") entered an order [Dkt. No. 220], among other

things, (i) authorizing 560 Seventh Avenue Owner Primary LLC, the debtor and debtor in

possession (the "Debtor"), to solicit acceptances for the *Second Amended Chapter 11 Plan of 560*

*Seventh Avenue Owner Primary LLC* [Dkt. No. 217] (as modified, amended, or supplemented from

time to time, the "Plan"); (ii) approving the *Amended Disclosure Statement with Respect to Second*

*Amended Chapter 11 Plan of 560 Seventh Avenue Owner Primary LLC* [Dkt. No. 218]; and

(iii) establishing deadlines and procedures for filing objections to confirmation of the Plan.

     **PLEASE TAKE FURTHER NOTICE** that, the Court has set **March 28, 2025 at 10:00**

**a.m. ET** as the date and time to consider confirmation of the Plan.

**PLEASE TAKE FURTHER NOTICE** that on March 26, 2025, the Debtor filed the proposed *Findings Of Fact, Conclusions Of Law, And Order Approving And Confirming Debtor's Second Amended Chapter 11 Plan* (the "Proposed Plan Confirmation Order") [Dkt. No. 243].

**PLEASE TAKE FURTHER NOTICE** that the Debtor hereby files a revised version of the Proposed Plan Confirmation Order (the "Revised Proposed Plan Confirmation Order"), attached hereto as **Exhibit 1**.  A redline of the Revised Proposed Plan Confirmation Order marked against the Proposed Plan Confirmation Order is attached hereto as **Exhibit 2**.

Dated:  New York, New York
       March 27, 2025

COZEN O'CONNOR

By: */s/ Frederick E. Schmidt, Jr.*
Frederick E. Schmidt, Jr.
3WTC, 175 Greenwich Street
New York, NY  10007
(212) 883-4900
(646) 588-1552 (fax)
eschmidt@cozen.com

Christina M. Sanfelippo
123 N Wacker Drive, Ste. 1800
Chicago, Illinois 60606
(312) 382-3100
csanfelippo@cozen.com

*Attorneys for 560 Seventh Avenue Owner Primary LLC, Debtor and Debtor in Possession*

# **EXHIBIT 1**

## **Revised Proposed Plan Confirmation Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                                                     Chapter 11

560 Seventh Avenue Owner Primary LLC,                     Case No. 23-11289-PB

               Debtor.
------------------------------------------------------------x

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER APPROVING AND CONFIRMING DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN

WHEREAS, 560 Seventh Avenue Owner Primary LLC (the "Debtor"), as debtor in the above-captioned Chapter 11 Case, having proposed and filed with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) that certain *Second Amended Chapter 11 Plan of 560 Seventh Avenue Owner Primary LLC* dated February 23, 2025 (the "Plan") [ECF # 217],[1] (ii) that certain *Amended Disclosure Statement with Respect to Second Amended Chapter 11 Plan of 560 Seventh Avenue Owner Primary LLC*, dated February 3, 2025 (the "Disclosure Statement") [ECF # 218] and (iii) the First Plan Supplement, dated March 24, 2025 [ECF # 235] (as the same may be amended, modified, and/or supplemented from time to time, the "Plan Supplement");

WHEREAS, on February 5, 2025, the Bankruptcy Court having entered the *Order (A) Approving the Disclosure Statement, (B) Establishing Solicitation and Voting Procedures, (C) Scheduling a Confirmation Hearing, (D) Establishing Procedures for Filing Confirmation Objections, and (E) Granting Related Relief* (the "Disclosure Statement Order") [ECF # 220], approving, among other things, the Disclosure Statement, the contents of the solicitation package, and the procedures for soliciting and tabulating votes to accept or reject the Plan;

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in Plan.

WHEREAS, solicitation packages and notices having been served on appropriate parties, and ballots for voting on the Plan having been transmitted to Holders of Claims entitled to vote on the Plan, as set forth in the *Affidavit of Service of Solicitation Materials* by Stanislav Kesler [ECF # 224] (the "Solicitation Certification"), the Debtor's claims and noticing agent and balloting agent in the Chapter 11 Case (the "Balloting Agent");

WHEREAS, the Balloting Agent having filed the *Declaration of Stanislav Kesler of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Second Amended Chapter 11 Plan of 560 Seventh Avenue Owner Primary LLC* [ECF # 231] (the "Voting Certification");

WHEREAS, on March 18, 2025, Margaritaville Enterprises, LLC ("Margaritaville") filed the *Limited Objection of Margaritaville Enterprises, LLC to Second Amended Chapter 11 Plan of 560 Seventh Avenue Owner Primary LLC* [ECF # 232] (the "Margaritaville Plan Objection");

WHEREAS, on March [28], 2025, the Bankruptcy Court entered an *Order Approving the Debtor's Motion for an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) Approving Franchise Agreement with Margaritaville Hotels & Resorts, LLC* [ECF #__] (the "Franchise Agreement Order"), resolving and causing the Margaritaville Plan Objection to be withdrawn;

WHEREAS, U.S. Specialty Insurance Company ("USSIC") and Margaritaville were the only two creditors to have submitted ballots rejecting the Plan;

WHEREAS, the Debtor filed a motion on March 27, 2025, with the support of USSIC and Margaritaville, seeking to have the votes submitted by USSIC and Margaritaville, subject to the entry of the Franchise Agreement Order, be changed to be acceptances of the Plan (the "Voting Motion");

WHEREAS, no other responses or objections to confirmation of the Plan having been filed as of the March 18, 2025 objection deadline, or any such responses or objections being hereby withdrawn or overruled; and

WHEREAS, the Bankruptcy Court having held a hearing on March 28, 2025, to consider final approval of the Disclosure Statement and confirmation of the Plan (the "<u>Confirmation Hearing</u>"); and objections, if any, having been resolved, overruled, or withdrawn prior to or during the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor; the Bankruptcy Court hereby FINDS, DETERMINES, AND CONCLUDES that:

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

A.    <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>. The Bankruptcy Court has jurisdiction over the Debtor's Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Bankruptcy Court has jurisdiction to enter a final order with respect thereto.  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtor is an eligible debtor under section 109 of the Bankruptcy Code.  The Debtor is a proper plan proponent under section 1121(a) of the Bankruptcy Code.

LEGAL\75805500\7

C.      _Judicial Notice_.  The Bankruptcy Court takes judicial notice of the docket of the Debtor's Chapter 11 Case maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Case.

D.      _Burden of Proof_.  The Debtor has the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.  The Debtor has met its burden with respect to each applicable element of section 1129 of the Bankruptcy Code.

E.      _Chapter 11 Petition_.  On August 12, 2023 (the "_Petition Date_"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.  The Debtor continued as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

F.      _Statutory Committee of Unsecured Creditors_.  No statutory committee of unsecured creditors was appointed in the Chapter 11 Case.

G.      _The Compromises and Settlements Embodied in the Plan are Fair, Reasonable, and in the Best Interest of the Debtor's Estate_.  The Plan is the result of good faith, arm's length negotiations among the Debtor, certain of its creditors, and other parties in interest. The Plan constitutes a good faith, arm's length compromise and settlement of all claims or controversies relating to the rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest or any distribution to be made or obligation to be incurred pursuant to the Plan.  Such compromises or settlements (i) are in the best interests of (x) the Debtor and its Estate and (y) Holders of Claims and Equity Interests, and (ii) are fair, equitable, and reasonable.

4

H.      _Adequacy of Disclosure Statement_.   The Court entered the Disclosure Statement Order on February 5, 2025 finding, among other things, that the information contained in the Disclosure Statement contained extensive material information regarding the Debtor so that parties entitled to vote on the Plan could make informed decisions regarding the Plan. Additionally, the Disclosure Statement contains adequate information as that term is defined in section 1125(a) of the Bankruptcy Code and complies with any additional requirements of the Bankruptcy Code, the Bankruptcy Rules, and applicable nonbankruptcy law.

**Solicitation and Voting**

I.      _Transmittal and Mailing of Solicitation Materials and Notices_.   The Solicitation Certification is evidence that the transmittal and service of the Plan, the Disclosure Statement, the Ballots, and other solicitation materials were adequate, sufficient, and in compliance with the Disclosure Statement Order, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), and such parties have had sufficient opportunity to appear and be heard with respect thereto.   No other or further notice or re-solicitation is required.   The filing and notice of the Plan Supplement, if any, was proper and in accordance with the Plan, the Bankruptcy Code, and the Bankruptcy Rules, and no other or further notice shall be required.

J.      _Good Faith Solicitation_.  Based on the record before the Bankruptcy Court in this Chapter 11 Case, the Debtor, and its Professionals, representatives, members, managers,

officers, directors, employees, and agents have acted in "good faith" within the meaning of sections 1125(e) and 1129(a)(3) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the exculpation and injunction provisions set forth in Article IX of the Plan.

   K. <u>Voting</u>.  The Voting Certification is evidence that votes to accept or reject the Plan were tabulated fairly, in good faith, and in a manner consistent with the Disclosure Statement Order, the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.  All impaired Classes under the Plan have voted to accept the Plan.

**<u>Compliance with the Requirements of Section 1129 of the Bankruptcy Code</u>**

   L. <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtor as plan proponent, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

   (i) <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  With the exception of the Administrative Expense Claims, Priority Tax Claims, Claims for Professional Fees, and Statutory Fees, which need not be classified, Article III of the Plan classifies Classes of Claims against and Equity Interests in the Debtor.  The Claims and Equity Interests placed in each Class are substantially similar to the other Claims and Equity Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various

Classes of Claims and Equity Interests created under the Plan, and the Plan does not unfairly discriminate between Holders of Claims and Equity Interests in each Class or between Classes. Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)     <u>Unimpaired Classes Specified (11 U.S.C. § 1123(a)(2))</u>.  Article III of the Plan specifies that Claims in Class 1c (Other Secured Claims), Class 2 (Priority Non-Tax Claims), and Class 4 (Equity Interests) (together, the "<u>Unimpaired Classes</u>") are unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii)     <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Article III of the Plan designates Claims in Class 1 (OWS Secured Claim), Class 1a (DHG Claim), Class 1b (Flintlock Claim), Class 3 (General Unsecured Claims), Class 3a (Personal Injury Claims), and Class 3b (Congregation Claim) (collectively, the "<u>Impaired Classes</u>") as impaired within the meaning of section 1124 of the Bankruptcy Code and clearly specify the treatment of the Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(iv)     <u>Equality of Treatment (11 U.S.C. § 1123(a)(4))</u>.  The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class, unless the Holder of a particular Claim or Equity Interest has agreed to less favorable treatment for such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)     <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>.  The Plan and the documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, including, without limitation, (a) the settlement of all Claims and Interests and controversies in consideration for the classification, distributions,

releases, and other benefits provided under the Plan (Article IV.A), (b) the vesting of property of the estate in the Reorganized Debtor free and clear of all Liens, Claims and Equity Interests except for any Claims of or liens, security interests, pledges, mortgages, or any other property interest securing the OWS Secured Claim in accordance with the treatment of the Class 1 Claim under the Plan (Articles IX.A, XII.B.), (c) the corporate restructuring of the Reorganized Debtor such that on the Effective Date, it will be deemed to have acquired 100% of the equity interests in Operator from AREPIII Property Trust, LLC and Corten Real Estate Fund II TIER LLC and/or their Affiliates for no consideration and Operator's substantially simultaneous entry into an operating lease with the Reorganized Debtor substantially in the form annexed to the Plan as Exhibit D (Article IV.D) (the "Operating Lease"), and which Operating Lease shall, in accordance with the Restructuring Documents, be collaterally assigned to OWS (or any of its affiliates, successors, or assigns) and all rights of Operator under the Operating Lease shall be absolutely and unconditionally subordinate pursuant to the terms of the Restructuring Documents, (d) the funding of distributions under the Plan by the Debtor and Parent (Article IV.F), and (e) except to the extent otherwise provided in the OWS Term Sheet, the Plan, or the treatment provided under the Plan, the automatic cancellation and termination of any agreement, note, instrument, certificate or other document evidencing or creating any Claim against the Debtor. Accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

      (vi)    <u>Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6))</u>. The Debtor is not a corporation and, therefore, 11 U.S.C. § 1123(a)(6) does not apply.

      (vii)    <u>Continuation of Existing Management (11 U.S.C. § 1123(a)(7))</u>. Article IV.F. provides that Joseph Caruso and Brandon Flury, each of whom managed the Debtor

as a vice president, shall continue in their positions as vice presidents and managers of the Reorganized Debtor as well as Operator. Further, Highgate Hotels, L.P. shall continue to manage the Reorganized Debtor's hotel operations on a day-to-day basis. The continuation of this management team is consistent with the interests of creditors and interest holders and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(viii)   Earnings from Personal Services (11 U.S.C. § 1123(a)(8)). Section 1123(a)(8) of the Bankruptcy Code applies only to individual debtors and is not applicable to this Chapter 11 Case.

(ix)   Impaired and Unimpaired Classes of Claims and Interests (11 U.S.C. § 1123(b)(1)). As permitted by section 1123(b)(1) of the Bankruptcy Code, pursuant to Article III of the Plan, Claims or Equity Interests in the Impaired Classes are impaired and Claims in the Unimpaired Classes are unimpaired.

(x)   Assumption and Rejection (11 U.S.C. § 1123(b)(2)). Article V of the Plan provides for the assumption and rejection of executory contracts and unexpired leases not previously rejected and meets the requirements of section 365 of the Bankruptcy Code.

(xi)   Settlement/Retention of Claims or Interests (11 U.S.C. § 1123(b)(3)). Article X of the Plan provides for the retention and preservation of all Causes of Action.

(xii)   Sale of Assets / Distribution of Proceeds (11 U.S.C. § 1123(b)(4)). The Plan does not provide for the sale of all or substantially all of the property of the estate and, accordingly, section 1123(b)(4) of the Bankruptcy Code is inapplicable.

(xiii)   Modification of Rights (11 U.S.C. § 1123(b)(5)). As permitted by section 1123(b)(5) of the Bankruptcy Code, the Plan modifies the rights of Holders of Claims and

LEGAL\75805500\7

Equity Interests in Impaired Classes.  The Plan leaves unaffected the rights of Holders of Claims in Unimpaired Classes.

(xiv)    Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).  As permitted by section 1123(b)(6) of the Bankruptcy Code, the Plan includes other appropriate provisions not inconsistent with the applicable provisions of the Bankruptcy Code, including, without limitation, certain exculpation, release, and injunction provisions in Article IX of the Plan.  Based upon the facts and circumstances of this Chapter 11 Case, the exculpation, release, and injunction provisions in the Plan are narrowly tailored, integral consideration and critical parts of the Plan, and the Exculpated Parties have relied on the efficacy and conclusive effects of such exculpation and injunctions when making concessions and exchanging consideration in connection with the Chapter 11 Case and the Plan.  Such exculpation and injunction provisions in Article IX of the Plan are (a) in exchange for the good, valuable, and reasonably equivalent consideration provided by the Exculpated Parties, (b) in the best interests of the Debtor, the Estate, and Creditors, (c) fair, equitable, and reasonable, and (d) a bar to the assertion of any Claims or Causes of Action which are subject to such exculpation, release, and injunctions.  Accordingly, based upon the record of this Chapter 11 Case, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, the Bankruptcy Court finds that the exculpation, release, and injunction provisions set forth in Article IX of the Plan are consistent with the Bankruptcy Code and applicable law and are appropriate under the circumstances.

(xv)    Sale of Exempt Property (11 U.S.C. § 1123(c)).  The Debtor is not an individual.  Accordingly, section 1123(c) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

(xvi)    <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>.    Article V of the Plan provides for the assumption and assignment or for the rejection of certain executory contracts and unexpired leases.  In addition, Article V.F of the Plan provides that, on the Effective Date, all other executory contracts or unexpired leases not previously assumed and/or assigned, not subject to a pending motion to assume and/or assign as of the Effective Date, or not rejected before the Effective Date, will be deemed rejected.  As required by section 365(b)(1) of the Bankruptcy Code, any monetary amounts by which any executory contract or unexpired lease that may be assumed under the Plan is in default shall be satisfied by payment or provision for payment of the required cure amount, if any.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

M.    <u>The Plan Proponents' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  The Debtor, as plan proponent, has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other applicable law in transmitting the Plan, the Disclosure Statement, the ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan.  Accordingly, the Plan satisfies the requirements of section 1129(a)(2) of the Bankruptcy Code.

N.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtor has proposed the Plan, (and all other documents necessary or appropriate to effectuate the Plan, including the Restructuring Documents) in good faith and not by any means forbidden by law, thereby satisfying the requirements of section 1129(a)(3) of the Bankruptcy Code.  The Debtor's good faith is evident from the facts and record of this Chapter 11 Case, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in this Chapter 11 Case. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtor's assets and maximizing distributions to creditors.  Further, the Plan's classification,

exculpation, release, and injunction provisions have been negotiated in good faith and at arm's-length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are integral to the Plan, supported by valuable consideration, and necessary for the Debtor's successful reorganization.

O.     <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.  Any payments made or promised by the Debtor, or a person acquiring property under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, have been approved by, or are subject to approval of, the Bankruptcy Court as reasonable.  Accordingly, the Plan satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

P.     <u>Directors, Officers, and Trustees (11 U.S.C. § 1129(a)(5))</u>.   The Plan satisfies section 1129(a)(5) of the Bankruptcy Code as the identity of the management of the Reorganized Debtor has been fully disclosed in Article IV.F of the Plan, and such continued management by Brandon Flury and Joseph Caruso as vice presidents is consistent with the interests of Holders of Claims against and Equity Interests in the Debtor and with public policy.  Messrs. Flury and Caruso will continue to be compensated by their current employers and will not receive compensation from the Reorganized Debtor.

Q.     <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  The Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction.  Accordingly, section 1129(a)(6) of the Bankruptcy Code is not applicable in this Chapter 11 Case.

R.     <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>.  Each Holder of an Impaired Claim or Equity Interest (i) has accepted the Plan, (ii) will receive or retain under the Plan on account of such Allowed Claim or Allowed Equity Interest property of a value, as of the

Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date, or (iii) has agreed to receive less favorable treatment.  The liquidation analysis, annexed to the Disclosure Statement as Exhibit C (the "Liquidation Analysis") was prepared by the Debtor with the assistance of its retained professionals, including its retained appraiser, LW Hospitality Advisors, retained by the Debtor pursuant to an order of the Court entered on October 21, 2024 [ECF # 186]. Under either the Recovery High or the Recovery Low basis, the Liquidation Analysis demonstrates that there would be no distribution to general unsecured creditors in a hypothetical chapter 7 liquidation.  No party in interest has contested or otherwise disputed the accuracy of the Liquidation Analysis.  Therefore, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

S.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Claims in Classes 1c, 2 and 4 are unimpaired under the Plan and are conclusively presumed to have accepted the Plan without the solicitation of acceptances or rejections pursuant to section 1126(f) of the Bankruptcy Code.  As set forth in the Voting Certification, Holders of Claims in Classes 1, 1a, 1b, 3, 3a, and 3b voted to accept the Plan.  Accordingly, the Plan satisfies the requirements of section 1129(a)(8) of the Bankruptcy Code.

T.    Treatment of Administrative Expense Claims and Priority Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Claims under the Plan of the type specified in section 507(a)(1) through 507(a)(8) of the Bankruptcy Code complies with the provisions of section 1129(a)(9)(C) of the Bankruptcy Code.

LEGAL\75805500\7

U.      Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).      Section 1129(a)(10) of the Bankruptcy Code is satisfied as at least one impaired Class of Claims has accepted the Plan, determined without including any acceptances of the Plan by any insider.

V.      Feasibility (11 U.S.C. § 1129(a)(11)).      Section 1129(a)(11) of the Bankruptcy Code is satisfied as confirmation of the Plan is not likely to be followed by the need for further liquidation or financial reorganization of the Debtor.

W.      Payment of Fees (11 U.S.C. § 1129(a)(12)).      Section 1129(a)(12) of the Bankruptcy Code is satisfied as all fees payable under section 1930 of title 28 of the United States Code have either been paid or will be paid under the Plan.   Statutory Fees shall be paid on the Effective Date and thereafter, as such fees may thereafter accrue and be due and payable, in accordance with the applicable schedule for payment of such fees.   All subsequent Statutory Fees shall be paid by the Reorganized Debtor until entry of a final decree closing the Chapter 11 Case or such other time as such fees are no longer required to be paid.

X.      Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).   Except for any obligation to continue to contribute benefit fund contributions under its collective bargaining agreement to be assumed and assigned under the Plan, the Debtor is not obligated to pay retiree benefits.   Nevertheless, Article XII.E. provides for the continuation of the payment of retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, after the Effective Date at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code at any time prior to confirmation of the Plan, for the duration of the period the Debtor has obligated itself to provide such benefits. The Plan, therefore, is in compliance with the requirements of section 1129(a)(13) of the Bankruptcy Code.

Y.      <u>No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>.  The Debtor is not an individual and is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

Z.      <u>Individual Debtor Payment of Disposable Income (11 U.S.C. § 1129(a)(15))</u>.  The Debtor is not an individual.  Accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

AA.      <u>No Applicable Non-bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>.  The Debtor is a moneyed, business, or commercial corporation and, accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in the Chapter 11 Case.

BB.      <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>.  All impaired Classes under the Plan have voted to accept the Plan.  Accordingly, section 1129(b) is not applicable.  Nevertheless, the Court makes the following findings and conclusions with respect to section 1129(b) of the Bankruptcy Code:

(i)      The Plan does not discriminate against Class 3 unfairly.  Class 3 had the opportunity to receive a distribution in a greater percentage than that offered to other similarly situated creditors so long as it voted in favor of the Plan.

(ii)      The Plan is fair and equitable as to Class 3.  Although the Plan does not comply with the absolute priority rule, it complies with the new value corollary.  The New Value Contribution to be provided by the Parent pursuant to the terms of the Plan satisfies all requirements of the new value corollary.  Specifically, the New Value Contribution is (1) new, (2) substantial, (3) money or money's worth, (4) necessary for a successful reorganization, and (5) reasonably equivalent to the property that the Parent is retaining or receiving under the Plan.

15

(iii)    Under the circumstances of this Chapter 11 Case, any formal marketing to determine the value of the equity in the Reorganized Debtor would be objectively futile, unnecessary, unduly expensive, time-consuming, risky and value-destructive.  The Debtor's exclusive period to file a plan expired on December 11, 2023 and its corresponding exclusive period to seek confirmation of a plan has similarly long since expired.  Since that time, there has been no legal impediment to any other party filing and seeking confirmation of its own plan in this Chapter 11 Case.  No other plan has been filed in the Chapter 11 Case.

CC.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>.  The Plan is the only plan being confirmed in the Chapter 11 Case.  Thus, the Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.

DD.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

EE.    <u>Small Business Case Confirmation (11 U.S.C. § 1129(e)</u>.  This Chapter 11 Case is not a small business case so section 1129(e) of the Bankruptcy Code is inapplicable.

FF.    <u>Plan Supplement</u>. The filing and notice of the Plan Supplement, and any modifications or supplements thereto, were proper and in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice is or shall be required. The Debtor is authorized to modify the Plan Supplement documents and any schedules, exhibits or amendments thereto, following entry of this Confirmation Order in a manner consistent with this Confirmation Order, the Plan, or applicable law; *provided*, *however*, that any such modifications shall be subject to the consent rights as set forth in the OWS Term Sheet and the Plan.

16

GG.    <u>Plan Documents and Restructuring Documents</u>. The terms of the Plan, including, without limitation, the Plan Supplement, and all exhibits and schedules thereto, the Restructuring Documents and all other documents filed in connection with the Plan, or executed or to be executed in connection with the transactions contemplated by the Plan and the Plan Supplement, and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications are incorporated by reference, are approved in all respects, and constitute an integral part of this Confirmation Order. The Debtor has exercised reasonable business judgement in determining to enter into the Restructuring Documents and has provided sufficient and adequate notice of the material terms of such documents, which material terms were filed as part of the Plan or Plan Supplement.

HH.    <u>Modifications of the Plan (11 U.S.C. § 1127)</u>. Any modifications made to the Plan since the solicitation thereof do not constitute changes that materially and adversely change the treatment of any Claims or Equity Interests. Accordingly, these modifications comply in all respects with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and none of the modifications requires additional disclosure or re-solicitation of votes on the Plan. Under Bankruptcy Rule 3019(a), such modifications do not require that the Holders of Claims or Interests be afforded an opportunity to change previously-cast acceptances or rejections of the Plan, and all Creditors that previously accepted the Plan are deemed to have accepted the Plan as modified. The disclosure of any Plan modifications prior to or on the record at the Confirmation Hearing constitutes due and sufficient notice of any and all Plan modifications. The Plan as modified shall constitute the Plan submitted for confirmation.

17

II.    <u>Conditions Precedent to Confirmation</u>.  All conditions contained in Article VIII.A. of the Plan including, have been satisfied or waived by the Debtor or OWS, as the case may be, in each case, consistent with the terms of the Plan.

JJ.    <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

KK.    <u>Implementation</u>.  All documents necessary to implement the Plan, including the Restructuring Documents, provide adequate and proper means for implementation of the Plan, and have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law.

LL.    <u>Preservation of Causes of Action</u>.  It is in the best interests of the Debtor, its Creditors, and Equity Interest Holders that all Causes of Action shall survive confirmation and vest in the Reorganized Debtor free and clear of all Liens, Claims, charges or other encumbrances, and from and after the Effective Date the Reorganized Debtor shall have exclusive rights, powers, and interests of the Estate to pursue, settle, or, subject to the Plan, abandon such Causes of Action as the sole representative of the Estate pursuant to section 1123(b)(3) of the Bankruptcy Code.

MM.    <u>Compromise, Settlement, Exculpation, and Injunction</u>.  The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the compromises, settlements, exculpations and injunctions set forth in Article IX of the Plan.  Based upon the record of the Chapter 11 Case and the evidence proffered or adduced at the Confirmation Hearing, the Bankruptcy Court finds that the compromises, settlements, exculpation, release, and injunctions set forth in Article IX of the Plan are consistent with applicable law and integral components of the Plan.

NN.    <u>Good Faith</u>.  The Debtor has proposed the Plan (and all other documents necessary or appropriate to effectuate the Plan, including the Restructuring Documents) in good faith, with the legitimate and honest purposes of maximizing value to the Debtor's Estate for the benefit of its stakeholders.  In determining the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the formulation of the Plan.  The Plan is the result of extensive arm's-length negotiations among the Debtor and its key stakeholders.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code and the Debtor has acted in good faith within the meaning of sections 1125(e) and 1126(e) of the Bankruptcy Code.

## <u>ORDER</u>

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1.    <u>Approval of the Voting Motion</u>.  For good cause shown in the Voting Motion and as otherwise set forth in the record of the Confirmation Hearing, the Voting Motion is hereby approved and USSIC and Margaritaville are each hereby deemed to have accepted the Plan.

2.    <u>Confirmation of the Plan</u>.  The Plan and each of its provisions (including any Plan modifications and the Plan Supplement) shall be, and hereby are, CONFIRMED pursuant to section 1129 of the Bankruptcy Code.  The documents contained in the Plan Supplement, if any, are authorized and approved, and the appropriate representatives of the Debtor or the Reorganized Debtor, as applicable, are authorized to execute and deliver such documents as are necessary to implement the Plan and/or to cause the Effective Date to occur.  Each provision of the Plan is authorized and approved and shall have the same validity, binding effect, and enforceability as every other provision of the Plan.  The terms of the Plan, as previously modified and as modified

by any modifications made at the Confirmation Hearing, are incorporated by reference into and are an integral part of this Confirmation Order.  The failure specifically to describe, include, or refer to any particular article, section, or provision of the Plan, Plan Supplement, or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan and all related documents be approved and confirmed in their entirety as if set forth verbatim in this Confirmation Order.

3.    <u>Compromise of Controversies</u>.  For the reasons stated herein, the Plan constitutes a good faith, arm's-length compromise and settlement of all claims or controversies relating to the rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest or any distribution to be made or obligation to be incurred pursuant to the Plan, and the entry of this Confirmation Order constitutes approval of all such compromises and settlements.

4.    <u>Objections</u>.  All objections, limited objections, responses to, and statements and comments, if any, in opposition to or inconsistent with the Plan, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, OVERRULED and DENIED in their entirety.  All withdrawn objections are deemed withdrawn with prejudice.

5.    <u>Satisfaction of Claims</u>.  To the fullest extent provided under section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided herein or in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction discharge, and settlement, as of the Effective Date, of all Claims and Equity Interests, including any assertions for interest accrued on Claims or Equity Interests from and after the Petition Date, liabilities or obligations of, liens on, or rights against, the Estate, the Debtor, or any of the Debtor's

assets or properties, whether known or unknown, including Claims, demands, liabilities, and equitable relief that arose before the Effective Date, any contingent or non-contingent liability on account of representations made or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a Proof of Claim or Equity Interest based upon such Claim, debt, right, or Equity Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim, debt, right, or Equity Interest is Allowed pursuant to section 502 of the Bankruptcy Code, (c) the Holder of such a Claim or Equity Interest has accepted the Plan or has failed to vote to accept or reject the Plan, or (d) the Holder of a Claim or Equity Interest is entitled to a distribution under the Plan, regardless of whether any property shall have been or is to be distributed or retained pursuant to the Plan on account of such Claims and Equity Interests. This Confirmation Order shall be a judicial determination of the discharge and satisfaction of all Claims and Equity Interests subject to the Effective Date occurring, except as otherwise expressly provided herein or in the Plan.

6.      Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination and other equitable rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed Claim or Equity Interest. The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the

Debtor, the Estate, and Holders of Claims and Equity Interests and is fair, equitable, and reasonable.

7.      Binding Effect.  On the Effective Date, and effective as of the Effective Date, the Plan shall be binding upon the Debtor and all present and former Holders of Claims against and Equity Interests in the Debtor, and their respective successors and assigns, regardless of whether any such Holder of a Claim or Equity Interest voted or failed to vote to accept or reject the Plan and regardless of whether any such Holder of a Claim or Equity Interest is entitled to receive any distribution under the Plan.  On the Effective Date, after giving effect to the transactions that are to occur on or before the Effective Date, the Plan shall be deemed to be substantially consummated within the meaning set forth in section 1101 and pursuant to section 1127(b) of the Bankruptcy Code.

8.      General Authorizations.  The Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements and/or documents, and take such acts and actions as may be reasonably necessary or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of the Plan and any transactions described in or contemplated by the Plan.  The Debtor and OWS may, and all other Holders of Allowed Claims receiving distributions pursuant to the Plan, at the request or direction of the Debtor, as applicable, shall, from time to time prepare, execute, and deliver any agreements, documents, instruments, or notices, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.  Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the members, managers, or other owners, direct or indirect, of the Debtor shall be deemed to have occurred and shall be in effect prior to, on, or after

LEGAL\75805500\7

the Effective Date (as applicable) pursuant to applicable law, without any further vote, consent, approval, authorization, or other action by such members, managers, or other owners of the Debtor or notice to, order of, or hearing before, the Bankruptcy Court.

9.    <u>Compensation and Reimbursement Claims</u>.  All Professionals seeking allowance and payment of Professional Fee Claims shall (a) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in the Chapter 11 Case by the date that is thirty (30) days after the Effective Date and (b) be paid (i) the unpaid amounts as are Allowed by the Bankruptcy Court within five (5) Business Days after the date that such Claim is Allowed by Order of the Bankruptcy Court, or (ii) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Claim and the Debtor.

10.    <u>Administrative Expense Claims</u>.  To be eligible to receive Distributions under the Plan on account of an Administrative Expense Claim that is not otherwise Allowed by the Plan, (a) a request for payment of an Administrative Expense Claim incurred during the period of time from the Petition Date through the Effective Date and not otherwise paid in the ordinary course of business and that remains unpaid must have been filed on or before at 5:00 p.m. (ET) on the date that is thirty (30) days immediately following  the Effective Date.  Any Administrative Expense Claim that is not timely asserted in accordance herewith and with Article II.A of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtor, the Estate, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup, or recover such Claim.  Notwithstanding anything to the contrary herein, the deadline set forth in this paragraph shall not be applicable to any Restructuring Expenses, which shall be payable without the requirement for the filing of retention applications, fee applications, or any other application in the

LEGAL\75805500\7

Chapter 11 Case. Pursuant to the Plan and this Confirmation Order, the Restructuring Expenses (i) shall be Allowed in full as an Administrative Expense Claim upon incurrence, (ii) shall not be subject to any offset, defense, counterclaim, reduction, or credit, and (iii) shall be paid as provided for in the OWS Term Sheet.

11. <u>Assumed and Rejected Contracts and Leases</u>. On the Effective Date, all executory contracts and/or unexpired leases between (i) the Debtor and IMCMV Times Square LLC ("<u>IMCMV</u>"); (ii) the Debtor and Highgate hotels, L.P. ("<u>Highgate</u>"); (iii) the Debtor and the Hotel and Gaming Trades Council ("<u>HTC</u>"); (iv) NYC Megamart Management Corp. ("<u>Megamart</u>"); and (v) Nouveau Elevator Industries, LLC ("<u>Nouveau</u>") shall be deemed assumed by the Debtor and assigned to AC MVTS Operator, LLC ("<u>Operator</u>"). No cure payments in connection with the assumption and assignment of any such executory contracts and/or unexpired leases shall be due or owing to any of IMCMV, Highgate, Megamart, or Nouveau notwithstanding anything to the contrary in the Plan. For the avoidance of doubt, any cure payments in connection with the assumption and assignment of any such executory contracts with HTC shall be governed by the Plan. To the extent that either Nouveau or Megamart disputes that there is no cure amount due in connection with the Debtor's assumption of its agreement with it, Nouveau or Megamart, as the case may be, must file within thirty (30) days from the date hereof, a written objection with the Court. In addition to the foregoing, that certain Franchise Agreement between the Debtor and Margaritaville Hotels & Resorts, LLC entered into and hereafter approved by the Court, shall also be deemed assumed by the Debtor and assigned to Operator as of the Effective Date. All other executory contracts not previously assumed and/or assigned, not subject to a pending motion to assume and/or assign as of the Effective Date, or not rejected before the Effective Date, shall be deemed rejected. Notwithstanding the foregoing, all insurance policies, to the extent they are

Executory Contracts, shall be deemed assumed on the Effective Date, and the Debtor may at any time prior to the date that is ninety (90) days following the Effective Date, assume any executory contract or unexpired lease which would otherwise have been deemed rejected or reject any executory contract or unexpired lease which would otherwise have been deemed assumed hereby or under the Plan by filing a notice of such assumption or rejection as an additional Plan Supplement, providing written notice to the counterparty to such unexpired lease or executory contract, and paying any applicable cure.

12.    Rejection Damages. *If the rejection under the Plan of an executory contract or unexpired lease results in damages to the other party or parties to such contract or lease, any Claim for such damages, if not heretofore evidenced by a Proof of Claim that has been timely Filed, shall be forever barred and shall not be enforceable against the Debtor or its properties, successors or assigns, unless a Proof of Claim therefore is timely Filed with Kroll Restructuring Administration LLC ("Kroll"), by (i) electronically filing through Kroll's website at https://cases.ra.kroll.com/560SeventhAve/; (ii) submitting the original Proof of Claim (with an original signature) by first-class U.S. Mail to Kroll at the following address: Seventh Avenue Owner Primary LLC Claims Processing Center, c/o Kroll Restructuring Administration LLC, Grand Central Station, PO Box 4850, New York, NY 10163-4850; or (iii) submitting the original Proof of Claim (with an original signature) by overnight courier or other hand delivery system to Kroll at the following address: Seventh Avenue Owner Primary LLC Claims Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232 and served upon counsel for the Debtor, Cozen O'Connor, Attn: Christina Sanfelippo, 123 North Wacker Drive, Suite 1800, Chicago, IL 60606 (csanfelippo@cozen.com) on or before (x) thirty (30) days after the later to occur of (i) notice of the Effective Date and (ii) the date of*

*entry of an order by the Bankruptcy Court authorizing rejection of a particular executory contract or unexpired lease, or (y) such other date as may be ordered by the Bankruptcy Court. Nothing in the Plan or herein should be construed or deemed to alter the applicable deadlines for filing a Proof of Claim for executory contracts or unexpired leases previously rejected pursuant to prior orders of the Bankruptcy Court.*

13.    <u>Claims Objections</u>.  Upon the Effective Date, the Reorganized Debtor shall solely be responsible for pursuing any objection to the allowance of all Disputed Claims and shall have the right to exercise all rights of setoff and recoupment and other defenses that the Reorganized Debtor or its Estate may have with respect to any such Disputed Claim. The Reorganized Debtor shall have the exclusive authority to settle, compromise or withdraw any objections to any Disputed Claims without necessity of further approval of the Bankruptcy Court. Unless otherwise provided herein, all objections to Disputed Claims shall be served and filed not later than one-hundred-eighty (180) days after the Effective Date; provided, however, that this deadline may be extended upon motion by the Reorganized Debtor, without notice to Holders of Disputed Claims.

14.    <u>Distributions; Reserves</u>.  The provisions of the Plan governing distributions, reserves, and procedures for resolving and treating Disputed Claims under the Plan are approved and found to be fair and reasonable.

15.    <u>Governmental and Regulatory Consents and Approvals</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any State, Commonwealth, or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan with such deemed approvals and consents by any laws, rules or regulations of any State, Commonwealth, or any other governmental authority.

16.     <u>Release of Liens</u>.  Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, hypothecations, or other security interests against any property of the Estate shall be deemed fully released and discharged without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated notices, schedules, or statements typically filed pursuant to the Uniform Commercial Code or other applicable law.  The Plan and/or this Confirmation Order may be filed or recorded as further notice and evidence of all such releases and discharges.  Notwithstanding anything to the contrary herein, nothing in the Plan or in this Confirmation Order shall be deemed to release any liens, security interests, mortgages, deeds of trust, pledges, or any other property interest securing the OWS Secured Claim.

17.     <u>Cancellation of Documents</u>.  On the Effective Date, except to the extent otherwise provided in the Plan, any and all notes, instruments, debentures, certificates and other documents evidencing Claims against and Equity Interests in the Debtor shall be deemed automatically extinguished, cancelled, and of no further effect with the Debtor having no continuing obligations thereunder, and shall be deemed rejected and terminated.

18.     **<u>Releases by the Debtor</u>.  The releases contained in Article IX.C of the Plan are incorporated herein by reference and shall be, and hereby are, approved, and shall be effective without further action upon the occurrence of the Effective Date.**

19.     **<u>Injunction</u>.    Except as otherwise expressly provided in the Plan, this Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold, or may hold Clams against or Equity Interests in the Debtor which arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective**

**Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind which would interfere in any way with any Property of the Estate, (b) the enforcement, attachment, collection, or recovery of any Property of the Estate by any manner or means of any judgment, award, decree, or order against the Debtor or its Estate on account of any such Claim or Equity Interest, and/or (c) creating, perfecting, or enforcing any encumbrance of any kind against any Property of the Estate on account of any such Claim or Equity Interest. Such injunction shall extend to successors of the Debtor and their properties and interests in property. Any Person or Entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages from the willful violator. However, nothing contained in this article shall prohibit the holder of a timely filed proof of claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any obligations of the Debtor under this Plan. Notwithstanding anything to the contrary herein or in the Plan, such injunction shall not apply to the execution or implementation of any Restructuring Documents related to the treatment of the OWS Secured Claim nor shall such injunction apply to the OWS Secured Claim.**

20.     <u>Term of Injunctions and Stays</u>.  Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays provided for under the Plan, ordered in the Confirmation Order or pursuant to sections 105 or 362 of the Bankruptcy Code arising under or entered during the Chapter 11 Case, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the

order providing for such injunction or stay and to the extent consistent with the terms and provisions of the Plan or this Confirmation Order, as applicable; *provided*, *however*, that nothing herein shall bar the taking of such actions by the Debtor or Reorganized Debtor, subject to OWS' approval rights as set forth in the Plan and OWS Term Sheet, as are necessary to effectuate the transactions contemplated by the Plan or by this Confirmation Order on or prior to the Effective Date.

21. **Exculpation. Except as otherwise specifically provided herein or in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date (and following the Effective Date solely with respect to any issuance or distribution of securities, the distribution of any property, or the implementation of the restructuring, each pursuant to and in accordance with the Plan), of the Chapter 11 Case, the Debtor, the formulation, preparation, dissemination, or negotiation of the Plan, the Disclosure Statement, or any restructuring transaction (including the Restructuring), contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the pursuit of Confirmation, the pursuit of consummation of the Plan, or the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of any securities pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the**

advice of counsel with respect to their duties and responsibilities. **The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpations set forth herein and in Article IX.D of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any restructuring transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**In addition to the foregoing, to the extent permitted by applicable law, no Exculpated Party shall have nor incur, and each Exculpated Party is hereby released and exculpated from, any Claim, interest, obligation, suit, judgment, damage, demand, debt, right, Causes of Action, loss, remedy, or liability for any claim, arising between the Petition Date and the Effective Date, in connection with or arising out of related to (i) any and all activities by the**

LEGAL\75805500\7

**Debtor or any of its subsidiaries or affiliates with respect to any transfers or transactions to the extent approved in paragraph 3 of the Cash Collateral Order and made in connection with their restructuring efforts, (ii) the Existing Accounts (as defined in the Cash Collateral Order), or other similar account into which funds are deposited or from which funds are disbursed on behalf of or for the benefit of the Debtor, including but not limited to any acts or omissions of any Exculpated Party related to the deposit or disbursement of such funds; or (iii) any actions taken by any Exculpated Party in furtherance of or in connection with its obligations under the Cash Collateral Order. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth herein and in Article IX.D of the Plan (1) shall only be applicable to the maximum extent permitted by law; and (2) shall not be construed as exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence.**

22.    Setoffs.  Notwithstanding anything contained herein or in the Plan to the contrary, the Debtor or Reorganized Debtor, as the case may be, may, pursuant to sections 502(d) or 553 of the Bankruptcy Code or applicable nonbankruptcy law, setoff or exercise recoupment against any Allowed Claim or Allowed Administrative Expense and the distributions to be made on account thereof (before any distribution is made on account of such Claim or Administrative Expense), the rights and Causes of Action of any nature related to the Claim or Administrative Expense that it may hold against the Holder of such Allowed Claim or Allowed Administrative Expense;

provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claims, rights and Causes of Action that the Debtor or Reorganized Debtor may possess against such Holder.

23.    Payment of Statutory Fees.  All fees payable pursuant to section 1930(a) of title 28 of the United States Code shall be paid on the earlier of when due or the Effective Date, or as soon thereafter as practicable. From and after the Effective Date, the Reorganized Debtor shall be liable for and shall pay the fees under 28 U.S.C. § 1930 until entry of an order converting, dismissing or closing the Chapter 11 Case, whichever occurs first. In addition, the Reorganized Debtor shall file post-confirmation quarterly reports in conformity with U.S. Trustee guidelines, until entry of an order closing or converting the Chapter 11 Case, whichever comes first.

24.    Restructuring Documents.  Subject to the approval rights of OWS under the Plan and the OWS Term Sheet, the Debtor or the Reorganized Debtor, as applicable, is authorized to (i) enter into, execute, deliver, file, or record any Restructuring Documents, including, without limitation, any loan agreements, security documents, or any other related documents, and (ii) take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms of the Plan and the OWS Term Sheet. Confirmation shall be deemed an approval of such Restructuring Documents (and the transactions contemplated thereby, all actions to be taken, undertakings to be made, and obligations and fees paid by the Debtor or the Reorganized Debtor in connection therewith), and the Debtor or the Reorganized Debtor, as applicable, is authorized to execute, deliver, file, or record the Restructuring Documents without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation order, or rule or vote, consent, authorization approval of any Person except for those expressly required pursuant to the Plan or the OWS Term Sheet. On the Effective Date, all Liens, security interests, pledges,

mortgages, deeds of trust, or any other property interests granted pursuant to, or in connection with, any Restructuring Documents (i) shall be deemed to be approved and shall, without the necessity of the execution, recordation, or filing of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other documents, be valid, binding, fully perfected, fully enforceable Liens on, and security interests in, the property identified in such Restructuring Documents by virtue of this Confirmation Order, and (ii) shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non- bankruptcy law, the Plan, or this Confirmation Order.

25.    <u>REIT Structuring Transaction and Exemption under Section 1145</u>.  On the Effective Date, the Reorganized Debtor shall be deemed to have acquired 100% of the equity interests in Operator from AREPIII Property Trust, LLC and Corten Real Estate Fund II TIER LLC and/or their Affiliates for no consideration. At the same time, the Debtor and Operator shall enter into the Operating Lease, which Operating Lease shall, in accordance with the Restructuring Documents, be collaterally assigned to OWS (or to any of its affiliates, successors, or assigns) and all rights of Operator under the Operating Lease shall be absolutely and unconditionally subordinate pursuant to the terms of the Restructuring Documents. Under section 1145 of the Bankruptcy Code, the foregoing transaction shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.

26.    <u>Exemptions under Section 1146</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, under the Plan, (i) the issuance, distribution, transfer or exchange of any debt, equity security or other interest in the Debtor; (ii) the creation, modification, consolidation or recording of any

mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iii) the making, assignment or recording of any lease or sublease or (iv) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of or in connection with, this Confirmation Order or the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by or in any way related to the Plan shall not be subject to any document recording tax, mortgage recording tax, stamp tax or similar government assessment, and the appropriate state or local government official or agent shall forego the collection of any such tax or government assessment and accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or government assessment. All subsequent issuances, transfers or exchanges of securities, or the making or delivery of any instrument of transfer by the Debtor in the Chapter 11 Case, whether in connection with a sale pursuant to section 363 of the Bankruptcy Code or otherwise, shall be deemed to be or have been done in furtherance of the Plan.

27.    <u>Margaritaville</u>. Notwithstanding anything to the contrary in the Plan or the Confirmation Order, the following provisions shall apply to the Claims of Margaritaville, the treatment of the executory contract between the Debtor and Margaritaville and the relationship between the Debtor and Margaritaville:

   a.   Margaritaville shall not be required to file an Administrative Expense Request and shall have an Allowed Administrative Expense Claim, which as of March 25, 2025 is $893,636.49 and continues to accrue and increase through the Effective Date, which shall be paid in full in cash by the Debtor and the Reorganized Debtor, as applicable, no later than the Effective Date;

   b.   The deemed rejection of all executory contracts (including all amendments thereto) between the Debtor and Margaritaville shall not become effective until the new franchise agreement between the Debtor and Margaritaville Hotels &

Resorts, LLC has been approved by the Bankruptcy Court and become effective in accordance with its terms and conditions; and

c.  Unless satisfied or waived by Margaritaville in writing, the Effective Date of the Plan shall not occur unless and until the new franchise agreement between the Debtor and Margaritaville Hotels & Resorts, LLC has been approved by the Bankruptcy Court and become effective in accordance with its terms and conditions.

28.    <u>Documents and Instruments</u>.  Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

29.    <u>Conditions to Effective Date</u>.  The conditions and approval rights set forth in Article VIII.B of the Plan are incorporated herein by reference and shall be, and hereby are, approved. The Plan shall not become effective unless and until the conditions set forth in Article VIII.B of the Plan have been satisfied or waived.  Notwithstanding the foregoing, the conditions contained in the OWS Term Sheet may be waived only by OWS and only in its sole discretion in writing.

30.    <u>Retention of Jurisdiction</u>.  Without limitation, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matters arising under the Bankruptcy Code, arising in or related to the Chapter 11 Case or the Plan, or that relate to the matters set forth in Article XI of the Plan.

31.    <u>Plan Modifications</u>.  The following shall hereby modify the Plan:

- Article III.B.7:  "1121(d)" is replaced with "1141(d)".

- Article V.D:  "V.E" is replaced with "V.D".

- Article IX.B, line 6:  "Property of the Estate" is replaced with "property of the Reorganized Debtor".

32.     <u>Conflicts between Confirmation Order and Plan</u>.    The provisions of the Confirmation Order and the Plan shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be reconciled, then solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

33.     <u>Applicable Non-bankruptcy Law</u>.    Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

34.     <u>No Waiver</u>.    The failure to specifically include any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision or constitute a waiver thereof, it being the intent of this Bankruptcy Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

35.     <u>Final Order; Effective Date</u>.    This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062, this Confirmation Order shall be effective and enforceable immediately upon its entry.

Dated: March __, 2025

_____
Honorable Philip Bentley
United States Bankruptcy Judge

# EXHIBIT 2

## Redline

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
In re                                                                      Chapter 11

560 Seventh Avenue Owner Primary LLC,                Case No. 23-11289-PB

                      Debtor.
----------------------------------------------------------x

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER APPROVING AND CONFIRMING DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN

WHEREAS, 560 Seventh Avenue Owner Primary LLC (the "Debtor"), as debtor in the above-captioned Chapter 11 Case, having proposed and filed with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) that certain *Second Amended Chapter 11 Plan of 560 Seventh Avenue Owner Primary LLC* dated February 23, 2025 (the "Plan") [ECF # 217],[1] (ii) that certain *Amended Disclosure Statement with Respect to Second Amended Chapter 11 Plan of 560 Seventh Avenue Owner Primary LLC*, dated February 3, 2025  (the "Disclosure Statement") [ECF # 218] and (iii) the First Plan Supplement, dated March 24, 2025 [ECF # 235] (as the same may be amended, modified, and/or supplemented from time to time, the "Plan Supplement");

WHEREAS, on February 5, 2025, the Bankruptcy Court having entered the *Order (A) Approving the Disclosure Statement, (B) Establishing Solicitation and Voting Procedures, (C) Scheduling a Confirmation Hearing, (D) Establishing Procedures for Filing Confirmation Objections, and (E) Granting Related Relief* (the "Disclosure Statement Order") [ECF # 220], approving, among other things, the Disclosure Statement, the contents of the solicitation package, and the procedures for soliciting and tabulating votes to accept or reject the Plan;

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in Plan.

WHEREAS, solicitation packages and notices having been served on appropriate parties, and ballots for voting on the Plan having been transmitted to Holders of Claims entitled to vote on the Plan, as set forth in the *Affidavit of Service of Solicitation Materials* by Stanislav Kesler [ECF # 224] (the "Solicitation Certification"), the Debtor's claims and noticing agent and balloting agent in the Chapter 11 Case (the "Balloting Agent");

WHEREAS, the Balloting Agent having filed the *Declaration of Stanislav Kesler of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Second Amended Chapter 11 Plan of 560 Seventh Avenue Owner Primary LLC* [ECF # 231] (the "Voting Certification");

WHEREAS, on March 18, 2025, Margaritaville Enterprises, LLC ("Margaritaville") filed the *Limited Objection of Margaritaville Enterprises, LLC to Second Amended Chapter 11 Plan of 560 Seventh Avenue Owner Primary LLC* [ECF # 232] (the "Margaritaville Plan Objection");

WHEREAS, on March [28], 2025, the Bankruptcy Court entered an *Order Approving the Debtor's Motion for an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) Approving Franchise Agreement with Margaritaville Hotels & Resorts, LLC* [ECF #__] (the "Franchise Agreement Order"), resolving and causing the Margaritaville Plan Objection to be withdrawn;

WHEREAS, U.S. Specialty Insurance Company ("USSIC") and Margaritaville were the only two creditors to have submitted ballots rejecting the Plan;

WHEREAS, the Debtor filed a motion on March ~~26~~27, 2025, with the support of USSIC and Margaritaville, seeking to have the votes submitted by USSIC and Margaritaville, subject to the entry of the Franchise Agreement Order, be changed to be acceptances of the Plan (the "Voting Motion");

2

WHEREAS, no other responses or objections to confirmation of the Plan having been filed as of the March 18, 2025 objection deadline, or any such responses or objections being hereby withdrawn or overruled; and

WHEREAS, the Bankruptcy Court having held a hearing on March 28, 2025, to consider final approval of the Disclosure Statement and confirmation of the Plan (the "Confirmation Hearing"); and objections, if any, having been resolved, overruled, or withdrawn prior to or during the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor; the Bankruptcy Court hereby FINDS, DETERMINES, AND CONCLUDES that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    Findings and Conclusions.  The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)). The Bankruptcy Court has jurisdiction over the Debtor's Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Bankruptcy Court has jurisdiction to enter a final order with respect thereto.  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtor is an eligible debtor under section 109 of the Bankruptcy Code.  The Debtor is a proper plan proponent under section 1121(a) of the Bankruptcy Code.

LEGAL\75805500\6LEGAL\75805500\7

C.    <u>Judicial Notice</u>.  The Bankruptcy Court takes judicial notice of the docket of the Debtor's Chapter 11 Case maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Case.

D.    <u>Burden of Proof</u>.  The Debtor has the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.  The Debtor has met its burden with respect to each applicable element of section 1129 of the Bankruptcy Code.

E.    <u>Chapter 11 Petition</u>.  On August 12, 2023 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.  The Debtor continued as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

F.    <u>Statutory Committee of Unsecured Creditors</u>.  No statutory committee of unsecured creditors was appointed in the Chapter 11 Case.

G.    <u>The Compromises and Settlements Embodied in the Plan are Fair, Reasonable, and in the Best Interest of the Debtor's Estate</u>.  The Plan is the result of good faith, arm's length negotiations among the Debtor, certain of its creditors, and other parties in interest. The Plan constitutes a good faith, arm's length compromise and settlement of all claims or controversies relating to the rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest or any distribution to be made or obligation to be incurred pursuant to the Plan.  Such compromises or settlements (i) are in the best interests of

4

(x) the Debtor and its Estate and (y) Holders of Claims and Equity Interests, and (ii) are fair, equitable, and reasonable.

        H.    <u>Adequacy of Disclosure Statement</u>.  The Court entered the Disclosure Statement Order on February 5, 2025 finding, among other things, that the information contained in the Disclosure Statement contained extensive material information regarding the Debtor so that parties entitled to vote on the Plan could make informed decisions regarding the Plan. Additionally, the Disclosure Statement contains adequate information as that term is defined in section 1125(a) of the Bankruptcy Code and complies with any additional requirements of the Bankruptcy Code, the Bankruptcy Rules, and applicable nonbankruptcy law.

**<u>Solicitation and Voting</u>**

        I.    <u>Transmittal and Mailing of Solicitation Materials and Notices</u>.  The Solicitation Certification is evidence that the transmittal and service of the Plan, the Disclosure Statement, the Ballots, and other solicitation materials were adequate, sufficient, and in compliance with the Disclosure Statement Order, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "<u>Local Rules</u>"), and such parties have had sufficient opportunity to appear and be heard with respect thereto.  No other or further notice or re-solicitation is required.  The filing and notice of the Plan Supplement, if any, was proper and in accordance with the Plan, the Bankruptcy Code, and the Bankruptcy Rules, and no other or further notice shall be required.

LEGAL\75805500\6LEGAL\75805500\7

J.        <u>Good Faith Solicitation</u>.  Based on the record before the Bankruptcy Court in this Chapter 11 Case, the Debtor, and its Professionals, representatives, members, managers, officers, directors, employees, and agents have acted in "good faith" within the meaning of sections 1125(e) and 1129(a)(3) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the exculpation and injunction provisions set forth in Article IX of the Plan.

K.        <u>Voting</u>.  The Voting Certification is evidence that votes to accept or reject the Plan were tabulated fairly, in good faith, and in a manner consistent with the Disclosure Statement Order, the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.  All impaired Classes under the Plan have voted to accept the Plan.

## Compliance with the Requirements of Section 1129 of the Bankruptcy Code

L.        <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtor as plan proponent, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(i)        <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  With the exception of the Administrative Expense Claims, Priority Tax Claims, Claims for Professional

Fees, and Statutory Fees, which need not be classified, Article III of the Plan classifies Classes of Claims against and Equity Interests in the Debtor. The Claims and Equity Interests placed in each Class are substantially similar to the other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and the Plan does not unfairly discriminate between Holders of Claims and Equity Interests in each Class or between Classes. Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)    Unimpaired Classes Specified (11 U.S.C. § 1123(a)(2)). Article III of the Plan specifies that Claims in Class 1c (Other Secured Claims), Class 2 (Priority Non-Tax Claims), and Class 4 (Equity Interests) (together, the "Unimpaired Classes") are unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii)    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Article III of the Plan designates Claims in Class 1 (OWS Secured Claim), Class 1a (DHG Claim), Class 1b (Flintlock Claim), Class 3 (General Unsecured Claims), Class 3a (Personal Injury Claims), and Class 3b (Congregation Claim) (collectively, the "Impaired Classes") as impaired within the meaning of section 1124 of the Bankruptcy Code and clearly specify the treatment of the Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(iv)    Equality of Treatment (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class, unless the Holder of a particular Claim or Equity Interest has agreed to less favorable treatment for such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)     <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>.   The Plan and the documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, including, without limitation, (a) the settlement of all Claims and Interests and controversies in consideration for the classification, distributions, releases, and other benefits provided under the Plan (Article IV.A), (b) the vesting of property of the estate in the Reorganized Debtor free and clear of all Liens, Claims and Equity Interests except for any Claims of or liens, security interests, pledges, mortgages, or any other property interest securing the OWS Secured Claim in accordance with the treatment of the Class 1 Claim under the Plan (Articles IX.A, XII.B.), (c) the corporate restructuring of the Reorganized Debtor such that on the Effective Date, it will be deemed to have acquired 100% of the equity interests in Operator from AREPIII Property Trust, LLC and Corten Real Estate Fund II TIER LLC and/or their Affiliates for no consideration and Operator's substantially simultaneous entry into an operating lease with the Reorganized Debtor substantially in the form annexed to the Plan as Exhibit D (Article IV.D) (the "<u>Operating Lease</u>"), and which Operating Lease shall, in accordance with the Restructuring Documents, be collaterally assigned to OWS (or any of its affiliates, successors, or assigns) and all rights of Operator under the Operating Lease shall be absolutely and unconditionally subordinate pursuant to the terms of the Restructuring Documents, (d) the funding of distributions under the Plan by the Debtor and Parent (Article IV.F), and (e) except to the extent otherwise provided in the OWS Term Sheet, the Plan, or the treatment provided under the Plan, the automatic cancellation and termination of any agreement, note, instrument, certificate or other document evidencing or creating any Claim against the Debtor.   Accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

LEGAL\75805500\6LEGAL\75805500\7

(vi)    <u>Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6))</u>.  The Debtor is not a corporation and, therefore, 11 U.S.C. § 1123(a)(6) does not apply.

(vii)    <u>Continuation of Existing Management (11 U.S.C. § 1123(a)(7))</u>. Article IV.F. provides that Joseph Caruso and Brandon Flury, each of whom managed the Debtor as a vice president, shall continue in their positions as vice presidents and managers of the Reorganized Debtor as well as Operator.  Further, Highgate Hotels, L.P. shall continue to manage the Reorganized Debtor's hotel operations on a day-to-day basis.  The continuation of this management team is consistent with the interests of creditors and interest holders and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(viii)    <u>Earnings from Personal Services (11 U.S.C. § 1123(a)(8))</u>.  Section 1123(a)(8) of the Bankruptcy Code applies only to individual debtors and is not applicable to this Chapter 11 Case.

(ix)    <u>Impaired and Unimpaired Classes of Claims and Interests (11 U.S.C. § 1123(b)(1))</u>.  As permitted by section 1123(b)(1) of the Bankruptcy Code, pursuant to Article III of the Plan, Claims or Equity Interests in the Impaired Classes are impaired and Claims in the Unimpaired Classes are unimpaired.

(x)    <u>Assumption and Rejection (11 U.S.C. § 1123(b)(2))</u>.  Article V of the Plan provides for the assumption and rejection of executory contracts and unexpired leases not previously rejected and meets the requirements of section 365 of the Bankruptcy Code.

(xi)    <u>Settlement/Retention of Claims or Interests (11 U.S.C. § 1123(b)(3))</u>.  Article X of the Plan provides for the retention and preservation of all Causes of Action.

9

(xii)   <u>Sale of Assets / Distribution of Proceeds (11 U.S.C. § 1123(b)(4))</u>. The Plan does not provide for the sale of all or substantially all of the property of the estate and, accordingly, section 1123(b)(4) of the Bankruptcy Code is inapplicable.

(xiii)   <u>Modification of Rights (11 U.S.C. § 1123(b)(5))</u>.  As permitted by section 1123(b)(5) of the Bankruptcy Code, the Plan modifies the rights of Holders of Claims and Equity Interests in Impaired Classes.  The Plan leaves unaffected the rights of Holders of Claims in Unimpaired Classes.

(xiv)   <u>Additional Plan Provisions (11 U.S.C. § 1123(b)(6))</u>.  As permitted by section 1123(b)(6) of the Bankruptcy Code, the Plan includes other appropriate provisions not inconsistent with the applicable provisions of the Bankruptcy Code, including, without limitation, certain exculpation, release, and injunction provisions in Article IX of the Plan. Based upon the facts and circumstances of this Chapter 11 Case, the exculpation, release, and injunction provisions in the Plan are narrowly tailored, integral consideration and critical parts of the Plan, and the Exculpated Parties have relied on the efficacy and conclusive effects of such exculpation and injunctions when making concessions and exchanging consideration in connection with the Chapter 11 Case and the Plan.  Such exculpation and injunction provisions in Article IX of the Plan are (a) in exchange for the good, valuable, and reasonably equivalent consideration provided by the Exculpated Parties, (b) in the best interests of the Debtor, the Estate, and Creditors, (c) fair, equitable, and reasonable, and (d) a bar to the assertion of any Claims or Causes of Action which are subject to such exculpation, release, and injunctions. Accordingly, based upon the record of this Chapter 11 Case, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, the Bankruptcy Court finds that the exculpation, release, and injunction provisions set forth in

10

Article IX of the Plan are consistent with the Bankruptcy Code and applicable law and are appropriate under the circumstances.

(xv)    Sale of Exempt Property (11 U.S.C. § 1123(c)).  The Debtor is not an individual.  Accordingly, section 1123(c) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

(xvi)    Cure of Defaults (11 U.S.C. § 1123(d)).  Article V of the Plan provides for the assumption and assignment or for the rejection of certain executory contracts and unexpired leases.  In addition, Article V.F of the Plan provides that, on the Effective Date, all other executory contracts or unexpired leases not previously assumed and/or assigned, not subject to a pending motion to assume and/or assign as of the Effective Date, or not rejected before the Effective Date, will be deemed rejected.  As required by section 365(b)(1) of the Bankruptcy Code, any monetary amounts by which any executory contract or unexpired lease that may be assumed under the Plan is in default shall be satisfied by payment or provision for payment of the required cure amount, if any.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

M.    The Plan Proponents' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  The Debtor, as plan proponent, has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other applicable law in transmitting the Plan, the Disclosure Statement, the ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan.  Accordingly, the Plan satisfies the requirements of section 1129(a)(2) of the Bankruptcy Code.

N.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Debtor has proposed the Plan, (and all other documents necessary or appropriate to effectuate the Plan,

11

including the Restructuring Documents) in good faith and not by any means forbidden by law, thereby satisfying the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtor's good faith is evident from the facts and record of this Chapter 11 Case, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in this Chapter 11 Case. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtor's assets and maximizing distributions to creditors. Further, the Plan's classification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's-length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are integral to the Plan, supported by valuable consideration, and necessary for the Debtor's successful reorganization.

O.    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payments made or promised by the Debtor, or a person acquiring property under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, have been approved by, or are subject to approval of, the Bankruptcy Court as reasonable. Accordingly, the Plan satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

P.    Directors, Officers, and Trustees (11 U.S.C. § 1129(a)(5)). The Plan satisfies section 1129(a)(5) of the Bankruptcy Code as the identity of the management of the Reorganized Debtor has been fully disclosed in Article IV.F of the Plan, and such continued management by Brandon Flury and Joseph Caruso as vice presidents is consistent with the interests of Holders of Claims against and Equity Interests in the Debtor and with public policy. Messrs. Flury and Caruso will continue to be compensated by their current employers and will not receive compensation from the Reorganized Debtor.

12

Q.      No Rate Changes (11 U.S.C. § 1129(a)(6)).  The Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction. Accordingly, section 1129(a)(6) of the Bankruptcy Code is not applicable in this Chapter 11 Case.

R.      Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).  Each Holder of an Impaired Claim or Equity Interest (i) has accepted the Plan, (ii) will receive or retain under the Plan on account of such Allowed Claim or Allowed Equity Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date, or (iii) has agreed to receive less favorable treatment.  The liquidation analysis, annexed to the Disclosure Statement as Exhibit C (the "Liquidation Analysis") was prepared by the Debtor with the assistance of its retained professionals, including its retained appraiser, LW Hospitality Advisors, retained by the Debtor pursuant to an order of the Court entered on October 21, 2024 [ECF # 186].  Under either the Recovery High or the Recovery Low basis, the Liquidation Analysis demonstrates that there would be no distribution to general unsecured creditors in a hypothetical chapter 7 liquidation.  No party in interest has contested or otherwise disputed the accuracy of the Liquidation Analysis.  Therefore, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

S.      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Claims in Classes 1c, 2 and 4 are unimpaired under the Plan and are conclusively presumed to have accepted the Plan without the solicitation of acceptances or rejections pursuant to section 1126(f) of the Bankruptcy Code.  As set forth in the Voting Certification, Holders of Claims in Classes 1,

13

1a, 1b, 3, 3a, and 3b voted to accept the Plan. Accordingly, the Plan satisfies the requirements of section 1129(a)(8) of the Bankruptcy Code.

T.    Treatment of Administrative Expense Claims and Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Claims under the Plan of the type specified in section 507(a)(1) through 507(a)(8) of the Bankruptcy Code complies with the provisions of section 1129(a)(9)(C) of the Bankruptcy Code.

U.    Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). Section 1129(a)(10) of the Bankruptcy Code is satisfied as at least one impaired Class of Claims has accepted the Plan, determined without including any acceptances of the Plan by any insider.

V.    Feasibility (11 U.S.C. § 1129(a)(11)). Section 1129(a)(11) of the Bankruptcy Code is satisfied as confirmation of the Plan is not likely to be followed by the need for further liquidation or financial reorganization of the Debtor.

W.    Payment of Fees (11 U.S.C. § 1129(a)(12)). Section 1129(a)(12) of the Bankruptcy Code is satisfied as all fees payable under section 1930 of title 28 of the United States Code have either been paid or will be paid under the Plan. Statutory Fees shall be paid on the Effective Date and thereafter, as such fees may thereafter accrue and be due and payable, in accordance with the applicable schedule for payment of such fees. All subsequent Statutory Fees shall be paid by the Reorganized Debtor until entry of a final decree closing the Chapter 11 Case or such other time as such fees are no longer required to be paid.

X.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). Except for any obligation to continue to contribute benefit fund contributions under its collective bargaining agreement to be assumed and assigned under the Plan, the Debtor is not obligated to pay retiree benefits. Nevertheless, Article XII.E. provides for the continuation of the payment of retiree

14

benefits, as that term is defined in section 1114 of the Bankruptcy Code, after the Effective Date at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code at any time prior to confirmation of the Plan, for the duration of the period the Debtor has obligated itself to provide such benefits. The Plan, therefore, is in compliance with the requirements of section 1129(a)(13) of the Bankruptcy Code.

        Y.      <u>No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>.  The Debtor is not an individual and is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

        Z.      <u>Individual Debtor Payment of Disposable Income (11 U.S.C. § 1129(a)(15))</u>.  The Debtor is not an individual.  Accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

        AA.    <u>No Applicable Non-bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>.  The Debtor is a moneyed, business, or commercial corporation and, accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in the Chapter 11 Case.

        BB.    <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>.  All impaired Classes under the Plan have voted to accept the Plan.  Accordingly, section 1129(b) is not applicable.  Nevertheless, the Court makes the following findings and conclusions with respect to section 1129(b) of the Bankruptcy Code:

        (i)      The Plan does not discriminate against Class 3 unfairly.  Class 3 had the opportunity to receive a distribution in a greater percentage than that offered to other similarly situated creditors so long as it voted in favor of the Plan.

        (ii)     The Plan is fair and equitable as to Class 3.  Although the Plan does not comply with the absolute priority rule, it complies with the new value corollary.  The

15

New Value Contribution to be provided by the Parent pursuant to the terms of the Plan satisfies all requirements of the new value corollary. Specifically, the New Value Contribution is (1) new, (2) substantial, (3) money or money's worth, (4) necessary for a successful reorganization, and (5) reasonably equivalent to the property that the Parent is retaining or receiving under the Plan.

(iii) Under the circumstances of this Chapter 11 Case, any formal marketing to determine the value of the equity in the Reorganized Debtor would be objectively futile, unnecessary, unduly expensive, time-consuming, risky and value-destructive. The Debtor's exclusive period to file a plan expired on December 11, 2023 and its corresponding exclusive period to seek confirmation of a plan has similarly long since expired. Since that time, there has been no legal impediment to any other party filing and seeking confirmation of its own plan in this Chapter 11 Case. No other plan has been filed in the Chapter 11 Case.

CC.     <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan is the only plan being confirmed in the Chapter 11 Case. Thus, the Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.

DD.     <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

EE.     <u>Small Business Case Confirmation (11 U.S.C. § 1129(e)</u>. This Chapter 11 Case is not a small business case so section 1129(e) of the Bankruptcy Code is inapplicable.

FF.     <u>Plan Supplement</u>. The filing and notice of the Plan Supplement, and any modifications or supplements thereto, were proper and in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice is or

16

shall be required. The Debtor is authorized to modify the Plan Supplement documents and any schedules, exhibits or amendments thereto, following entry of this Confirmation Order in a manner consistent with this Confirmation Order, the Plan, or applicable law; *provided*, *however*, that any such modifications shall be subject to the consent rights as set forth in the OWS Term Sheet and the Plan.

GG.    <u>Plan Documents and Restructuring Documents</u>. The terms of the Plan, including, without limitation, the Plan Supplement, and all exhibits and schedules thereto, the Restructuring Documents and all other documents filed in connection with the Plan, or executed or to be executed in connection with the transactions contemplated by the Plan and the Plan Supplement, and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications are incorporated by reference, are approved in all respects, and constitute an integral part of this Confirmation Order. The Debtor has exercised reasonable business judgement in determining to enter into the Restructuring Documents and has provided sufficient and adequate notice of the material terms of such documents, which material terms were filed as part of the Plan or Plan Supplement.

HH.    <u>Modifications of the Plan (11 U.S.C. § 1127)</u>. Any modifications made to the Plan since the solicitation thereof do not constitute changes that materially and adversely change the treatment of any Claims or Equity Interests. Accordingly, these modifications comply in all respects with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and none of the modifications requires additional disclosure or re-solicitation of votes on the Plan. Under Bankruptcy Rule 3019(a), such modifications do not require that the Holders of Claims or Interests be afforded an opportunity to change previously-cast acceptances or rejections of the Plan, and all Creditors that previously accepted the Plan are deemed to have accepted the Plan as

modified.  The disclosure of any Plan modifications prior to or on the record at the Confirmation Hearing constitutes due and sufficient notice of any and all Plan modifications.  The Plan as modified shall constitute the Plan submitted for confirmation.

II.    <u>Conditions Precedent to Confirmation</u>.  All conditions contained in Article VIII.A. of the Plan including, have been satisfied or waived by the Debtor or OWS, as the case may be, in each case, consistent with the terms of the Plan.

JJ.    <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

KK.    <u>Implementation</u>.  All documents necessary to implement the Plan, including the Restructuring Documents, provide adequate and proper means for implementation of the Plan, and have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law.

LL.    <u>Preservation of Causes of Action</u>.  It is in the best interests of the Debtor, its Creditors, and Equity Interest Holders that all Causes of Action shall survive confirmation and vest in the Reorganized Debtor free and clear of all Liens, Claims, charges or other encumbrances, and from and after the Effective Date the Reorganized Debtor shall have exclusive rights, powers, and interests of the Estate to pursue, settle, or, subject to the Plan, abandon such Causes of Action as the sole representative of the Estate pursuant to section 1123(b)(3) of the Bankruptcy Code.

MM.    <u>Compromise, Settlement, Exculpation, and Injunction</u>.  The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to

approve the compromises, settlements, exculpations and injunctions set forth in Article IX of the Plan. Based upon the record of the Chapter 11 Case and the evidence proffered or adduced at the Confirmation Hearing, the Bankruptcy Court finds that the compromises, settlements, exculpation, release, and injunctions set forth in Article IX of the Plan are consistent with applicable law and integral components of the Plan.

NN.    _Good Faith_. The Debtor has proposed the Plan (and all other documents necessary or appropriate to effectuate the Plan, including the Restructuring Documents) in good faith, with the legitimate and honest purposes of maximizing value to the Debtor's Estate for the benefit of its stakeholders. In determining the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the formulation of the Plan. The Plan is the result of extensive arm's-length negotiations among the Debtor and its key stakeholders. Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code and the Debtor has acted in good faith within the meaning of sections 1125(e) and 1126(e) of the Bankruptcy Code.

## **ORDER**

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1.    _Approval of the Voting Motion_. For good cause shown in the Voting Motion and as otherwise set forth in the record of the Confirmation Hearing, the Voting Motion is hereby approved and USSIC and Margaritaville are each hereby deemed to have accepted the Plan.

2.    _Confirmation of the Plan_. The Plan and each of its provisions (including any Plan modifications and the Plan Supplement) shall be, and hereby are, CONFIRMED pursuant to section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplement, if any,

are authorized and approved, and the appropriate representatives of the Debtor or the Reorganized Debtor, as applicable, are authorized to execute and deliver such documents as are necessary to implement the Plan and/or to cause the Effective Date to occur. Each provision of the Plan is authorized and approved and shall have the same validity, binding effect, and enforceability as every other provision of the Plan. The terms of the Plan, as previously modified and as modified by any modifications made at the Confirmation Hearing, are incorporated by reference into and are an integral part of this Confirmation Order. The failure specifically to describe, include, or refer to any particular article, section, or provision of the Plan, Plan Supplement, or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan and all related documents be approved and confirmed in their entirety as if set forth verbatim in this Confirmation Order.

3.    _Compromise of Controversies_. For the reasons stated herein, the Plan constitutes a good faith, arm's-length compromise and settlement of all claims or controversies relating to the rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest or any distribution to be made or obligation to be incurred pursuant to the Plan, and the entry of this Confirmation Order constitutes approval of all such compromises and settlements.

4.    _Objections_. All objections, limited objections, responses to, and statements and comments, if any, in opposition to or inconsistent with the Plan, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, OVERRULED and DENIED in their entirety. All withdrawn objections are deemed withdrawn with prejudice.

20

5.     <u>Satisfaction of Claims</u>.  To the fullest extent provided under section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided herein or in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction discharge, and settlement, as of the Effective Date, of all Claims and Equity Interests, including any assertions for interest accrued on Claims or Equity Interests from and after the Petition Date, liabilities or obligations of, liens on, or rights against, the Estate, the Debtor, or any of the Debtor's assets or properties, whether known or unknown, including Claims, demands, liabilities, and equitable relief that arose before the Effective Date, any contingent or non-contingent liability on account of representations made or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a Proof of Claim or Equity Interest based upon such Claim, debt, right, or Equity Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim, debt, right, or Equity Interest is Allowed pursuant to section 502 of the Bankruptcy Code, (c) the Holder of such a Claim or Equity Interest has accepted the Plan or has failed to vote to accept or reject the Plan, or (d) the Holder of a Claim or Equity Interest is entitled to a distribution under the Plan, regardless of whether any property shall have been or is to be distributed or retained pursuant to the Plan on account of such Claims and Equity Interests.  This Confirmation Order shall be a judicial determination of the discharge and satisfaction of all Claims and Equity Interests subject to the Effective Date occurring, except as otherwise expressly provided herein or in the Plan.

6.     Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity

Interests, and controversies relating to the contractual, legal, and subordination and other equitable rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed Claim or Equity Interest. The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and Holders of Claims and Equity Interests and is fair, equitable, and reasonable.

7.    <u>Binding Effect</u>.  On the Effective Date, and effective as of the Effective Date, the Plan shall be binding upon the Debtor and all present and former Holders of Claims against and Equity Interests in the Debtor, and their respective successors and assigns, regardless of whether any such Holder of a Claim or Equity Interest voted or failed to vote to accept or reject the Plan and regardless of whether any such Holder of a Claim or Equity Interest is entitled to receive any distribution under the Plan.  On the Effective Date, after giving effect to the transactions that are to occur on or before the Effective Date, the Plan shall be deemed to be substantially consummated within the meaning set forth in section 1101 and pursuant to section 1127(b) of the Bankruptcy Code.

8.    <u>General Authorizations</u>.  The Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements and/or documents, and take such acts and actions as may be reasonably necessary or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of the Plan and any transactions described in or contemplated by the Plan. The Debtor and OWS may, and all other Holders of Allowed Claims receiving distributions

pursuant to the Plan, at the request or direction of the Debtor, as applicable, shall, from time to time prepare, execute, and deliver any agreements, documents, instruments, or notices, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan. Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the members, managers, or other owners, direct or indirect, of the Debtor shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to applicable law, without any further vote, consent, approval, authorization, or other action by such members, managers, or other owners of the Debtor or notice to, order of, or hearing before, the Bankruptcy Court.

9.    <u>Compensation and Reimbursement Claims</u>.  All Professionals seeking allowance and payment of Professional Fee Claims shall (a) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in the Chapter 11 Case by the date that is thirty (30) days after the Effective Date and (b) be paid (i) the unpaid amounts as are Allowed by the Bankruptcy Court within five (5) Business Days after the date that such Claim is Allowed by Order of the Bankruptcy Court, or (ii) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Claim and the Debtor.

10.    <u>Administrative Expense Claims</u>.  To be eligible to receive Distributions under the Plan on account of an Administrative Expense Claim that is not otherwise Allowed by the Plan, (a) a request for payment of an Administrative Expense Claim incurred during the period of time from the Petition Date through the Effective Date and not otherwise paid in the ordinary course of business and that remains unpaid must have been filed on or before at 5:00 p.m. (ET) on the date that is thirty (30) days immediately following  the Effective Date.  Any Administrative Expense Claim that is not timely asserted in accordance herewith and with Article II.A of the

23

Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtor, the Estate, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup, or recover such Claim.  Notwithstanding anything to the contrary herein, the deadline set forth in this paragraph shall not be applicable to any Restructuring Expenses, which shall be payable without the requirement for the filing of retention applications, fee applications, or any other application in the Chapter 11 Case.  Pursuant to the Plan and this Confirmation Order, the Restructuring Expenses (i) shall be Allowed in full as an Administrative Expense Claim upon incurrence, (ii) shall not be subject to any offset, defense, counterclaim, reduction, or credit, and (iii) shall be paid as provided for in the OWS Term Sheet.

11.    <u>Assumed and Rejected Contracts and Leases</u>.    On the Effective Date, all executory contracts and/or unexpired leases between (i) the Debtor and IMCMV Times Square LLC ("<u>IMCMV</u>"); (ii) the Debtor and Highgate hotels, L.P. ("<u>Highgate</u>"); (iii) the Debtor and the Hotel and Gaming Trades Council ("<u>HTC</u>"); (iv) NYC Megamart Management Corp. ("<u>Megamart</u>"); and (v) Nouveau Elevator Industries, LLC ("<u>Nouveau</u>") shall be deemed assumed by the Debtor and assigned to AC MVTS Operator, LLC ("<u>Operator</u>").  No cure payments in connection with the assumption and assignment of any such executory contracts and/or unexpired leases shall be due or owing to any of IMCMV, Highgate, ~~HTC,~~ Megamart, or Nouveau notwithstanding anything to the contrary in <u>the Plan. For the avoidance of doubt, any cure payments in connection with the assumption and assignment of any such executory contracts with HTC shall be governed by </u>the Plan.  To the extent that either Nouveau or Megamart disputes that there is no cure amount due in connection with the Debtor's assumption of its agreement with it, Nouveau or Megamart, as the case may be, must file within thirty (30)

24

days from the date hereof, a written objection with the Court. In addition to the foregoing, that certain Franchise Agreement between the Debtor and Margaritaville Hotels & Resorts, LLC entered into and hereafter approved by the Court, shall also be deemed assumed by the Debtor and assigned to Operator as of the Effective Date. All other executory contracts not previously assumed and/or assigned, not subject to a pending motion to assume and/or assign as of the Effective Date, or not rejected before the Effective Date, shall be deemed rejected. Notwithstanding the foregoing, all insurance policies, to the extent they are Executory Contracts, shall be deemed assumed on the Effective Date, and the Debtor may at any time prior to the date that is ninety (90) days following the Effective Date, assume any executory contract or unexpired lease which would otherwise have been deemed rejected or reject any executory contract or unexpired lease which would otherwise have been deemed assumed hereby or under the Plan by filing a notice of such assumption or rejection as an additional Plan Supplement, providing written notice to the counterparty to such unexpired lease or executory contract, and paying any applicable cure.

12.    <u>Rejection Damages</u>. ***If the rejection under the Plan of an executory contract or unexpired lease results in damages to the other party or parties to such contract or lease, any Claim for such damages, if not heretofore evidenced by a Proof of Claim that has been timely Filed, shall be forever barred and shall not be enforceable against the Debtor or its properties, successors or assigns, unless a Proof of Claim therefore is timely Filed with Kroll Restructuring Administration LLC ("Kroll"), by (i) electronically filing through Kroll's website at https://cases.ra.kroll.com/560SeventhAve/; (ii) submitting the original Proof of Claim (with an original signature) by first-class U.S. Mail to Kroll at the following address: Seventh Avenue Owner Primary LLC Claims Processing Center, c/o Kroll Restructuring***

*Administration LLC, Grand Central Station, PO Box 4850, New York, NY 10163-4850; or (iii)*
*submitting the original Proof of Claim (with an original signature) by overnight courier or*
*other hand delivery system to Kroll at the following address: Seventh Avenue Owner Primary*
*LLC Claims Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue,*
*Suite 412, Brooklyn, NY 11232 and served upon counsel for the Debtor, Cozen O'Connor,*
*Attn: Christina Sanfelippo, 123 North Wacker Drive, Suite 1800, Chicago, IL 60606*
*(csanfelippo@cozen.com) on or before (x) thirty (30) days after the later to occur of (i) notice*
*of the Effective Date and (ii) the date of entry of an order by the Bankruptcy Court*
*authorizing rejection of a particular executory contract or unexpired lease, or (y) such other*
*date as may be ordered by the Bankruptcy Court. Nothing in the Plan or herein should be*
*construed or deemed to alter the applicable deadlines for filing a Proof of Claim for executory*
*contracts or unexpired leases previously rejected pursuant to prior orders of the Bankruptcy*
*Court.*

13.    <u>Claims Objections</u>.  Upon the Effective Date, the Reorganized Debtor shall solely
be responsible for pursuing any objection to the allowance of all Disputed Claims and shall have
the right to exercise all rights of setoff and recoupment and other defenses that the Reorganized
Debtor or its Estate may have with respect to any such Disputed Claim. The Reorganized Debtor
shall have the exclusive authority to settle, compromise or withdraw any objections to any
Disputed Claims without necessity of further approval of the Bankruptcy Court. Unless
otherwise provided herein, all objections to Disputed Claims shall be served and filed not later
than one-hundred-eighty (180) days after the Effective Date; provided, however, that this
deadline may be extended upon motion by the Reorganized Debtor, without notice to Holders of
Disputed Claims.

14.    <u>Distributions; Reserves</u>.    The provisions of the Plan governing distributions, reserves, and procedures for resolving and treating Disputed Claims under the Plan are approved and found to be fair and reasonable.

15.    <u>Governmental and Regulatory Consents and Approvals</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any State, Commonwealth, or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan with such deemed approvals and consents by any laws, rules or regulations of any State, Commonwealth, or any other governmental authority.

16.    <u>Release of Liens</u>.  Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, hypothecations, or other security interests against any property of the Estate shall be deemed fully released and discharged without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated notices, schedules, or statements typically filed pursuant to the Uniform Commercial Code or other applicable law.  The Plan and/or this Confirmation Order may be filed or recorded as further notice and evidence of all such releases and discharges. Notwithstanding anything to the contrary herein, nothing in the Plan or in this Confirmation Order shall be deemed to release any liens, security interests, mortgages, deeds of trust, pledges, or any other property interest securing the OWS Secured Claim.

17.    <u>Cancellation of Documents</u>.  On the Effective Date, except to the extent otherwise provided in the Plan, any and all notes, instruments, debentures, certificates and other documents

27

evidencing Claims against and Equity Interests in the Debtor shall be deemed automatically extinguished, cancelled, and of no further effect with the Debtor having no continuing obligations thereunder, and shall be deemed rejected and terminated.

18.    **Releases by the Debtor.  The releases contained in Article IX.C of the Plan are incorporated herein by reference and shall be, and hereby are, approved, and shall be effective without further action upon the occurrence of the Effective Date.**

19.    **Injunction.    Except as otherwise expressly provided in the Plan, this Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold, or may hold Clams against or Equity Interests in the Debtor which arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind which would interfere in any way with any Property of the Estate, (b) the enforcement, attachment, collection, or recovery of any Property of the Estate by any manner or means of any judgment, award, decree, or order against the Debtor or its Estate on account of any such Claim or Equity Interest, and/or (c) creating, perfecting, or enforcing any encumbrance of any kind against any Property of the Estate on account of any such Claim or Equity Interest. Such injunction shall extend to successors of the Debtor and their properties and interests in property. Any Person or Entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages from the willful violator. However, nothing contained in this article shall prohibit the holder of a timely filed proof of claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or**

**prohibit the interpretation or enforcement by the Claimant of any obligations of the Debtor under this Plan. Notwithstanding anything to the contrary herein or in the Plan, such injunction shall not apply to the execution or implementation of any Restructuring Documents related to the treatment of the OWS Secured Claim nor shall such injunction apply to the OWS Secured Claim.**

20. <u>Term of Injunctions and Stays</u>. Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays provided for under the Plan, ordered in the Confirmation Order or pursuant to sections 105 or 362 of the Bankruptcy Code arising under or entered during the Chapter 11 Case, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay and to the extent consistent with the terms and provisions of the Plan or this Confirmation Order, as applicable; *provided*, *however*, that nothing herein shall bar the taking of such actions by the Debtor or Reorganized Debtor, subject to OWS' approval rights as set forth in the Plan and OWS Term Sheet, as are necessary to effectuate the transactions contemplated by the Plan or by this Confirmation Order on or prior to the Effective Date.

21. **<u>Exculpation</u>. Except as otherwise specifically provided herein or in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date (and following the Effective Date solely with respect to any issuance or distribution of securities, the distribution of any property, or the implementation of the restructuring, each pursuant to and in accordance with the Plan), of**

29

the Chapter 11 Case, the Debtor, the formulation, preparation, dissemination, or negotiation of the Plan, the Disclosure Statement, or any restructuring transaction (including the Restructuring), contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the pursuit of Confirmation, the pursuit of consummation of the Plan, or the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of any securities pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the exculpations set forth herein and in Article IX.D of the Plan (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud

(provided that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence, or (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any restructuring transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

In addition to the foregoing, to the extent permitted by applicable law, no Exculpated Party shall have nor incur, and each Exculpated Party is hereby released and exculpated from, any Claim, interest, obligation, suit, judgment, damage, demand, debt, right, Causes of Action, loss, remedy, or liability for any claim, arising between the Petition Date and the Effective Date, in connection with or arising out of related to (i) any and all activities by the Debtor or any of its subsidiaries or affiliates with respect to any transfers or transactions to the extent approved in paragraph 3 of the Cash Collateral Order and made in connection with their restructuring efforts, (ii) the Existing Accounts (as defined in the Cash Collateral Order), or other similar account into which funds are deposited or from which funds are disbursed on behalf of or for the benefit of the Debtor, including but not limited to any acts or omissions of any Exculpated Party related to the deposit or disbursement of such funds; or (iii) any actions taken by any Exculpated Party in furtherance of or in connection with its obligations under the Cash Collateral Order. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth herein and in Article IX.D of the Plan (1) shall only be applicable to the maximum extent

permitted by law; and (2) shall not be construed as exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances), willful misconduct, or gross negligence.

22.    Setoffs.  Notwithstanding anything contained herein or in the Plan to the contrary, the Debtor or Reorganized Debtor, as the case may be, may, pursuant to sections 502(d) or 553 of the Bankruptcy Code or applicable nonbankruptcy law, setoff or exercise recoupment against any Allowed Claim or Allowed Administrative Expense and the distributions to be made on account thereof (before any distribution is made on account of such Claim or Administrative Expense), the rights and Causes of Action of any nature related to the Claim or Administrative Expense that it may hold against the Holder of such Allowed Claim or Allowed Administrative Expense; provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claims, rights and Causes of Action that the Debtor or Reorganized Debtor may possess against such Holder.

23.    Payment of Statutory Fees.  All fees payable pursuant to section 1930(a) of title 28 of the United States Code shall be paid on the earlier of when due or the Effective Date, or as soon thereafter as practicable. From and after the Effective Date, the Reorganized Debtor shall be liable for and shall pay the fees under 28 U.S.C. § 1930 until entry of an order converting, dismissing or closing the Chapter 11 Case, whichever occurs first. In addition, the Reorganized

Debtor shall file post-confirmation quarterly reports in conformity with U.S. Trustee guidelines, until entry of an order closing or converting the Chapter 11 Case, whichever comes first.

24.    <u>Restructuring Documents</u>.  Subject to the approval rights of OWS under the Plan and the OWS Term Sheet, the Debtor or the Reorganized Debtor, as applicable, is authorized to (i) enter into, execute, deliver, file, or record any Restructuring Documents, including, without limitation, any loan agreements, security documents, or any other related documents, and (ii) take  such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms of the Plan and the OWS Term Sheet. Confirmation shall be deemed an approval of such Restructuring Documents (and the transactions contemplated thereby, all actions to be taken, undertakings to be made, and obligations and fees paid by the Debtor or the Reorganized Debtor in connection therewith), and the Debtor or the Reorganized Debtor, as applicable, is authorized to execute, deliver, file, or record the Restructuring Documents without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation order, or rule or vote, consent, authorization approval of any Person except for those expressly required pursuant to the Plan or the OWS Term Sheet. On the Effective Date, all Liens, security interests, pledges, mortgages, deeds of trust, or any other property interests granted pursuant to, or in connection with, any Restructuring Documents (i) shall be deemed to be approved and shall, without the necessity of the execution, recordation, or filing of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other documents, be valid, binding, fully perfected, fully enforceable Liens on, and security interests in, the property identified in such Restructuring Documents by virtue of this Confirmation Order, and (ii) shall not be enjoined or subject to discharge, impairment, release, avoidance,

33

recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non- bankruptcy law, the Plan, or this Confirmation Order.

25.    <u>REIT Structuring Transaction and Exemption under Section 1145</u>.    On the Effective Date, the Reorganized Debtor shall be deemed to have acquired 100% of the equity interests in Operator from AREPIII Property Trust, LLC and Corten Real Estate Fund II TIER LLC and/or their Affiliates for no consideration. At the same time, the Debtor and Operator shall enter into the Operating Lease, which Operating Lease shall, in accordance with the Restructuring Documents, be collaterally assigned to OWS (or to any of its affiliates, successors, or assigns) and all rights of Operator under the Operating Lease shall be absolutely and unconditionally subordinate pursuant to the terms of the Restructuring Documents. Under section 1145 of the Bankruptcy Code, the foregoing transaction shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.

26.    <u>Exemptions under Section 1146</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, under the Plan, (i) the issuance, distribution, transfer or exchange of any debt, equity security or other interest in the Debtor; (ii) the creation, modification, consolidation or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iii) the making, assignment or recording of any lease or sublease or (iv) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of or in connection with, this Confirmation Order or the Plan, including any

deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by or in any way related to the Plan shall not be subject to any document recording tax, mortgage recording tax, stamp tax or similar government assessment, and the appropriate state or local government official or agent shall forego the collection of any such tax or government assessment and accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or government assessment. All subsequent issuances, transfers or exchanges of securities, or the making or delivery of any instrument of transfer by the Debtor in the Chapter 11 Case, whether in connection with a sale pursuant to section 363 of the Bankruptcy Code or otherwise, shall be deemed to be or have been done in furtherance of the Plan.

27. <u>Margaritaville</u>. Notwithstanding anything to the contrary in the Plan or the Confirmation Order, the following provisions shall apply to the Claims of Margaritaville, the treatment of the executory contract between the Debtor and Margaritaville and the relationship between the Debtor and Margaritaville:

    a. Margaritaville shall not be required to file an Administrative Expense Request and shall have an Allowed Administrative Expense Claim, which as of March 25, 2025 is $893,636.49 and continues to accrue and increase through the Effective Date, which shall be paid in full in cash by the Debtor and the Reorganized Debtor, as applicable, no later than the Effective Date;

    b. The deemed rejection of all executory contracts (including all amendments thereto) between the Debtor and Margaritaville shall not become effective until the new franchise agreement between the Debtor and Margaritaville Hotels & Resorts, LLC has been approved by the Bankruptcy Court and become effective in accordance with its terms and conditions; and

    c. Unless satisfied or waived by Margaritaville in writing, the Effective Date of the Plan shall not occur unless and until the new franchise agreement between the Debtor and Margaritaville Hotels & Resorts, LLC has been approved by the Bankruptcy Court and become effective in accordance with its terms and conditions.

LEGAL\75805500\6LEGAL\75805500\7

28.     <u>Documents and Instruments</u>.  Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

29.     <u>Conditions to Effective Date</u>.  The conditions and approval rights set forth in Article VIII.B of the Plan are incorporated herein by reference and shall be, and hereby are, approved.  The Plan shall not become effective unless and until the conditions set forth in Article VIII.B of the Plan have been satisfied or waived.  Notwithstanding the foregoing, the conditions contained in the OWS Term Sheet may be waived only by OWS and only in its sole discretion in writing.

30.     <u>Retention of Jurisdiction</u>.  Without limitation, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matters arising under the Bankruptcy Code, arising in or related to the Chapter 11 Case or the Plan, or that relate to the matters set forth in Article XI of the Plan.

31.     <u>Plan Modifications</u>.  The following shall hereby modify the Plan:

- Article III.B.7:  "1121(d)" is replaced with "1141(d)".

- Article V.D:  "V.E" is replaced with "V.D".

- Article IX.B, line 6:  "Property of the Estate" is replaced with "property of the Reorganized Debtor".

32.     <u>Conflicts between Confirmation Order and Plan</u>.  The provisions of the Confirmation Order and the Plan shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that

cannot be reconciled, then solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

33.    <u>Applicable Non-bankruptcy Law</u>.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

34.    <u>No Waiver</u>.  The failure to specifically include any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision or constitute a waiver thereof, it being the intent of this Bankruptcy Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

35.    <u>Final Order; Effective Date</u>.  This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062, this Confirmation Order shall be effective and enforceable immediately upon its entry.

Dated: March __, 2025

_____
Honorable Philip Bentley
United States Bankruptcy Judge

LEGAL\75805500\6LEGAL\75805500\7

| Summary report: Litera Compare for Word 11.9.1.1 Document comparison done on 3/27/2025 12:48:52 PM | |
|---|---|
| **Style name:** CozenDefault | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://work.cozen.com/LEGAL/75805500/6 | |
| **Modified DMS:** iw://work.cozen.com/LEGAL/75805500/7 | |
| **Changes:** | |
| Add | 5 |
| Delete | 4 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 9 |